IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| BRIANNA GREENE on behalf of herself and others similarly situated,<br>　　　Plaintiff,<br><br>　　　　　v.<br><br>DIRECTV, INC.,<br>　　　Defendant. | )<br>)<br>)<br>)<br>)　JURY DEMANDED<br>)<br>)<br>)<br>)<br>) |

## COMPLAINT

## CLASS ACTION

1.　　Plaintiff Brianna Greene brings this action to secure redress for violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227 et seq, including implementing regulations and applicable FCC orders ("TCPA"), the Truth in Lending Act, 15 U.S.C. §1640 and the Illinois Consumer Fraud Act, 815 ILCS 505/2 et seq.

2.　　Defendant opened DirecTV television account on credit associated with plaintiff, even though it had been informed by one or more credit bureaus that plaintiff's credit file had a fraud alert on it. Plaintiff did not request that the account be opened. Further, DirecTV used an autodialer and prerecorded voice message to call plaintiff's cell phone three days *after it opened the account* to ask whether or not the fraud alert was correct.

## JURISDICTION AND VENUE

3.　　This Court has federal question subject matter jurisdiction over the TCPA and TILA claims under 28 U.S.C. §§1331 & 1337. The Court has federal question jurisdiction and Class Action Fairness Act jurisdiction over the TCPA claims. There is also supplemental

jurisdiction under 28 U.S.C. § 1367, for the Consumer Fraud claims, as well as the TCPA claims if *Brill* were to be overruled or abrogated because the TCPA claims form part of the same case or controversy as the TILA claims.

4. Venue is proper because a substantial portion of the events complained of occurred in this District.

## **PARTIES**

5. Plaintiff is an individual who resides in this District.

6. DirecTV Inc. is a California company that does business in this District.

## **FACTS**

7. DirecTV opened a satellite television account associated with plaintiff on January 2, 2010.

8. Plaintiff did not order any services from defendant at any time in 2010.

9. On January 5, 2010, DirecTV, or someone on behalf of DirecTV, called plaintiff. The call was made to plaintiff's cell phone.

10. The call was dialed by an automatic telephone dialing system. That is to say, no human being physically dialed the digits for plaintiff's telephone number; this was done by the system.

11. Furthermore, no human being was present on DirecTV's side of the call. Instead, its system was programmed to play a prerecorded message.

12. The prerecorded message stated that DirecTV had recently opened an account that was associated with plaintiff. The prerecorded message then stated an account number.

13. The prerecorded message then stated that if the opening of the account was not authorized, plaintiff should push the button "0" on her telephone to be connected to an operator.

14. Plaintiff listened to the message, and then pressed the digit "0" on her cell phone several times, but was not connected with a human being.

15. Plaintiff hung up and called the number that appeared on her cell phone's caller ID, 800-880-8284. Plaintiff was eventually connected to a DirecTV operator.

16. The operator told plaintiff that it had opened an account that was associated with plaintiff on January 2, 2010. The operator also told plaintiff that it had received a fraud alert from one or more credit bureaus. The operator told plaintiff that DirecTV would send her a form that she is required to fill out in order for her to complete her "cancellation" of the fraudulent account.

17. Plaintiff did not provide her cell phone number to DirecTV in association with the alleged account described herein. Upon information and belief, DirecTV or the company that called on its behalf used plaintiff's credit report, a skip trace company or some other sort of directory to obtain plaintiff's cell phone number. In any event, DirecTV received plaintiff's cell phone number from some person other than plaintiff.

18. It is an unfair practice for DirecTV to open accounts upon demand, particularly those where its credit check reveal a fraud alert, and then place the burden of closing the account on victims of fraud.

19. It is further unfair for DirecTV to make unmanned fraud "confirmation" calls to potential victims using an automatic messaging service that does not work properly and forces

the consumer to either call DirecTV on that person's own "dime" or face charges for service that was never ordered.

20. Upon information and belief, new DirecTV customers have a 15 day "grace period" after having activated their service within which they may cancel with no penalty other than to pay for the service they actually received.

21. In requiring victims of fraud to fill out an affidavit relating to their situation, DirecTV's procedures place a higher burden of proof and inconvenience upon fraud victims than ordinary customers who wish to cancel a new account. This is not fair to the victims.

## Count I - TCPA - Strict Liability

22. Plaintiff incorporates all previous paragraphs.

23. Defendant violated the TCPA by calling plaintiff and others on their cell phones using an automatic telephone dialing system and/or prerecorded or automatic voice messages.

