**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| BRIANNA GREENE on behalf of herself and others similarly situated, | ) | |
| | ) | 1:10-cv-117 |
| Plaintiff, | ) | |
| | ) | Judge Kocoras |
| v. | ) | Magistrate Judge Cox |
| | ) | JURY DEMANDED |
| DIRECTV, INC. | ) | |
| Defendant. | ) | |
| | ) | |

**MOTION FOR LEAVE TO FILE AMENDED COMPLAINT**

Plaintiff respectfully requests that this Court grant her leave to file an amended complaint in this action.  The proposed Amended Complaint, which adds a defendant, deletes plaintiff's claim under the Illinois Consumer Fraud Act and adds a claim under the Fair Credit Reporting Act, is attached as Appendix 1.

In support of this motion, plaintiff states:

1.      This case concerns the ramifications creditors may face when they decide that opening accounts quickly is more important than heeding fraud alerts and other warning signals from the credit reports they obtain in association with applications for credit.  DirecTV's policy appears to be to open new accounts first, and ask questions later.

2.      The defendant satellite television company DirecTV received a telephonic application for satellite television services from a person other than plaintiff on January 2, 2010. Discovery will show that DirecTV did a credit check in connection with that application and received plaintiff's credit report and score instead of those of the person who actually applied, and that DirecTV received notice of a fraud alert on plaintiff's credit report pursuant to 15 U.S.C.

1

§1681c-1. Upon information and belief, the credit report DirecTV received also had plaintiff's other personal information on it, such as address and telephone number, rather than that of the true applicant.

3. Rather than having a human being call plaintiff to inquire as to whether the account was fraudulent or in error, DirecTV opened the account. On January 5, 2010, DirecTV had Iqor, Inc. call plaintiff's cell phone using an autodialer and prerecorded message to "check" to see whether the account was fraudulent or in error. Plaintiff received the call and attempted to press a button on her phone to talk to a live operator, as the "robo-message" instructed, but no human being came to the line. Plaintiff hung up and called back, and reached a DirecTV representative who told plaintiff that an account had been opened that was associated with plaintiff.

4. Plaintiff originally brought class claims under the Telephone Telephone Consumer Protection Act, 47 U.S.C. § 227(b) ("TCPA") for using an automatic dialing system and automatic voice message system to call people's cell phones. The class is limited to those persons who did not provide their cell phone numbers directly to DirecTV. Because the DirecTV account was issued on "credit" pursuant to 15 U.S.C. § 1602(f), and included use of a DirecTV satellite television device that is capable of providing on-demand television services for a fee that is paid after the services have been rendered. See *Murray v. New Cingular Wireless Services, Inc.*, 432 F.Supp.2d 788 (N.D.Ill. 2006) (mobile telephone services treated as "credit"). The original complaint also included a claim under the Illinois Consumer Fraud Act, 815 ILCS 505/2 et seq. DirecTV has moved to dismiss all three Counts.

5. Counts I (TCPA) and II (TILA) in the proposed Amended Complaint, Appendix 1, have not changed. However, the ICFA claims in Count III has been dropped, and plaintiff has substituted

2

claims under 15 U.S.C. § 1681c-1, for failing to institute reasonable procedures to avoid issuing

credit to the wrong person.  15 U.S.C. §1681c-1(h).  The proposed Amended Complaint also adds

Iqor, Inc. as a defendant because it is the company that made the autodialed and prerecorded

message calls on behalf of DirecTV.

6.      A district court should only deny a motion to amend a complaint if there is a

substantial reason to do so. *Espey v. Wainwright*, 734 F.2d 748, 750 (11th Cir. 1984)  ("Unless there

is a substantial reason to deny leave to amend, the discretion of the district court is not broad

enough to permit denial"); *accord*, *Dussouy v. Gulf Coast Investment Corp.*, 660 F.2d 748, 597 (5th

Cir. 1981); *Cement Masons' Pension Fund, Local 502 v. Clements*, 91 C 8032, 1993 U.S. Dist. LEXIS

13938 (N.D.Ill., Oct. 5, 1993); *Nagy v. Riblet Products Corp.*, No. S90-202 (RLM), 1991 U.S. Dist.

