**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| BRIANNA GREENE, on behalf of herself and others similarly situated, ) ) ) | |
| Plaintiff, ) | Case No. 1:10-cv-117 |
| ) | |
| vs. ) | Hon. Charles P. Kocoras |
| ) | |
| DIRECTV, INC., ) ) | |
| Defendant. ) | |

### DIRECTV'S MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT

Plaintiff's Amended Complaint focuses on a telephone call that she received, at her request, on her cellular telephone—an automated call alerting her to possible fraudulent activity in a recently-opened DIRECTV customer account. Plaintiff alleges that this fraud prevention call, which ensured that no account for DIRECTV services was opened in Plaintiff's name and that no account would ever be charged to her, should permit her to pursue a classwide action under the Telephone Consumer Protection Act ("TCPA") and the Fair Credit Reporting Act ("FCRA"). She also asserts an individual claim under the Truth In Lending Act ("TILA").[1] However, Plaintiff's Amended Complaint, when considered along with the judicially noticeable documents provided herewith, does not state a claim under any of these statutes and should be dismissed in its entirety.

### FACTUAL BACKGROUND

On January 5, 2010, Plaintiff received on her cellular telephone an account verification call from DIRECTV designed to prevent fraud. *See* Am. Compl., ¶¶ 11-20. Plaintiff admits that

---

[1] Plaintiff's Amended Complaint drops an individual claim asserted under the Illinois Consumer Fraud Act and adds in its place a classwide FCRA claim.

she had registered for this fraud alert call. *Id.*, ¶11. Indeed, Plaintiff apparently has been having problems for some time with potential fraud on her credit reports, as she detailed in another complaint that she filed four months ago, in December 2009, in the Northern District of Illinois. *See* 2/16/10 Request for Judicial Notice ("RJN"), Docket No. 23, Ex. A (Complaint in *Greene v. Equifax, et. al.*), ¶¶ 17-20 [Doc. 23-1 at 5-6].[2] In that *Greene v. Equifax* complaint, Plaintiff asserts that in October 2008, she registered with at least one credit bureau, Equifax, for an extended fraud alert. *Id.*, ¶¶ 22-23 [Doc. 23-1 at 6]. Nonetheless, she alleges, fraudulent accounts were later opened, including one with AT&T that she only learned about when she began receiving collections calls. *Id.*, ¶ 29 [Doc. 23-1 at 6]. Plaintiff claims that someone by the name of Larquette M. Greene has been using her social security number in attempts to buy services and gain credit, or in the alternative, that the credit bureaus have been confusing her records with that of the other Ms. Greene. *Id.*, ¶¶ 19-20 [Doc. 23-1 at 6], ¶¶24-27 [Doc. 23-1 at 6-7].

In her Amended Complaint against DIRECTV, however, unlike in her *Equifax* complaint, Plaintiff does not allege that a fraudulent DIRECTV account was actually opened in her name, or that she was charged for any DIRECTV programming services. Instead, Plaintiff complains about a single automated account verification/fraud prevention call she received from DIRECTV for the sole purpose of preventing fraudulent charges—a call to her cellular telephone disclosing that an order for DIRECTV programming services had been placed, providing the account number for the new order, stating that the new account had triggered a fraud alert requested by Plaintiff, and inviting Plaintiff to inform DIRECTV if she had not authorized the order. Am. Compl., ¶¶ 15-16. Plaintiff concedes in her Amended Complaint that a consumer reporting

---

[2] To avoid re-filing duplicate documents, DIRECTV references herein the Request for Judicial Notice filed on February 16, 2010 (Docket No. 23), and asks that the Court grant this Request.

agency had provided DIRECTV with the information that a newly opened satellite programming account had a fraud alert associated with it. *See id.*, ¶¶ 11, 58, 61. But Plaintiff nonetheless alleges that the resulting fraud alert call she received violated the TCPA because the call went to her cellular telephone as an automated alert, and because she purportedly did not give DIRECTV her cellular telephone number on which to contact her. *See id.*, ¶¶ 21, 28. She also alleges that the fraud alert to her cellular phone was an "unreasonable" business practice that violates the FRCA (*id.*, ¶ 24), and that a "credit card" was issued improperly under the TILA (*id.,* ¶¶ 57-58).