### Class Allegations

24. Plaintiff brings Counts I, II and III on behalf of the same class, which consists of:

   All natural persons (a) with Illinois, Wisconsin or Indiana cell phone area codes, (b) which cell phone number defendant or a person on behalf of defendant called (c) using an automatic telephone dialing system and/or an artificial or prerecorded voice, (d) where the cell phone number had not been provided to DirecTV by the person called, (e) where the call was made at any time up to the date of filing of this complaint, and up to and including a date four years prior.

25. The class is so numerous that individual joinder would be impracticable.

26. Upon information and belief, defendant or some person on its behalf made more than 100 telephone calls that fall within the definition described in paragraph 22.

27. Common questions of law and fact exist as to all members of the class and predominate over any questions solely affecting any individual member of the class, including plaintiff. Such questions common to the Class include, but are not limited to:

    a. Whether defendant or someone on its behalf used an automatic telephone dialing system and/or an artificial or pre-recorded voice within the meaning of the TCPA with respect to telephone calls to class members' cellular phones;

    b. Whether such practices violate the TCPA; and

    c. Damages.

28. Plaintiff will fairly and adequately protect the interests of the class. Plaintiff has no interests that might conflict with the interests of the class. Plaintiff is interested in pursuing her claims vigorously, and has retained counsel competent and experienced in class and complex litigation.

29. Class action treatment is superior to the alternatives for the fair and efficient adjudication of the controversy alleged herein. Such treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the duplication of effort and expense that numerous individual actions would entail.

30. No difficulties are likely to be encountered in the management of this class action that would preclude its maintenance as a class action, and no superior alternative exists for the fair and efficient adjudication of this controversy.

31. Defendant have acted on grounds generally applicable to the class, thereby making relief appropriate with respect to the class as a whole. Prosecution of separate actions

by individual members of the class, should they realize their rights have been violated, would likely create the risk of inconsistent or varying adjudications with respect to individual members of the class that would establish incompatible standards of conduct.

32. The identity of the class is likely readily identifiable from defendant's records.

33. A class action is superior to other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.

WHEREFORE, plaintiff requests that this Court enter judgment in favor of plaintiff and the class and against defendant for:

    (a) Statutory damages of $500 per violation;

    (b) Any other relief the court deems proper.

## COUNT II – TCPA – Willful

34. Plaintiff incorporates all previous paragraphs of this complaint.

35. The violations of the Telephone Consumer Protection Act, 47 U.S.C. 227, identified above when used in connection with collection of a consumer debt were willful.

36. Plaintiff brings this Count on behalf of the same class and subclass as is identified in Count I. The difference is that this Count alleges that the violations were "willful" within the meaning of the TCPA, and thus justify enhanced damages of three times the statutory amount of $500, for $1,500 per violation.

    (a) $1,500 per violation;

    (b) Any other relief the court deems proper.

## Count III – TCPA – Injunctive Relief

37. Plaintiff incorporates all previous paragraphs of this complaint.

38. The TCPA prohibits the use of an automatic dialing system and/or prerecorded or artificial voice messages to make phone calls to cell phones.

39. The TCPA 47 U.S.C. §227(b)(3), provides a private right of action for injunctive relief.

40. Defendant has had a pattern and practice of making telephone calls in violation of 47 U.S.C. §227(b), including calls to plaintiff.

41. Upon information and belief, defendant continues to call cell phones in violation of section 227(b), without regard to the TCPA.

42. The defendant is likely to continue to violate the TCPA without an order enjoining it from doing so.

43. Plaintiff brings Count III on behalf of a class pursuant to Fed.R.Civ.P. 23(b)(2), for injunctive relief. Plaintiff requests that the Court permanently enjoin defendant from making calls to cell phones using its dialer, and enjoin defendant from making calls to cell phones using an artificial or prerecorded voice messages, unless it can demonstrate the prior express consent of the called party to receive such calls.

44. Plaintiff is entitled to have her rights, status and legal relations under the TCPA relating to defendants' calling of cell phones using an automatic dialing system and/or artificial or prerecorded voice message.

45. The class definition is identical and overlapping with the TCPA class in Count I.

WHEREFORE, plaintiff requests that this Court enter judgment for plaintiff and the class and against defendant for:

   (a) a permanent injunction prohibiting defendant from violating the TCPA in the future through calling cellular phones using an automatic telephone dialing system and/or a prerecorded voice message; and

   (b) Any other relief the Court deems fit.