LEXIS 20128, *1, Fed. Sec. L. Rep. (CCH) P96,535 (N.D.Ind., Oct. 16, 1991); *Kopala v. Pepsi-Cola*

*Bottling Co.*, No. S90-296 (RLM), 1991 U.S. Dist. LEXIS 10261, *3-4, 55 Fair Empl. Prac. Cas. (BNA)

1535 (N.D.Ind. May 7, 1991); *Select Creations v. Paliafito Am.*, 830 F. Supp. 1213, 1215-16

(E.D.Wisc. 1993).

7.      The amendments will not cause any prejudice to the defendant.  *See Johnson v.*

*Oroweat Foods*, 785 F.2d 503, 510 (4th Cir. 1986) (court held that the addition of new factual

allegations or a change in legal theory only prejudices the defendant if the amendment is sought

shortly before or during trial); *Hely & Patterson Intern v. F.D. Rich Housing*, 663 F.2d 419, 426 (3d

Cir. 1981) ("In the context of a 15(a) amendment, prejudice means that the nonmoving party must

show that it was unfairly disadvantaged or deprived of the opportunity to present facts or

evidence which it would have offered had the amendments . . . been timely"); *Head v. Timken*

*Roller Bearing Co.*, 486 F.2d 870, 873 (6th Cir. 1973) ("amendments should be tendered no later

than the time of pretrial . . .").  The entire lawsuit still arises out of identical facts, the first two

Counts have not been materially altered, and the new Count merely alleges a different violation

for essentially the same conduct complained of in the original Complaint; although statutory

damages are available under the FCRA.

8.      Plaintiff did not engage in delay in filing this motion.  The case will be before this

Court for the first time on February 23, 2010.

WHEREFORE, plaintiffs respectfully request that this Court grant her leave to amend

the complaint in this action.  The proposed Amended Complaint is attached as <u>Appendix 1</u>.


Respectfully submitted,

/s/Alexander H. Burke


Alexander H. Burke
BURKE LAW OFFICES, LLC
155 N. Michigan Ave., Suite 9020
Chicago, IL 60601
(312) 729-5288
(312) 729-5289 (fax)
ABurke@BurkeLawLLC.com

# Appendix 1

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| BRIANNA GREENE on behalf of herself and others similarly situated, | ) ) | 1:10-cv-117 |
|     Plaintiff, | ) ) | |
| v. | ) ) | Judge Kocoras |
| | ) | |
| DIRECTV, INC., and | ) | Magistrate Judge Cox |
| IQOR, INC. | ) | |
|     Defendant. | ) ) | JURY DEMANDED |

**AMENDED COMPLAINT**

**CLASS ACTION**

1.      Plaintiff Brianna Greene brings this action to secure redress for violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227 et seq, including implementing regulations and applicable FCC orders ("TCPA"), the Truth in Lending Act, 15 U.S.C. §1640 and the Fair Credit Reporting Act, 15 U.S.C. §1681 et seq.

2.      Defendant opened DirecTV television account on credit associated with plaintiff, even though it had been informed by one or more credit bureaus that plaintiff's credit file had a fraud alert on it.  Plaintiff did not request that the account be opened.

3.      Further, DirecTV used an autodialer and prerecorded voice message to call plaintiff's cell phone three days *after it opened the account* to ask whether or not the fraud alert was correct.  Upon information and belief, based upon discovery talks with DirecTV, defendant Iqor, Inc. is a vendor hired by DirecTV to make some or all of the illegal calls.