Fatal to her complaint, as further discussed herein, is Plaintiff's admission that she registered with the credit bureaus to receive this fraud alert call. *See* Am. Compl. ¶11; *see also* RJN, Docket No. 23, Ex. A, at ¶¶ 22-23 [Doc. 23-1 at 6]. Judicially noticeable documents from the credit reporting agencies show that when a person, such as Plaintiff, registers for a fraud alert, the consumer (1) makes a specific election to receive a call from companies, such as DIRECTV, that run credit checks in opening accounts and (2) chooses one or more telephone numbers (cellular telephone, residential line, business line, etc.) at which to receive a fraud alert call. *See* RJN, Docket No. 23, Ex. D (Experian Fraud Alert Sign-up Form) [Doc. 23-1 at 32] ("Check this box if you want to add your phone number to your fraud alert message so that potential credit grantors may contact you before granting credit in your name."); *see also id.*, Ex. E (Equifax Fraud Alert Sign-up Form) at 2 [Doc. 23-1 at 35] (after providing the required information of e-mail address and home address, fraud alert applicant can elect to provide express permission, through checking a box and typing in phone numbers, at which he or she wants to be contacted by creditors).

Moreover, the Federal Trade Commission's consumer website on Identity Theft advises consumers placing fraud alerts to provide their cell phone numbers so that, while protecting

themselves from fraud, they do not unnecessarily delay establishing their own legitimate accounts: "To compensate for possible delays, you may wish to include **a cell phone number**, where you can be reached easily, in your alert." RJN, Docket No. 23, Ex. C (FTC Microsite on Identity Theft) at 3 [Doc. 23-1 at 26] (emphasis added). Significantly, Plaintiff now does not contest that DIRECTV was correct to call her on the cell phone number she provided. Less than a month after filing her Complaint, Plaintiff told this Court: "**To be sure, defendant was correct to call plaintiff's cell phone to investigate the fraud alert.**" RJN, Docket No. 23, Ex. B (2/5/10 Motion to Compel Disclosure) at p.3, n.1 [Doc. 23-1 at 21, n.1] (emphasis added).

So, Plaintiff takes issue now not with the fraud alert call itself, which was rightly made to her cell phone, but with the methodology DIRECTV used in making that call: "[U]sing an autodialer and prerecorded message to make the call was not only insensitive, it violated the TCPA." *Id.* Plaintiff further argues that DIRECTV should have somehow known to dial Plaintiff's cell phone at the very moment that the new, potentially fraudulent account application—an application not alleged to be in Plaintiff's own name—was being inputted into DIRECTV's order system, as opposed to when DIRECTV actually received a fraud alert with Plaintiff's cell phone number from the credit bureaus. *Id.*

Based on the fraud alert call, which was made at Plaintiff's request and which Plaintiff acknowledges protected her from any improper charges, Plaintiff now seeks $500 in statutory damages under the TCPA and an additional $1,000 in punitive statutory damages not only for herself, but also for every person contacted on a cellular phone—for any reason—by DIRECTV during the past five years in the three-state area that comprises the Seventh Circuit. *See* Am. Compl., ¶¶ 27-41. Plaintiff also seeks a permanent injunction prohibiting DIRECTV from calling any persons—for any reason—on their cellular telephones with an automated call. *Id.*, ¶¶

4

42-50.  Finally, she makes an individual claim under the TILA statute (*id.*, ¶¶ 51-59) and seeks classwide statutory and punitive damages under the FCRA for DIRECTV's alleged failure to use and/or follow "reasonable policies and procedures" in handling fraud alert notices.  *Id.*, ¶¶ 60-73.

As discussed below, this Court should dismiss all three claims in their entirety, as each fails to state a viable cause of action.

## LEGAL ARGUMENT

When assessing a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim, the trial court should accept as true all material facts well pleaded in the complaint.  *See Porter v. DiBlasio*, 93 F.3d 301, 305 (7th Cir. 1996).  In addition to accepting the facts asserted in a plaintiff's complaint, "a district court may take judicial notice of matters of public record without converting the 12(b)(6) motion into a motion for summary judgment." *Anderson v. Simon*, 217 F.3d 472, 474-75 (7th Cir. 2000).