## COUNT IV – TILA

46. Plaintiff incorporates paragraphs 1-23.

47. Plaintiff did not request that the DirecTV account be opened.

48. Upon information and belief, the account that was opened included at least a satellite "dish", a television-top "box" and a remote control.

49. Upon information and belief, the account that was opened also included access to both free and pay-per view "on demand" content.

50. The TILA, 15 U.S.C. § 1642 prohibits the issuance of "credit cards" that have not been requested by the consumer. The statute reads:

> **No credit card shall be issued except in response to a request or application therefor. This prohibition does not apply to the issuance of a credit card in renewal of, or in substitution for, an accepted credit card**

51. The TILA defines "credit card" in 15 U.S.C §1602(f):

> **(k) The term "credit card" means any card, plate, coupon book or other credit device existing for the purpose of obtaining money, property, labor, or services on credit.**

52. The account associated with plaintiff that DirecTV opened was a "credit" account because customers enjoy DirecTV content, products and services, including pay-per-view and on-demand items, and defer payment until the end of a billing cycle. See 15 U.S.C. § 1601(e).

53. Based upon inconsistent application data and/or the fraud alert it received from one or more credit bureaus, DirecTV should have known that the account was being opened either fraudulently, or was being associated with the wrong person. At the very least, DirecTV should have waited to open the account until it had verified that plaintiff had requested that the account be opened.

54. Plaintiff has been damaged as a result of defendant's TILA violation.

WHEREFORE, plaintiff requests that this Court enter judgment for plaintiff against defendant for:

    (a)    Statutory and actual damages;

    (b)    Attorney's fees and costs of suit; and

    (c)    Any other relief the Court deems fit.

## COUNT V - Illinois Consumer Fraud Act

55. Plaintiff incorporates paragraphs 1 through 23.

56. Upon information and belief, based upon plaintiff's conversation on January 5, 2010, a consumer reporting agency informed DirecTV that plaintiff's credit file had a fraud alert associated with it.

57. Upon information and belief, one or more consumer reporting agencies notified defendant that the address in the request for the consumer report was different from the address linked to plaintiff's social security number.

58. Defendant reckless and wanton in issuing credit under these circumstances. DirecTV's mantra appears to be "open accounts first, and sort out which ones are fraudulent or mistaken accounts later."

59. Such actions and omissions constitute a fraudulent omission in violation of the Illinois Consumer Fraud Act.

60. Approving a fraudulent or mixed application for credit when the creditor should know the application was fraudulent, and then requiring the victim to prove the fraud even though ordinary customers would not have such a burden to cancel is also unfair within the meaning of the Illinois Consumer Fraud Act because:

   a. Sound public policy dictates that a potential creditor give special scrutiny to possibly fraudulent credit applications *before* approval;

   b. it is reasonable to assume that such omissions will adversely affect a consumer who has no idea that her rights have been violated, and therefore cannot protect herself from such; and

   c. The unknowing consumer is adversely affected.

61. Plaintiff was damaged by these violations.

WHEREFORE, plaintiff requests that the Court enter judgment in her favor and against defendant for:

   a. Actual and punitive damages;

   b. Attorney's fees and costs of suit; and

   c. Any other relief the Court deems appropriate.

Respectfully submitted,

/s/Alexander H. Burke

Alexander H. Burke
BURKE LAW OFFICES, LLC
155 N. Michigan Ave., Suite 9020

Chicago, IL 60601
(312) 729-5288
(312) 729-5289 (fax)
ABurke@BurkeLawLLC.com

**JURY DEMAND**

Plaintiff demands trial by jury.

/s/Alexander H. Burke

Alexander H. Burke
BURKE LAW OFFICES, LLC
155 N. Michigan Ave., Suite 9020
Chicago, IL 60601
(312) 729-5288
(312) 729-5289 (fax)
ABurke@BurkeLawLLC.com

**DOCUMENT PRESERVATION DEMAND**

Plaintiff hereby demands that the defendant take affirmative steps to preserve all recordings, data, documents and all other tangible things that relate to plaintiff or the putative class members, the events described herein, any third party called in association with any telephone call, campaign, account, sale or file associated with plaintiff or the putative class members, and any account or number or symbol relating to any of them. These materials are very likely relevant to the litigation of this claim. If defendant is aware of any third party that has possession, custody or control of any such materials, plaintiff demands that DirecTV request that such third party also take steps to preserve the materials. This demand shall not narrow the scope of any independent document preservation duties of the defendant.

/s/Alexander H. Burke