1

**JURISDICTION AND VENUE**

4.       This Court has federal question subject matter jurisdiction over the TCPA and TILA claims under 28 U.S.C. §§1331 & 1337.  The Court has federal question jurisdiction and Class Action Fairness Act jurisdiction over the TCPA claims.   There is also supplemental jurisdiction under 28 U.S.C. § 1367, for the Consumer Fraud claims, as well as the TCPA claims if *Brill* were to be overruled or abrogated because the TCPA claims form part of the same case or controversy as the TILA claims.

5.       Venue is proper because a substantial portion of the events complained of occurred in this District.

**PARTIES**

6.       Plaintiff is an individual who resides in this District.

7.       DirecTV Inc. is a California company that does business in this District.

8.       Iqor, Inc. is a New York corporation that has offices both in the United States and overseas.  It specializes in high-tech communications, including telephone calls that are dialed by a system whereby no human being dials the telephone numbers, and prerecorded and artificial voice messages.   Iqor does business in this District; it places telephone calls to consumers here.

**FACTS**

9.       DirecTV opened a satellite television account associated with plaintiff on January 2, 2010.  Upon information and belief, DirecTV accessed plaintiff's credit report in connection with the application.

10.     Plaintiff did not know about this account, and had not ordered any services from defendant.

11.     Plaintiff had a fraud alert on her credit report at the time, pursuant to 15 U.S.C. §1681c-1.  Upon information and belief, based upon the duties of consumer reporting agencies, DirecTV received notice of the fraud alert, but opened the satellite television account without additional investigation.

12.     On January 5, 2010, DirecTV, or someone on behalf of DirecTV, called plaintiff. The call was made to plaintiff's cell phone.  Upon information and belief, Iqor placed this call at the direction of, and with authorization from, DirecTV.

13.     The call was dialed by an automatic telephone dialing system.  That is to say, no human being physically dialed the digits for plaintiff's telephone number; this was done by the system.

14.     Furthermore, no human being was present on DirecTV/Iqor's side of the call. Instead, its system was programmed to play a prerecorded message.

15.     The prerecorded message stated that DirecTV had recently opened an account that was associated with plaintiff.  The prerecorded message then stated an account number.

16.     The prerecorded message then stated that if the opening of the account was not authorized, plaintiff should push the button "0" on her telephone to be connected to an operator.

17.     Plaintiff listened to the message, and then pressed the digit "0" on her cell phone several times, but was not connected with a human being.

18.     Plaintiff hung up and called the number that appeared on her cell phone's caller ID, 800-880-8284.  Plaintiff was eventually connected to a DirecTV representative.

19.     The representative told plaintiff that DirecTV had opened an account that was associated with plaintiff on January 2, 2010.

20.     The operator also told plaintiff that it had received a fraud alert from one or more credit bureaus.  The operator told plaintiff that DirecTV would send her a form that she is required to fill out in order for her to complete her "cancellation" of the fraudulent account.

21.     Plaintiff did not provide her cell phone number to DirecTV in association with the alleged account described herein.  Upon information and belief, DirecTV or the company that called on its behalf used plaintiff's credit report, a skip trace company or some other sort of directory to obtain plaintiff's cell phone number.  In any event, DirecTV received plaintiff's cell phone number from some person other than plaintiff.

22.     It is an unfair practice for DirecTV to open accounts upon demand, particularly those where its credit check reveal a fraud alert, and then place the burden of closing the account on victims of fraud.

23.     It is further unfair for DirecTV to make unmanned fraud "confirmation" calls to potential victims using an automatic messaging service that does not work properly and forces the consumer to either call DirecTV on that person's own "dime" or face charges for service that was never ordered.

24.     Using a method of contacting consumers with fraud alerts on their credit reports that is proscribed by federal law is not "reasonable" within the meaning of the FCRA 15 U.S.C. §1681c-1(h).

25.     Upon information and belief, new DirecTV customers have a 15 day "grace period" after having activated their service within which they may cancel with no penalty other than to pay for the service they actually received.