In *Bell Atlantic, Corp. v.Twombly*, 550 U.S. 544, 546, 561, 577 (2007) ("*Twombly*"), the Supreme Court "retired" the familiar formulation that a motion to dismiss must be denied unless "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  In its place, the Court held that a complaint must allege "enough facts to state a claim to relief that is plausible on its face." *Id.*, 550 U.S. at 570.  Last year, in *Ashcroft v. Iqbal*, --- U.S. ---, 129 S. Ct. 1937, 1949 (2009) ("*Iqbal*"), the Supreme Court further clarified the *Twombly* standards and extended them to all federal court complaints. *Id.* ("A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do.  Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement.") (internal citations omitted).  Thus, if the plaintiff's alleged facts—taken as true—do not permit the Court to find more than a mere possibility of misconduct, then the complaint has failed to state a viable cause of action and should be dismissed. *Id.*; *see also*

*Limestone Dev. Corp. v. Village of Lemont, Ill.*, 520 F.3d 797, 803 (7th Cir. 2008) ("The old formula—that the complaint must not be dismissed unless it is beyond doubt without merit—was discarded by the [*Twombly*] decision.").[3]

Thus, the Seventh Circuit has held that when behavior alleged in a complaint is just as consistent with a lawful business practice as it is with wrongdoing, a plaintiff has failed to state a cause of action. *See Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009). Here, DIRECTV's call to Plaintiff at the very phone number she provided for fraud alert calls—a call that prevented any potential fraudulent activity from being attributed to Plaintiff—is consistent with being a lawful business practice, and Plaintiff has thus failed to state any plausible cause of action. *Id.*

I. **Plaintiff's TCPA Claims Cannot Survive, As Plaintiff Admits That She Expressly Provided Consent For Fraud Alert Calls To Be Made To Her Cellular Telephone.**

Plaintiff alleges that DIRECTV "violated the TCPA by calling plaintiff and others on their cell phones using an automatic telephone dialing system and/or prerecorded or automatic voice messages." Am. Compl., ¶ 28. However, the TCPA specifically allows automated calls to

---

[3] The *Limestone* Court noted that *Twombly*'s revised standards for surviving motions to dismiss were even more important in cases that threaten large damages (such as classwide, statutory TCPA or FCRA damages) in order to encourage settlement of groundless claims:

> . . . the Supreme Court had warned against permitting a plaintiff "with a largely groundless claim to simply take up the time of a number of other people, with the right to do so representing an in terrorem increment of the settlement value, rather than a reasonably founded hope that the [discovery] process will reveal relevant evidence." *Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723, 741, 95 S.Ct. 1917, 44 L.Ed.2d 539 (1975). Under *Bell Atlantic*, the complaint in a potentially complex litigation, or one that by reason of the potential cost of a judgment to the defendant creates the "in terrorem" effect against which *Blue Chip* warned, must have some degree of plausibility to survive dismissal.

*Limestone*, 520 F.3d at 803.

be made to cellular telephones when a person has provided express consent to be contacted for business purposes at that number. The relevant portion of the statute reads:

> (b) Restrictions on use of automated telephone equipment
>
> (1) Prohibitions
>
> It shall be unlawful for any person within the United States, or any person outside the United States if the recipient is within the United States--
>
> (A) to make any call (**other than a call** made for emergency purposes or **made with the prior express consent of the called party**) using any automatic telephone dialing system or an artificial or prerecorded voice--. . .
>
> (iii) to any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call[.]

47 U.S.C. § 227(b)(1) (emphasis added). The TCPA's prohibition against automated calls to cellular telephones thus expressly **exempts** calls made with the consent of the called party.