26.     In requiring victims of fraud to fill out an affidavit relating to their situation, DirecTV's procedures place a higher burden of proof and inconvenience upon fraud victims than ordinary customers who wish to cancel a new account.  This is not fair to the victims and further evinces failure to have reasonable procedures pursuant to section 1681c-1(h).

# <u>Count I - TCPA - Strict Liability</u>

27.     Plaintiff incorporates all previous paragraphs.  This claim is against DirecTV and Iquor.

28.     Defendant violated the TCPA by calling plaintiff and others on their cell phones using an automatic telephone dialing system and/or prerecorded or automatic voice messages.

## <u>Class Allegations</u>

29.     Plaintiff brings Counts I, II and III on behalf of the same class, which consists of:

> All natural persons (a) with Illinois, Wisconsin or Indiana cell phone area codes, (b) which cell phone number defendant or a person on behalf of defendant called (c) using an automatic telephone dialing system and/or an artificial or prerecorded voice, (d) where the cell phone number had not been provided to DirecTV by the person called, (e) where the call was made at any time up to January 8, 2010, and back to and including January 8, 2006.

30.     The class is so numerous that individual joinder would be impracticable.

31.     Upon information and belief, defendant or some person on its behalf made more than 100 telephone calls that fall within the definition described in paragraph 22.

5

32.     Common questions of law and fact exist as to all members of the class and predominate over any questions solely affecting any individual member of the class, including plaintiff. Such questions common to the Class include, but are not limited to:

    a.     Whether defendant or someone on its behalf used an automatic telephone dialing system and/or an artificial or pre-recorded voice within the meaning of the TCPA with respect to telephone calls to class members' cellular phones;

    b.     Whether such practices violate the TCPA; and

    c.     Damages.

33.     Plaintiff will fairly and adequately protect the interests of the class.  Plaintiff has no interests that might conflict with the interests of the class. Plaintiff is interested in pursuing her claims vigorously, and has retained counsel competent and experienced in class and complex litigation.

34.     Class action treatment is superior to the alternatives for the fair and efficient adjudication of the controversy alleged herein. Such treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the duplication of effort and expense that numerous individual actions would entail.

35.     No difficulties are likely to be encountered in the management of this class action that would preclude its maintenance as a class action, and no superior alternative exists for the fair and efficient adjudication of this controversy.

36.     Defendant have acted on grounds generally applicable to the class, thereby making relief appropriate with respect to the class as a whole.  Prosecution of separate actions by individual members of the class, should they realize their rights have been violated, would likely create the risk of inconsistent or varying adjudications with respect to individual members of the class that would establish incompatible standards of conduct.

37.     The identity of the class is likely readily identifiable from defendant's records.

38.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.

WHEREFORE, plaintiff requests that this Court enter judgment in favor of plaintiff and the class and against defendant for:

(a)     Statutory damages of $500 per violation;

(b)     Any other relief the court deems proper.

## COUNT II – TCPA – Willful

39.     Plaintiff incorporates all previous paragraphs of this complaint. This claim is against DirecTV and Iquor.

40.     The violations of the Telephone Consumer Protection Act, 47 U.S.C. 227, identified above when used in connection with collection of a consumer debt were willful.

41.     Plaintiff brings this Count on behalf of the same class and subclass as is identified in Count I.  The difference is that this Count alleges that the violations were "willful" within the meaning of the TCPA, and thus justify enhanced damages of three times the statutory amount of $500, for $1,500 per violation.

(a)     $1,500 per violation;

7

(b)      Any other relief the court deems proper.

# Count III – TCPA – Injunctive Relief

42.      Plaintiff incorporates all previous paragraphs of this complaint.  This claim is against DirecTV and Iquor.

43.      The TCPA prohibits the use of an automatic dialing system and/or prerecorded or artificial voice messages to make phone calls to cell phones.

44.      The TCPA 47 U.S.C. §227(b)(3), provides a private right of action for injunctive relief.

45.      Defendants have had a pattern and practice of making telephone calls in violation of 47 U.S.C. §227(b), including at least one call to plaintiff.