Here, as Plaintiff's Complaint and the recent motion she filed make clear, Plaintiff did in fact register for a fraud alert and specifically asked to be contacted by businesses running credit checks at the cellular telephone number she provided. *See generally* Part II, *supra*. She provided that cell phone number as the number at which she wanted all communications from potential creditors or account holders. *See id*. Indeed, the FTC (coincidentally, one of the chief enforcers of the TCPA, along with the FCC) encourages consumers to provide their cellular telephone numbers for purposes of fraud alerts. *See* RJN, Docket No. 23, Ex C at 3 [Doc. 23-1 at 26]. And moreover, the FCRA section governing fraud alerts actually requires that a person who registers for a fraud alert and provides a telephone number must be contacted at that very number: "If a consumer requesting the alert has specified a telephone number to be used for identity verification purposes, . . . a user of such consumer report shall contact the consumer

using that telephone number or take reasonable steps to verify the consumer's identity . . ." 15 U.S.C.A. § 1681c-1(h)(B)(ii).[4]

An automated call can be made to a cellular telephone number at which a consumer has expressly consented to be contacted. *See* 47 U.S.C. §227(b)(1). Thus, in assessing automated calls in the non-telemarketing, collections context, the FCC has determined that when a person provides a cell phone number to a business in a credit application, that consumer has provided prior express consent for future automated collections calls related to debts accrued during the parties' business relationship. *See* FCC Declaratory Ruling 07-232, 23 F.C.C.R. 559, 564 (Dec. 28, 2007) (finding automated calls to cellular telephones for collections permissible under the TCPA, because "the provision of a cell phone number to a creditor, *e.g.,* as part of a credit application, reasonably evidences prior express consent by the cell phone subscriber to be contacted at that number regarding the debt"). Similarly, when it is clear here from Plaintiff's own complaint that she opted to provide her cellular telephone number (and not a home or business land line) specifically for the purpose of receiving fraud alert calls, then it is also clear that she gave prior express consent to receive fraud alert calls on her cellular phone. Plaintiff can point to no statute, declaratory ruling, or case saying otherwise.

Indeed, the FCC's December 2007 FCC Declaratory Ruling notes that the intent of the TCPA was never to penalize a business contacting a consumer at a cell phone number provided for normal business communications:

---

[4] Plaintiff's misguided theories of liability would put companies on the horns of a dilemma: if a consumer provides a cellular telephone number in connection with a fraud alert, as recommended by the FTC, the company would either violate the TCPA by calling the number to verify the account using an automated call process that the company finds most effective to reach consumers, or else violate the FCRA by **not** calling the number. That is simply not a plausible reading of the statutes, and further highlights the nonsensical nature of Plaintiff's lawsuit here.

> In the *1992 TCPA Order*, the Commission determined that "persons who knowingly release their phone numbers have in effect given their invitation or permission to be called at the number which they have given, absent instructions to the contrary." The legislative history in the TCPA provides support for this interpretation. Specifically, the House report on what ultimately became section 227 states that: "[t]he restriction on calls to emergency lines, pagers, and the like **does not apply when the called party has provided the telephone number of such a line to the caller for use in normal business communications**."

FCC Ruling 07-232, 23 F.C.C.R. at 564 (emphasis added).[5]

In light of Plaintiff's undisputed request to be contacted with fraud alerts at the cellular phone number she knowingly provided, Plaintiff gave express consent to receive an automated fraud alert call like the one she received from DIRECTV. *See* Am. Compl. ¶11; *see also* RJN, Docket No. 23, Exs. D and E [Doc. 23-1 at 32, 35]. Her allegations about DIRECTV's actions are thus consistent with lawful behavior under the TCPA. Consequently, her TCPA allegations fail to state a cause of action and must be dismissed. *See Brooks*, 578 F.3d at 581-82 (motion to dismiss should be granted when a plaintiff fails to ground legal conclusions in a sufficiently plausible factual basis, and when factual allegations can be consistent with no wrongdoing).

**II. Plaintiff's TILA Claim Fails As A Matter Of Law Because DIRECTV Does Not Issue "Credit Cards" As Defined By That Act.**

Plaintiff's TILA claim is equally unavailing. TILA is a disclosure statute that "requires disclosure of certain terms and conditions of credit before consummation of a consumer credit transaction." *Rendler v. Corus Bank*, 272 F.3d 992, 996 (7th Cir. 2001). Its goal is to "help consumers accurately compare credit rates" and "to protect the consumer against unfair credit