46.      Upon information and belief, defendant continues to call cell phones in violation of section 227(b), without regard to the TCPA.

47.      The defendants are likely to continue to violate the TCPA without an order enjoining it from doing so.

48.      Plaintiff brings Count III on behalf of a class pursuant to Fed.R.Civ.P. 23(b)(2), for injunctive relief.  Plaintiff requests that the Court permanently enjoin defendant from making calls to cell phones using its dialer, and enjoin defendant from making calls to cell phones using an artificial or prerecorded voice messages, unless it can demonstrate the prior express consent of the called party to receive such calls.

49.      Plaintiff is entitled to have her rights, status and legal relations under the TCPA relating to defendants' calling of cell phones using an automatic dialing system and/or artificial or prerecorded voice message.

50.     The class definition is identical and overlapping with the TCPA class in Count I.

WHEREFORE, plaintiff requests that this Court enter judgment for plaintiff and the class

and against defendants for:

(a)     a permanent injunction prohibiting defendant from violating the TCPA in

the future through calling cellular phones using an automatic telephone dialing system

and/or a prerecorded voice message; and

(b)     Any other relief the Court deems fit.

# COUNT IV – TILA

51.     Plaintiff incorporates paragraphs 1-23.  This claim is against DirecTV, only.

52.     Plaintiff did not request that the DirecTV account be opened.

53.     Upon information and belief, the account that was opened included at least a

satellite "dish", a television-top "box" and a remote control.

54.     Upon information and belief, the account that was opened also included access

to both free and pay-per view "on demand" content.

55.     The TILA, 15 U.S.C. § 1642 prohibits the issuance of "credit cards" that have not

been requested by the consumer.  The statute reads:

> **No credit card shall be issued except in response to a request or application therefor. This prohibition does not apply to the issuance of a credit card in renewal of, or in substitution for, an accepted credit card**

56.     The TILA defines "credit card" in 15 U.S.C §1602(f):

> **(k) The term "credit card" means any card, plate, coupon book or other credit device existing for the purpose of obtaining money, property, labor, or services on credit.**

57.     The account associated with plaintiff that DirecTV opened was a "credit" account because customers enjoy DirecTV content, products and services, including pay-per-view and on-demand items, and defer payment until the end of a billing cycle.  See 15 U.S.C. § 1601(e).

58.     Based upon inconsistent application data and/or the fraud alert it received from one or more credit bureaus, DirecTV should have known that the account was being opened either fraudulently, or was being associated with the wrong person.   At the very least, DirecTV should have waited to open the account until it had verified that plaintiff had requested that the account be opened.

59.     Plaintiff has been damaged as a result of defendant's TILA violation.

WHEREFORE, plaintiff requests that this Court enter judgment for plaintiff against defendant for:

(a)     Statutory and actual damages;

 (b)     Attorney's fees and costs of suit; and

(c)     Any other relief the Court deems fit.

## COUNT V - Fair Credit Reporting Act

60.     Plaintiff all paragraphs of this complaint herein.  This claim is against DirecTV, only, although Iqor likely has relevant information and discovery concerning these claims.

61.     Upon information and belief, based upon their legal duty to do so, one or more consumer reporting agencies notified defendant that the address in the request for the consumer report was different from the address linked to plaintiff's social security number.  See 15 U.S.C. §§ 1681c-1 (requiring bureaus to notify potential creditors of fraud alerts) 1681c(h) (requiring credit bureaus to

provide notice of address discrepancies to potential creditors); 1681a(q)(2)(B) (requiring such notice to be "clear and conspicuous).

62.     Defendant DirecTV violated 15 U.S.C. §1681c-1(h) by not utilizing reasonable policies and procedures, and/or not following the policies and procedures it had in place, in order to form a reasonable belief that the it knew the identity of the person making the request for credit before it established the requested account.