---

[5] If, in opposition to this Motion, Plaintiff refers this Court to *Leckler v. Cashcall, Inc.*, 554 F. Supp. 2d 1025, 1029 (N.D. Cal. 2008), the one case in which a trial court refused to follow the FCC's Declaratory Ruling discussed above, it is important to note that within six months, the same trial court **vacated** that decision, recognizing that it lacked jurisdiction to challenge the FCC's ruling on what constitutes "prior express consent" under the TCPA. *See Lecker v. Cashcall, Inc.*, No. C 07-04002 SI, 2008 WL 5000528 (N.D. Cal. Nov. 21, 2008). Thus, it would be improper for Plaintiff to argue that the vacated *Leckler* decision's analysis should in any way be persuasive or instructive here.

billing and credit card practices." *Id.*; *see also* 15 U.S.C. § 1601(a). And as pointed out by Plaintiff, TILA thus prohibits issuance of new credit cards without prior request by a consumer. *See* 15 U.S.C. § 1642 ("No **credit card** shall be issued except in response to a request or application therefor.") (emphasis added); *see* Am. Compl. ¶ 55 (same).

But this prohibition on a "credit card" is not left open to interpretation, so as to allow a plaintiff to assert that the provision of satellite programming services can be deemed a "credit card" subject to the prohibition in 15 U.S.C. § 1642. Instead, TILA specifically defines "credit cards" in a manner that does not equate them with consumer services that will be billed later. *See* 15 U.S.C. § 1602(k) ("The term 'credit card' means any card, plate, coupon book or other credit device existing for the purpose of obtaining money, property, labor, or services on credit."). The Board of Governors of the Federal Reserve System, when implementing TILA, also defined the term "credit card" under TILA as different from the term "credit":

> (14) *Credit* means the right to defer payment of debt or to incur debt and defer its payment.
>
> (15) *Credit card* means any card, plate, coupon book, or other single credit device that may be used from time to time to obtain credit. *"Charge card"* means a credit card on an account for which no periodic rate is used to compute a finance charge.

12 C.F.R. § 226.2(a)(14-15).

Under such plain definitions, Plaintiff's TILA claim fails as a matter of law. Plaintiff has only alleged that DIRECTV provides "credit" in providing service first and then billing for it later (*see* Am. Compl., ¶ 57). But that is not the same as issuing a "**single credit device**" such as a card, coupon book, or plate that can be exchanged for services. *See* 12 C.F.R. § 226.2(a)(14-15) (emphasis added); 15 U.S.C. § 1602(k). Because Plaintiff has not alleged, and cannot allege that DIRECTV issued a credit device or credit card in her name, and simply makes a conclusory and factually unsupported (and incorrect) statement that DIRECTV has issued a "credit card",

10

her TILA claim must be dismissed. *See Brooks*, 578 F.3d at 581 ("[I]n considering the plaintiff's factual allegations, courts should not accept as adequate abstract recitations of the elements of a cause of action or conclusory legal statements.").

### III.     Plaintiff's FCRA Claim Must Be Dismissed Because Plaintiff Has Not Alleged Any Willful Violation.

Finally, Plaintiff's FCRA claim should also be dismissed. The only "factual allegations" she makes in support of this claim are (1) that "using a method of contacting consumers with fraud alerts on their credit reports that is proscribed by federal law is not 'reasonable' within the meaning of FCRA 15 U.S.C. § 1681c-1(h)" (Am. Compl. ¶ 24), and (2) that the "inconvenience" of being asked to fill out "an affidavit relating to their situation" is "not fair to the victims" and evidences a "failure to have reasonable procedures pursuant to section 1681c-1(h)." *Id.*, ¶26. *See also id.*, ¶ 62 ("Defendant DIRECTV recklessly violated 15 U.S.C. § 1681c-1(h)" by not using or following "reasonable" policies and procedures). Such bald allegations are legal conclusions that do not support a claim under the new Rule 8 standards. *See Iqbal*, 129 S. Ct. at 1949 ("A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement.") (internal citations omitted).[6]

Furthermore, the relief Plaintiff seeks under FCRA Section 1681n (*see* Am. Compl. ¶ 73) is not available under the "facts" alleged in the Amended Complaint. Section 1681n permits consumers to pursue civil actions for "willful noncompliance" with the requirements of the FCRA. *See* 15 U.S.C. §1681n-(a); *see also Tinsley v. TRW Incorporated, et. al.*, 879 F.Supp.