63.     Plaintiff was damaged, and such damage was proximately caused by these violations.

## Class Allegations

64.     Plaintiff brings Count V on behalf of a class, which consists of:

All natural persons:

(a) with Illinois, Wisconsin or Indiana cell phone area codes;

(b) which cell phone number defendant or a person on behalf of defendant called;

(c) using an automatic telephone dialing system and artificial or prerecorded voice;

(d) where the cell phone number had not been provided to DirecTV by the person called;

(e) where the telephone call was part of DirecTV's efforts to comply with its duty to confirm the identity of a consumer whose credit report contained an initial or extended fraud alert pursuant to 15 U.S.C. §1681c-1;

(f) where the called party answered, and the prerecorded voice message script indicated that the recipient should take action, such as dial a button on their telephone, in order to speak with a representative;

(g) and the call ended after the button was dialed, but before a representative answered the call;

(h) where the call was made at any time within two years of the filing of this amended complaint.

65.     The class is so numerous that individual joinder would be impracticable.

11

66.     Upon information and belief, defendant or some person on its behalf made more than 100 telephone calls that fall within the definition.

67.     Common questions of law and fact exist as to all members of the class and predominate over any questions solely affecting any individual member of the class, including plaintiff. Such questions common to the Class include, but are not limited to:

a.      Whether using a prerecorded voice message to that instructs the victim to take action to speak with an operator, but no operator is available is "reasonable" under 15 U.S.C. §1681c-1(h);

b.      Whether such practices violate the FCRA; and

c.      Damages.

68.     Plaintiff will fairly and adequately protect the interests of the class. Plaintiff has no interests that might conflict with the interests of the class. Plaintiff is interested in pursuing her claims vigorously, and has retained counsel competent and experienced in class and complex litigation.

69.     Class action treatment is superior to the alternatives for the fair and efficient adjudication of the controversy alleged herein. Such treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the duplication of effort and expense that numerous individual actions would entail.

70.     No difficulties are likely to be encountered in the management of this class action that would preclude its maintenance as a class action, and no superior alternative exists for the fair and efficient adjudication of this controversy.

71.     Defendant has acted on grounds generally applicable to the class, thereby making relief appropriate with respect to the class as a whole.  Prosecution of separate actions by individual members of the class, should they realize their rights have been violated, would likely create the risk of inconsistent or varying adjudications with respect to individual members of the class that would establish incompatible standards of conduct.

72.     The identity of the class is likely readily identifiable from defendant's records.

73.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.

WHEREFORE, plaintiff requests that this Court enter judgment in favor of plaintiff and the class and against defendant for:

(c)     Statutory and punitive damages;

(d)     Any other relief the court deems proper.

Respectfully submitted,

/s/Alexander H. Burke

Alexander H. Burke
BURKE LAW OFFICES, LLC
155 N. Michigan Ave., Suite 9020
Chicago, IL 60601
(312) 729-5288
(312) 729-5289 (fax)
ABurke@BurkeLawLLC.com

**JURY DEMAND**

Plaintiff demands trial by jury.

/s/Alexander H. Burke

Alexander H. Burke
BURKE LAW OFFICES, LLC
155 N. Michigan Ave., Suite 9020
Chicago, IL 60601
(312) 729-5288
(312) 729-5289 (fax)
ABurke@BurkeLawLLC.com

**DOCUMENT PRESERVATION DEMAND**

Plaintiff hereby demands that the defendant take affirmative steps to preserve all recordings, data, documents and all other tangible things that relate to plaintiff or the putative class members, the events described herein, any third party called in association with any telephone call, campaign, account, sale or file associated with plaintiff or the putative class members, and any account or number or symbol relating to any of them.  These materials are very likely relevant to the litigation of this claim.  If defendant is aware of any third party that has possession, custody or control of any such materials, plaintiff demands that DirecTV request that such third party also take steps to preserve the materials.  This demand shall not narrow the scope of any independent document preservation duties of the defendant.

/s/Alexander H. Burke