---

[6] Moreover, as described above, Plaintiff's premise that using an automated fraud alert system to call her at the number she provided in connection with her fraud alert violates federal law (*i.e.*, the TCPA) is not plausible, particularly when FCRA **requires** users of consumer reports to contact a consumer at the number she elected to provide with her fraud alert. *See* 15 U.S.C.A. § 1681c-1(h)(B)(ii).

550, 552 (D. Md. 1995) ("FCRA does not impose strict liability, only liability for malicious or willful noncompliance, or for breach of a 'duty of reasonable care in preparation of the [credit] report.'"). If an act under the FCRA is not alleged to be willful, a viable claim has not been asserted because damages cannot be awarded absent willfulness. *See, e.g., Murray v. New Cingular Wireless Services, Inc.*, 432 F. Supp. 2d 788, 794 (N. D. Ill. 2006) (even when defendant technically violated Section 1681m of the FCRA, absent willful behavior so as to support statutory damages under Section 1681n, defendant's motion for summary judgment prevailed).

Plaintiff nowhere alleges (because she cannot) that DIRECTV **willfully** failed to comply with the fraud alert notification requirements within the FRCA. *See Murray*, 432 F. Supp. 2d at 793 ("To act willfully, a defendant must knowingly and intentionally violate [the FCRA], and it must also be conscious that [its] act impinges on the rights of others.") (citations omitted). Instead, both the fact (conceded in her Amended Complaint) that Plaintiff was indeed contacted about the fraud alert and her failure to allege that an account was fraudulently opened in her name demonstrate DIRECTV's **compliance** with the fraud alert provisions of the FCRA. *See Hinton v. Trans Union, LLC*, 654 F. Supp. 2d 440, 450 (E.D. Va. 2009) (granting motion to dismiss a Section 1681c-1 claim because allegations that Equifax reported a "fictitious fraud alert" after Plaintiff had requested a fraud alert "do not support a claim for a §1681c-1 *violation*, but rather suggest Equifax's *compliance* with the FCRA.") (original emphasis).

Where Plaintiff is complaining about a process that ensured she would not be charged for any DIRECTV account she did not open, and where she can point to no regulations or caselaw requiring any different fraud alert business practices than those employed by DIRECTV in calling her at the number she provided, there is simply no basis to permit her FCRA claim to

proceed. Indeed, the whole notion that DIRECTV's efforts to help Plaintiff prevent fraudulent activity in her name are somehow "unreasonable" makes no sense at all. *See Hinton*, 654 F. Supp. 2d at 450 (no viable claim under Section 1681c-1 when it appears that fraud alert was requested by Plaintiff, and was provided by credit agency). Consequently, her allegation of "reckless" violations and "unreasonable policies and procedures" do not rise to the level of factual support required for a civil claim under Section 1681n for willful noncompliance. *See Iqbal*, 129 S.Ct. at 1950 ("While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations."). Plaintiff's FCRA claim should thus be dismissed.

## CONCLUSION

Plaintiff's Amended Complaint fails to state a viable cause of action against DIRECTV. And, moreover, because the facts alleged by Plaintiff reveal that she will not be able to amend her complaint to assert plausibly unlawful behavior under the TCPA, TILA, or FCRA, her Amended Complaint should be dismissed with prejudice.

Dated: March 9, 2010            Respectfully submitted,

/s/ Amy E. Crawford
Amy E. Crawford, ARDC No. 6282700
amy.crawford@kirkland.com
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, IL 60654
Telephone: (312) 862-2000

Becca Wahlquist (*admitted pro hac vice*)
bwahlquist@manatt.com
MANATT, PHELPS & PHILLIPS, LLP
11355 W. Olympic Blvd.
Los Angeles, CA 90064
Telephone: (310) 312-4384

*Attorneys for DIRECTV, Inc.*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true and correct copy of the foregoing DIRECTV'S MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT was filed electronically on this 9th day of March 2010, and will, therefore, be served electronically upon:

>Alexander H. Burke
>Burke Law Offices, LLC
>155 N. Michigan Ave., Suite 9020
>Chicago, IL 60601
>Tel: (312) 729-5288
>ABurke@BurkeLawLLC.com
>*Counsel for Plaintiff*

>/s/ Amy E. Crawford
>Amy E. Crawford, ARDC No. 6282700