**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| BRIANNA GREENE on behalf of herself and | ) | |
| others similarly situated, | ) | 1:10-cv-117 |
|     Plaintiff, | ) | |
| | ) | Judge Kocoras |
|         v. | ) | Magistrate Judge Cox |
| | ) | JURY DEMANDED |
| DIRECTV, INC., and | ) | |
| IQOR, INC. | ) | |
|     Defendant. | ) | |

**PLAINTIFF'S FIRST MOTION TO COMPEL**

Plaintiff respectfully requests that this Court compel defendant DirecTV, Inc. ("DirecTV") to properly respond to discovery.  In support of this motion, plaintiff states:

This is a Telephone Consumer Protection Act, 47 U.S.C. § 227(b) ("TCPA") and Fair Credit Reporting Act, 15 U.S.C. §1681 et seq. class action, based upon DirecTV's improper and insufficient handling of fraud alert notifications it receives from credit bureaus, in association with applications for satellite television.   DirecTV opened a satellite television account even though it had received several fraud alerts from credit bureaus, indicating that the application was likely fraudulent.  This Court has stayed class discovery.

Plaintiff's third and fourth sets of discovery are aimed at proving that DirecTV's violation of the FCRA was "willful" pursuant to 15 U.S.C. §1681n. Willful in the context of the FCRA has been held to be identical to "reckless." *Safeco Ins. Co. v. Burr*, 551 U.S. 47, 56-57 (2007).  Thus, plaintiff's discovery is designed to unearth DirecTV's knowledge of the FCRA, and show that DirecTV knew or should have known that opening an account first, and then calling to check to see whether there is fraud involved, violates the FCRA.

1

I.      **Statement of the Case**

Plaintiff Brianna Greene is the victim of identity theft and a mixed credit file.  Another consumer named Larquette Green has a very similar social security number to that of plaintiff, and may have been using plaintiff's social security number and other iterations thereof to open credit accounts since around the end of 2007.  Larquette Green's identifying information and credit accounts have thus appeared on plaintiff's credit reports, and plaintiff has been subjected to various other evils associated with the ID theft.

The Fair and Accurate Credit Transactions Act ("FACTA") amendment to the FCRA was implemented in 2003 "to prevent identity theft, improve resolution of consumer disputes, improve the accuracy of consumer records, make improvements in the use of, and consumer access to, credit information,"  2004 U.S.C.C.A.N. 1753, H.R. CONF. REP. 108-396, H.R. Conf. Rep. No. 396, 108th Cong., 1ST Sess. 2003, available at 2003 WL 22761472 (Nov. 21, 2003).

Section 1681c-1, which was part of FACTA, gives consumers the right to place a "fraud alert" or "extended fraud alert" on their credit report.  Once a fraud alert or extended fraud alert has been placed, the credit bureaus are required to "include a fraud alert in the file of that consumer, and also provide that alert along with any credit score generated in using that file." 15 U.S.C. §1681c-1(a)(1)(A) and 1681(b)(2)(A).

Because she had previously been subjected to identify theft, plaintiff initiated an "extended fraud alert" on her credit report through the credit bureau Equifax.

When a creditor or potential creditor accesses a consumer report that has a fraud alert or extended fraud alert in the credit file, the creditor or potential creditor receives a copy of the alert, which notifies "all prospective users of a consumer report on the consumer to which the

2

alert relates that the consumer does not authorize the establishment of any new credit plan or extension of credit..."   15 U.S.C. §1681c-1(h)(1)(A) and 1681(h)(2)(A).

Section 1681c-1 then places restrictions upon "users" of credit reports that have fraud alerts or extended fraud alerts, such as DirecTV, as such:

> **(B) Limitation on users [for extended fraud alerts]**
>
> **No prospective user of a consumer report or of a credit score generated using the information in the file of a consumer that includes an extended fraud alert in accordance with this section may establish a new credit plan or extension of credit,** other than under an open-end credit plan (as defined in section 1602 (i) of this title), in the name of the consumer, or issue an additional card on an existing credit account requested by a consumer, or any increase in credit limit on an existing credit account requested by a consumer, **unless the user contacts the consumer in person or using the contact method described in subparagraph (A)(ii) to confirm that the application for a new credit plan or increase in credit limit, or request for an additional card is not the result of identity theft.**

Discovery will show that DirecTV received a telephonic application for satellite television services from Larquette Green on December 28, 2009, using plaintiff's social security number. DirecTV accessed plaintiff's credit report, rather than Larquette's, and received plaintiff's extended fraud alert.  DirecTV immediately opened the satellite television account in spite of the extended fraud alert, and installed satellite television in Larquette Green's Milwaukee home a few days later, on January 2, 2010.  This was not the only fraud alert DirecTV received with regard to Larquette and plaintiff:  apparently, Larquette visited DirecTV's website and called DirecTV several times before December 28, 2009, resulting in DirecTV receiving three other fraud alert notifications.

DirecTV had defendant iQor, or one of its subsidiaries called First Contact, use an automatic telephone dialing system and prerecorded voice message to call plaintiff on the afternoon of January 5, 2010, after it had already installed satellite service in the fraudster's

home, stating that plaintiff had recently opened a DirecTV account and placing the burden upon plaintiff to opt out if the account was in error or fraudulent.

DirecTV's procedure of (1) opening credit accounts first, and then (2) using an automatic telephone dialing system and prerecorded message to call the potential fraud victim, (3) to ask the consumer to opt out if the account was fraudulent, is not compliant with section 1681c-1, which prohibits opening a new account without *first* confirming that the application was not fraudulent.  Using an autodialer to make such a call is a violation of the TCPA.

## II.   Meet and Confer

On April 14, 2010, this Court denied DirecTV's motion to dismiss as to the FCRA and TCPA claims, and lifted the discovery stay as to merits discovery, but not class discovery. Plaintiff first issued her third set of discovery on or about June 8, 2010, and her fourth set of discovery on June 9, 2010.  Exhibit A and B.  DirecTV responded on July 14, 2010 and moved that all discovery be stayed while its motion to dismiss was pending.

DirecTV responded on July 14, 2010, and 19, 2010.  Exhibit C and D.  Plaintiff issued her second set of discovery, consisting of one interrogatory, on April 16, 2010.  DirecTV responded on May 21, 2010.  Exhibit E.

Plaintiff's counsel Alexander Burke viewed Exhibits C and D as insufficient, and sent a meet and confer email to defense counsel Becca Wahlquist through email on July 21, 2010. Exhibit F.  Plaintiff's counsel also left defense counsel a voice mail on that date reiterating Exhibit F's request for a telephonic meet and confer.  Defense counsel responded through the fax attached as Exhibit G, which refuses to provide any more materials.  Defense counsel never called plaintiff's counsel back, and indicated in Exhibit F that plaintiff should move to compel

4

these materials.  DirecTV has also steadfastly refused to provide responses to plaintiff's Second set of discovery.  Plaintiff moves to compel.

III.   **Argument**

"Mutual knowledge of all the relevant facts gathered by both parties is essential to proper litigation. To that end, either party may compel the other to disgorge whatever facts he has in his possession." *Hickman v. Taylor*, 329 U.S. 495, 507 (1947).  The Rules have broadened the scope of discovery to "any matter, not privileged, that is relevant to the claim or defense of any party....  Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence."  Fed.R.Civ.P. 26(b)(1).

"[T]he discovery-deposition provisions of the Federal Rules, were intended to insure 'proper litigation' by making the trial less a game of blindman's buff and more a fair contest with the basic issues and facts disclosed to the fullest practicable extent."  *Goldman v. Checker Taxi Co.*, 325 F.2d 853, 855 (7th Cir. 1963) (internal citations and quotations omitted). Furthermore, complete interrogatory responses may help the parties avoid unnecessary depositions and further cost to the parties.  *In re Shopping Carts Antitrust Litigation*, 95 F.R.D. 299, 307-308 (S.D.N.Y. 1982).

"[T]he mere statement by a party that the interrogatory was "overly broad, burdensome, oppressive and irrelevant" is not adequate to voice a successful objection to an interrogatory. On the contrary, the party resisting discovery "must show specifically how ... each interrogatory is not relevant or how each question is overly broad, burdensome or oppressive." *Josephs v. Harris Corp.,* 677 F.2d 985, 992 (3d Cir. 1982).

Compelling production of materials sought promotes justice and quick resolution a matter. *Yancey v. Hooten*, 180 F.R.D. 203 (D.Conn. 1998) (compelling discovery in FDCPA case). *Lucas v. GC Services*, 226 F.R.D. 328 (N.D.Ind. 2004) (FDCPA 1692g action) (sister case lost merits on appeal) compelling all discovery requests as sanction. "The defendants do not get to determine unilaterally the scope and timing of discovery." *Lucas v. GC Servs. L.P.*, 226 F.R.D. 328, 331 (N.D. Ind. 2004).

An attorney is required to monitor discovery compliance and ensure that the client has both preserved potentially discoverable electronic materials, and that the client has performed a reasonable search. See Fed.R.Civ.P. 26(b)(2); *Zubulake v. UBS Warburg LLC*, 229 F.R.D. 422 (S.D.N.Y. 2004); *Qualcomm Inc. v. Broadcom Corp.*, 2008 WL 66932 (S.D.Cal. Jan 07, 2008), vacated in irrelevant part, 2008 WL 638108 (S.D.Cal. Mar 05, 2008). The result of this is likely waiver. *Ner-Tamid Congregation of North Town v. Krivoruchko*, 2009 WL 152587, 08 C 1261 (N.D.Ill. Jan. 22, 2009); *Mosley v. City of Chicago*, 252 F.R.D. 445 (N.D.Ill. 2008). The result of the failure to perform an adequate search is wavier.

**A.      Plaintiff is Entitled to Learn about DirecTV's Internal Treatment of Fraud Alerts Because Such Information is Relevant to "Willfulness."**

As indicated earlier, the United States Supreme Court has held that a plaintiff seeking to prove a "willful" violation of the FCRA need only show that the defendant was "reckless." *Safeco Ins. Co. v. Burr*, 551 U.S. 47, 56-57 (2007). Plaintiff thus issued the following interrogatories and document requests asking for materials concerning compliance with the precise section of the FCRA invoked in this lawsuit, 15 U.S.C. §1681c-1(h), and the FTC's "red flag" rules that compliment, and mention, section 1681c-1's identity theft provisions:

<u>Interrogatory 1</u>: Third Discovery Requests, Exhibit C pp. 6-7:  Identify all policies, practices and procedures that you have ever considered or implemented with regard to compliance with the FCRA, 15 U.S.C. §1681c-1, as it pertains to account applications where there is a fraud alerts and extended fraud alert. Please respond without regard to time, except that the response should not include responsive materials from after this lawsuit was filed.

RESPONSE TO INTERROGATORY NO.1: DIRECTV already produced in discovery documents bates labeled DTV - GREENE 0031-0036, which identify the fraud alert policies, practices, and procedures in place on the day Plaintiff was called, and which had furthermore been in place relative to fraud alerts since 2005.  There were no other fraud alert policies, practices, and procedures in place before those discussed in DTV - GREENE 0031-0036. DIRECTV incorporates herein its response to Interrogatory No.3 (First Set of Discovery), which details the policies, practices, and procedures involved in DIRECTV's fraud alerts.

DIRECTV objects that other policies, practices, or procedures related to fraud alert calls that may have been "considered" before the institution of those in place when Plaintiff received her call are not relevant to this lawsuit, and furthermore involve a pre-2005 timeframe well outside the statute of limitations. And "considerations" about potential future changes not in place when Plaintiff received her call are irrelevant. Moreover, DIRECTV notes that the FTC (which is the governmental body that would enforce DIRECTV's compliance with 15 U.S.C. §1681c-1) has delayed enforcement of the Red Flag Rules through at least December 2010 so that companies under its governance (like DIRECTV) could continue developing Red Flag programs. DIRECTV further objects that DIRECTV's "considerations" in relation to changing any fraud alert practices before FTC enforcement have been in conjunction with and at the direction of attorneys, and would be privileged; but, in any case, such discussion of future changes are irrelevant to Plaintiff s claim.

<u>Interrogatory 2</u>: Third Discovery Requests, Exhibit C, p. 7:  Identify all documents concerning compliance with the FCRA, 15 U.S.C. § 1681 c-1, as it pertains to account applications where there is a fraud alert and extended fraud alert. Please respond without regard to time, except that the response should not include responsive materials from after this lawsuit was filed.

RESPONSE TO INTERROGATORY NO.2: DIRECTV incorporates herein its response to Interrogatory 1 above.  DIRECTV further objects that this Interrogatory seeks class discovery, as it seeks all documents showing fraud alert calls that DIRECTV has made. DIRECTV has produced the nonclass discovery documents related to Plaintiff and to the fraud alert call made to her.

The document requests and objections from the third set of discovery numbers 1, 2 and 3 mirror these interrogatories, and ask for related documents.  Exhibit C at pp 14-15.

These materials are reasonably calculated to lead to discovery of admissible evidence, and are tailored to the issues in this litigation.  A party's understanding of the law is relevant to a willfulness inquiry.  *Claffey v. River Oaks Hyundai, Inc.*, 494 F.Supp.2d 976, 978-79 (N.D.Ill. 2007) ("Evidence of a party's actions and intentions is unquestionably relevant in determining whether that standard is met in a particular case.")

DirecTV made important decisions about efficiency and effectiveness when it implemented the contested fraud alert policies, practices and procedures.  Based upon its policy of using a machine to call alleged identity theft victims, plaintiff believes that full responses to this discovery will reveal that DirecTV decided to place its own pecuniary interests before that of identity theft victims.  In any event, full responses to these requests will reveal correspondence and other documents concerning fraud alert policies, procedures and practices that DirecTV considered when deciding to implement those that it eventually wound up implementing will shed light upon what factors DirecTV considered most important in setting up its flawed policy of calling fraud alert consumers *after* opening satellite television accounts.

Plaintiff similarly asked for DirecTV's policies, practices and procedures regarding FCRA "Red Flag" rules and regulations that were issued by the FTC and other governmental agencies. Document request 1 and 2 of plaintiff's Fourth Discovery Requests thus ask for:

Doc. Req. 1: Fourth Discovery Requests, Exhibit D, pp. 3-4:  Your entire written Identity Theft Prevention Program implemented pursuant to any FCRA Red Flag rule, including but not limited to 16 C.F .R. § 681.( d), all drafts and iterations thereof and all correspondence or other documents concerning such.

RESPONSE TO REQUEST FOR PRODUCTION NO.1: DIRECTV objects to Request No.1 as overly broad and unduly burdensome in scope, as the "entire written Identity Theft Prevention Program" goes far beyond Plaintiffs claims, which relate solely to fraud alert calls. DIRECTV has produced its documents showing the fraud alert procedures and processes that were put in place in 2005 and that were still in place when Plaintiff received her fraud alert call in January 2010.

Any documents that address potential changes to such procedures are thus irrelevant to Plaintiffs claims, and will not be produced. Moreover, and in any case, those irrelevant documents would likely be protected by attorney client privilege because documents discussing compliance with FCRA Red Flag guidelines related to fraud alerts (including all drafts and iterations of documents showing future changes) would have been created under the supervision of legal counsel. Finally, DIRECTV objects to Request No.1 as irrelevant because the FCRA Red Flags guidelines, though promulgated, are not being enforced by DIRECTV's governing federal regulatory agency, the Federal Trade Commission.

<u>Doc. Req. 2</u>: Fourth Discovery Requests, Exhibit D, pp. 4-5:  All documents that concern compliance with any FCRA Red Flag rule including but not limited to 16 C.F.R. § 681.1, that also concern notifications from outside sources, such as consumer reporting agencies, of possible or likely identity theft.

RESPONSE TO REQUEST FOR PRODUCTION NO.2: DIRECTV objects to Request No.2 as overly broad and unduly burdensome in scope, as the "All documents that concern compliance with any FCRA Red Flag rule" and that involve "notification fron outside sources" goes far beyond Plaintiffs claims, which relate solely to fraud alert calls. Moreover, DIRECTV has already produced its documents showing any fraud alert notification that it received with Plaintiffs provided telephone number. Any documents that address notifications for persons other than Plaintiff would be class-related discovery, which the Court has stayed, and. will not be produced. Furthermore, DIRECTV objects to Request No.2 as irrelevant because the FCRA Red Flags guidelines, though promulgated, are not being enforced by DIRECTV's governing federal regulatory agency, the Federal Trade Commission.

The red flag rules, which were effective January 1, 2008 and require businesses to have written policies designed to curb identity theft, specifically reference fraud alerts as an indicator of likely fraud.  See e.g. 12 C.F.R. Supplement A to Appendix J to Part 41 – "Alerts, Notifications or Warnings from a Consumer Reporting Agency":

> **In addition to incorporating Red Flags from the sources recommended in section II.b. of the Guidelines in Appendix J of this part, each financial institution or**

**creditor may consider incorporating into its Program, whether singly or in combination, Red Flags from the following illustrative examples in connection with covered accounts:  1. A fraud or active duty alert is included with a consumer report.**

See also <u>Exhibit H</u>, January 2009 press release to Telecom companies, such as DirecTV, about the Red Flag rules, indicating that fraud alerts are an indicia of fraud.  Plaintiff has no idea whether DirecTV has ever seen this document, although it is very likely that it has, because DirecTV has steadfastly refused to provide discovery regarding these issues.

Thus, the Red Flag rules DirecTV has implemented, or considered, are directly relevant to these proceedings.  Even if DirecTV has not implemented any written Red Flag rules, which seems likely given its objection that it does not have to produce anything given that enforcement of the rules has been delayed, any documents relating to fraud alerts with respect to the Red Flag rules are directly relevant to these proceedings, and should be compelled.

      **B.**    <u>**DirecTV is Not entitled to Assert Attorney-Client Privilege**</u>.

DirecTV should not be permitted to assert the attoney client privilege for two reasons.  First, plaintiff has repeatedly asked DirecTV to indicate whether it plans to use "advice of counsel" as part of its defense, and has been largely ignored.  Second, DirecTV has refused to provide a privilege log of responsive materials it claims are privileged, resulting in waiver.

      **a.**   **A Party Cannot Permissibly Withhold Documents based upon "Attorney Client Privilege if it Intends to Use "Attorney Advice" as a Shield to Liability.**

Plaintiff's counsel and defense counsel have had several telephone discussions regarding whether DirecTV plans to use "advice of counsel" as part of its defense in this case.  Plaintiff also stated her position as to the problem in Exhibit F, and was substantively ignored.  See Exhibit G.  Instead, DirecTV took the position that it need not provide a privilege log for

materials relating to its compliance with section 1681c-1, the precise section upon which the FCRA claims are based, because such materials are "irrelevant."

Judge Kennelly considered a similar issue in Claffey v. River Oaks Hyundai, another FCRA class action.  *Claffey v. River Oaks Hyundai*, 486 F.Supp.2d 776 (N.D.Ill.,2007).  The plaintiff requested that the defendant, which claimed that it did not willfully violate the FCRA, either produce the privileged materials, or be barred from mentioning advice of counsel at trial.  The defendant backed down, and recanted any  *Claffey v. River Oaks Hyundai, Inc.*, 494 F.Supp.2d 976 (N.D.Ill. 2007).

Plaintiff has attempted to ascertain from DirecTV what its position as to this issue is, but DirecTV has avoided providing any real information.  Exhibit G.  Plaintiff requests that the Court direct DirecTV to choose: either disavow any advice of counsel defense, or hold that it has waived the attorney client privilege by using such a defense.  *Panter v. Marshall Field & Co*., 80 F.R.D. 718, 721 (N.D. Ill. 1978) (asserting advice of counsel as a defense results in waiver).

### b.  DirecTV has Waived the Attorney Client Privilege by Refusing to Produce any Privilege Log.

Even if DirecTV decides not to rely upon advice of counsel, plaintiff is entitled to a privilege log.  Because DirecTV has stonewalled providing plaintiff with a privilege log that would allow plaintiff to assess the claim of privilege, it has waived the privilege altogether. *Donnelly v. NCO Financial Systems, Inc.*, 263 F.R.D. 500, 504-05 (N.D.Ill. 2009) (TCPA class action); United States v. Constr. Prods. Research, Inc., 73 F.3d 464, 473-74 (2d Cir. 1996); Ner-Tamid Congregation of North Town v. *Krivoruchko*, 2009 WL 152587, 08 C 1261 (N.D.Ill. Jan. 22, 2009); *Mosley v. City of Chicago*, 252 F.R.D. 445 (N.D.Ill. 2008).  Plaintiff therefore moves to compel all materials, including those that might be otherwise have been privileged had

defendant validly preserved such.  The parties have agreed that materials created because of or

pursuant to this litigation are not discoverable.

DirecTV maintained this obstinate position that it does not have to provide any

information concerning its compliance with section 1681c-1 despite plaintiff's repeated good

faith attempts to obtain such materials including a privilege loy, and warnings that plaintiff

would argue waiver if a log was not produced.  E.g.  <u>Exhibit E</u>, <u>F</u>.

**C.      DirecTV has Repeatedly Refused to Provide Full
          <u>Responses to Plaintiff's Second Set of Discovery</u>.**

Plaintiff's second set of discovery requests asked that the defendants do a sort of

privilege log for all responsive materials that were not being produced based upon any

objection:

> Identify all materials, documents and/or information you believe may exist, and are
> responsive to any discovery request in this case, but are not being produced in their
> entirety for any reason,  including but not limited to, for example, the materials,
> documents or information (1) are in the possession, custody or control of some person
> other than you, (2) may have been misplaced or destroyed, or (3) are being withheld
> such pursuant to any objection.
>       Include a description of the materials, document or information, who is believed
> to be in possession, custody or control of such, how  it may be obtained, and the specific
> reason for not producing such.  The authority such an interrogatory is derived from
> Fed.R.Civ.P. 26(b) and 33(a).

<u>Exhibit F</u>.  DirecTV objected, arguing that it had no duty to tell plaintiff what responsive

documents exist, and that there was no duty to provide plaintiff with a list of responsive

documents in the hands of third parties.  <u>Exhibit F</u>.

DirecTV's objection is not grounded in the Federal Rules.  As indicated in the request

itself, the interrogatory is based upon Rules 26(b) and 33(a).  Fed.R.Civ.P. 26(b)(1) states:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any
> party's claim or defense — **including the existence, description, nature, custody,**

**condition, and location of any documents or other tangible things and the identity and location of persons who know of any discoverable matter.**

This interrogatory asks exactly what Rule 26(b)(1), entitled "Scope in General" contemplates. Similarly, Rule 33(a)(2) provides: "(2) Scope. An interrogatory may relate to any matter that may be inquired into under Rule 26(b)."  Fed.R.Civ.P. 33(a)(2).  There is no question that a party, if asked, has an obligation to provide information about the whereabouts of documents and things that are not in its possession.

Nor is this interrogatory unduly burdensome.  In fact, it is "belt and suspenders" of how DirecTV should have responded to plaintiff's document requests.  Fed.R.Civ.P. 34(b)(2)(C) requires a party objecting to a document request to "specify the part and permit inspection of the rest." DirecTV had an obligation to "specify" what was not being produced.  Having had a fair amount of experience with defense counsel playing "hide the ball" with discovery requests, plaintiff issued this interrogatory in order to ensure that no responsive materials would slip through the cracks because of opaque objections.  DirecTV's response was not to respond in any meaningful way.  <u>Exhibit F</u>.  Plaintiff requests that the Court compel DirecTV to specify all materials and information it has not yet produced, or over which it claims not to have possession, custody or control, that are responsive to plaintiff's discovery requests.

## <u>CONCLUSION</u>

Plaintiff respectfully requests that the Court compel DirecTV to respond to the following interrogatories and document requests:

<u>Second Discovery Requests</u>:  Interrogatory 1;

<u>Third Discovery Requests</u>:      Interrogatories 1 & 2,
                                      Document Requests 1, 2 & 3;

13

<u>Fourth Discovery Requests</u>:    Document Requests 1 & 2;

Plaintiff further requests that this Court rule that DirecTV has waived the attorney-client privilege as to all documents requested for which no privilege log as been produced, or alternatively to require DirecTV to take a position as to whether it will be asserting an "advice of counsel" defense.

Respectfully submitted,

<u>/s/ Alexander H. Burke</u>
Counsel for Plaintiff


Alexander H. Burke
BURKE LAW OFFICES, LLC
155 N. Michigan Ave., Suite 9020
Chicago, IL 60601
(312) 729-5288
(312) 729-5289 (fax)
ABurke@BurkeLawLLC.com
www.BurkeLawLLC.com

# Exhibit A

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| BRIANNA GREENE on behalf of herself and others similarly situated,<br>        Plaintiff,<br><br>                        v.<br><br>DIRECTV, INC. and<br>iQOR, Inc.<br>        Defendants. | )<br>)  1:10-cv-117<br>)<br>)  Judge Kocoras<br>)<br>)  Magistrate Judge Cox<br>)<br>)<br>)  JURY DEMANDED |

**PLAINTIFF'S THIRD DISCOVERY REQUESTS**

Plaintiff Brianna Greene ("Plaintiff" or "Greene") hereby requests that defendants

DirecTV, Inc. and iQor, Inc. (each, "Defendant") respond to the following interrogatory.

Responses should be supplemented as responsive materials, documents or information is

discovered or produced.

Throughout this request:

1.      This request is limited in scope only to the extent that any related discovery

request is limited in scope. It is otherwise unlimited in scope.

2.      All requests are also directed to all parent, related, affiliate and subsidiary

companies of defendant, to the greatest extent permissible under the discovery rules.

3.      If you are declining to produce any document or respond to any paragraph in

whole or in part because of a claim of privilege, please: (a) identify the subject matter, type

(e.g., letter, memorandum), date, and author of the privileged communication or information,

all persons that prepared or sent it, and all recipients or addressees; (b) identify each person to

whom the contents of each such communication or item of information have heretofore been

1

disclosed, orally or in writing; (c) state what privilege is claimed; and (d) state the basis upon which the privilege is claimed.

4.      If any document requested was, but no longer is, in your possession or subject to your control, please state: (a) the date of its disposition; (b) the manner of its disposition (e.g., lost, destroyed, transferred to a third party); and (c) an explanation of the circumstances surrounding the disposition of the document.

Other instructions and definitions to be used in making your response are attached hereto as Exhibit A.

If any paragraph of this request is believed to be ambiguous or unduly burdensome, please contact the undersigned and an effort will be made to remedy the problem.

## REQUESTS FOR ADMISSION

1.      DirecTV customers' bills are due at the end of a billing period, for usage at least some of which has already occurred.

2.      Payment for DirecTV services is deferred, so that customers pay for service they have already received.

3.      DirecTV installed satellite television services in Milwaukee, Wisconsin, on January 5, 2010, with respect to the account that is in question in this case.

4.      DirecTV never sent a bill to Larquette Green.

5.      DirecTV opened a satellite television account for Larquette Green before it, or someone on its behalf, called plaintiff to investigate any fraud alert.

2

## INTERROGATORIES

1.    (DirecTV only) Identify all policies, practices and procedures that you have ever considered or implemented with regard to compliance with the FCRA, 15 U.S.C. §1681c-1, as it pertains to account applications where there is a fraud alerts and extended fraud alert.  Please respond without regard to time, except that the response should not include responsive materials from after this lawsuit was filed.

2.    (DirecTV only) Identify all documents concerning compliance with the FCRA, 15 U.S.C. §1681c-1, as it pertains to account applications where there is a fraud alerts and extended fraud alert.  Please respond without regard to time, except that the response should not include responsive materials from after this lawsuit was filed.

3.    (DirecTV only) Identify and provide the number of persons whose credit report indicated that there was a fraud alert or extended fraud alert, who were called by DirecTV or someone on DirecTV's behalf and , at the time of their application for your services along with the number of persons who responded to the telephone call that there had been fraud and the number of persons who .  Although it may be relevant to class discovery, which is stayed, this request is aimed at showing that DirecTV knows it opens fraudulent accounts, and is thus relevant to proving punitive damages and/or the amount of statutory damages.

4.    (Both defendants) Explain specifically what happened and what actions you took with respect to the Larquette Green and/or plaintiff, beginning in December 2009, and ending the date of these requests.  An example of something that happened would be that Larquette Green called to order satellite television.  An example of an action being taken would be that DirecTV opened an account, or installed satellite television at Larquette's home.  Please include

3

the date, identify all persons involved (e.g. the operators on the phone, the installation person, or the person that reviewed the fraud alert) , and the policy, practice or procedure upon which that action or happening was based.

## DOCUMENT REQUESTS

1.    Documents that reference or reflect any policies, practices and procedures that you have ever considered or implemented with regard to compliance with the FCRA, 15 U.S.C. §1681c-1, as it pertains to account applications where there is a fraud alert or extended fraud alert, including but not limited to pertaining to the initiatives described in DTV-GREENE 00031-36. Please respond without regard to time, except that the response should not include responsive materials from after this lawsuit was filed.

2.    Documents that reference or reflect efforts to comply with the FCRA, 15 U.S.C. §1681c-1, as it pertains to account applications where there is a fraud alerts or  extended fraud alert,  including but not limited to pertaining to the initiatives described in DTV-GREENE 00031-36. Please respond without regard to time, except that the response should not include responsive materials from after this lawsuit was filed.

3.    All contracts or agreements of any kind with any person, including third parties, that concern compliance with the FCRA, 15 U.S.C. §1681c-1, including but not limited to Selfcare, Credit Reporting Agencies, Equifax, Transunion and/or Experian.

4.    All documents concerning "Selfcare" as the term appears on DTV-Greene 143.

5.    All communications between you or your attorneys and any third party, including any expert or purported expert witness and subpoena respondents.

4

6. All materials you or your attorneys receive from any subpoena respondent or other third party regarding this case.

7. All notes, drafts, documents reviewed, documents used and other materials from any expert witness or lay witness in this case.

8. All documents reviewed by any person assisting in responding to any interrogatory, request for admission or request for production in this case.

/s/Alexander H. Burke

Counsel for Plaintiff

BURKE LAW OFFICES, LLC
155 N. Michigan Ave., Suite 9020
Chicago, IL 60601
(312) 729-5288
(312) 729-5289 (fax)
ABurke@BurkeLawLLC.com

5

**Exhibit A**

**INSTRUCTIONS AND DEFINITIONS**

**Definitions**

A. The term "document" includes, by way of illustration only and not by way of limitation, the following, whether printed or reproduced by any process, or written and/or produced by hand: ledgers; notes; correspondence; communications of any nature; telegrams; memoranda; notebooks of any character; summaries or records of personal conversations; diaries; reports; publications; photographs; microfilm, microfiche, and similar media; minutes or records of meetings; transcripts of oral testimony or statements; reports and/or summaries of interviews; reports and/or summaries of investigations; court papers; brochures; pamphlets; press releases; drafts of, or revisions of drafts of, or transcriptions of, any document; tape recordings; dictation belts; invoices; bills; accounting records; telephone toll records; and disks, tapes, and other magnetic or electronic information storage media. Any document or reproduction of a document bearing on any sheet or side thereof any marks, including by way of illustration only and not by way of limitation initials, stamped indicia, any comment or any notation of any character and not a part of the original text, is to be considered a separate document.

B. References to "you" or any named entity or individual include agents, employees, and attorneys of that person, whether or not acting within the scope of their authority; all other persons acting on behalf of the person referred to; and in the case of an entity, its merged or acquired predecessors.

C. "Person" includes any individual, corporation, partnership, joint venture, firm, association, proprietorship, governmental agency, board, authority, or commission, or other entity.

D. "Identify" or "identification," when used with respect to a person, means to state the name, last known address, telephone number, and if a corporation or other entity, the principal place of business of the person.

E. "Identify" or "identification," when used with respect to a document, means to state the general nature' of the document (i.e., letter, memorandum, etc.); the name of the author or originator; each addressee; all individuals designated on the document to receive a copy or otherwise known to have received a copy; the date, title, and general subject matter of the document; the present custodian of each copy thereof and the last known address of each such custodian; and the date of the making of the document.

F. "Communication" includes every manner or means of disclosure, transfer, or exchange of information, and every disclosure, transfer or exchange of information, whether orally or by document or whether face-to-face, by telephone, mail, personal delivery, or otherwise.

G. "Identify" or "identification," when used with respect to a communication, means to state the date of the communication; the type of communication (i.e., telephone conversation, meeting, etc.); the place where the communication took place; the identification of the person who made the communication; the identification of each person who received the communication and of each person present when it was made; and the subject matter discussed.

H. "Relates" includes constitutes, describes, discusses, reflects, refers to, and logically pertains to.

I. "TCPA" means the Telephone Consumer Protection Act, 47 U.S.C. §227 et seq, implementing regulations 47 C.F.R. 64.1200, and all valid FCC opinions interpreting such.

## Instructions

1. All documents within your possession, custody, or control or that of your agents, employees, and attorneys shall be produced. Without limitation of the term "control" as used in the preceding sentence, a document is deemed to be in your control if you have the right to secure the document or a copy thereof from another person having actual possession thereof.

2. To the extent any paragraph is objected to, please set forth all reasons for your objection.

3. If you prefer, you may provide legible copies of document that reflect all markings, notations, and highlighting on the originals.

4. Documents to be produced shall be either (1) organized as they are kept in the usual course of business or (2) organized and labeled to correspond with the paragraphs of the request for production.

5. The singular includes the plural number, and vice versa. The masculine includes the feminine and neuter genders. The past tense includes the present tense where the clear meaning is not distorted by change of tense.

6. To the extent that any document cannot be furnished, such documents as are available shall be supplied, together with a description of the documents not furnished and the reason for not furnishing them.

7. "And" and "or" shall be interpreted to mean "and/or," so that said terms are given their broadest possible meaning.

8. If you are producing a document, you need not provide the information specified in paragraph E with respect to that document.

7

**CERTIFICATE OF SERVICE**

I, Alexander H. Burke, certify that on June 8, 2010, I served these discovery requests via United States Mail and email to:

> Amy E. Crawford
> Kirkland & Ellis LLP
> 300 North LaSalle
> Chicago, IL 60654
> ACrawford@Kirkland.com
>
> Becca Wahlquist
> Manatt, Phelps & Phillips, LLP
> 11355 West Olympic Blvd
> Los Angeles, CA 90064-1614
> BWahlquist@manatt.com
>
> David M. Schultz
> Peter E. Pederson
> Hinshaw & Culbertson LLP
> 222 N. LaSalle St., Ste. 300
> Chicago, IL 60601
> PPederson@hinshawlaw.com
> DSchultz@hinshawlaw.com

/s/ Alexander H. Burke

8

# Exhibit B

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| BRIANNA GREENE on behalf of herself and | ) | |
| others similarly situated, | ) | 1:10-cv-117 |
|     Plaintiff, | ) | |
| | ) | Judge Kocoras |
|        v. | ) | |
| | ) | Magistrate Judge Cox |
| DIRECTV, INC. and | ) | |
| iQOR, Inc. | ) | |
|     Defendants. | ) | JURY DEMANDED |

**PLAINTIFF'S FOURTH DISCOVERY REQUESTS**

Plaintiff Brianna Greene ("Plaintiff" or "Greene") hereby requests that defendants

DirecTV, Inc. and iQor, Inc. (each, "Defendant") respond to the following interrogatory.

Responses should be supplemented as responsive materials, documents or information is

discovered or produced.

Throughout this request:

1.      All requests are also directed to all parent, related, affiliate and subsidiary

companies of defendant, to the greatest extent permissible under the discovery rules.

2.      If you are declining to produce any document or respond to any paragraph in

whole or in part because of a claim of privilege, please: (a) identify the subject matter, type

(e.g., letter, memorandum), date, and author of the privileged communication or information,

all persons that prepared or sent it, and all recipients or addressees; (b) identify each person to

whom the contents of each such communication or item of information have heretofore been

disclosed, orally or in writing; (c) state what privilege is claimed; and (d) state the basis upon

which the privilege is claimed.

1

3.      If any document requested was, but no longer is, in your possession or subject to your control, please state: (a) the date of its disposition; (b) the manner of its disposition (e.g., lost, destroyed, transferred to a third party); and (c) an explanation of the circumstances surrounding the disposition of the document.

4.      The requested materials should be produced in native format with all metadata intact.

Other instructions and definitions to be used in making your response are attached hereto as Exhibit A.

If any paragraph of this request is believed to be ambiguous or unduly burdensome, please contact the undersigned and an effort will be made to remedy the problem.

## DOCUMENT REQUESTS

1.      Your entire written Identity Theft Prevention Program implemented pursuant to any FCRA Red Flag rule, including but not limited to 16 C.F.R. § 681.1(d), all drafts and iterations thereof and all correspondence or other documents concerning such.

2.      All documents that concern compliance with any FCRA Red Flag urle including but not limited to 16 C.F.R. § 681.1, that also concern notifications from outside sources, such as consumer reporting agencies, of possible or likely identity theft.

/s/Alexander H. Burke
Counsel for Plaintiff

BURKE LAW OFFICES, LLC
155 N. Michigan Ave., Suite 9020
Chicago, IL 60601
(312) 729-5288
(312) 729-5289 (fax)
ABurke@BurkeLawLLC.com

2

**INSTRUCTIONS AND DEFINITIONS**

**Definitions**

A. The term "document" includes, by way of illustration only and not by way of limitation, the following, whether printed or reproduced by any process, or written and/or produced by hand: ledgers; notes; correspondence; communications of any nature; telegrams; memoranda; notebooks of any character; summaries or records of personal conversations; diaries; reports; publications; photographs; microfilm, microfiche, and similar media; minutes or records of meetings; transcripts of oral testimony or statements; reports and/or summaries of interviews; reports and/or summaries of investigations; court papers; brochures; pamphlets; press releases; drafts of, or revisions of drafts of, or transcriptions of, any document; tape recordings; dictation belts; invoices; bills; accounting records; telephone toll records; and disks, tapes, and other magnetic or electronic information storage media. Any document or reproduction of a document bearing on any sheet or side thereof any marks, including by way of illustration only and not by way of limitation initials, stamped indicia, any comment or any notation of any character and not a part of the original text, is to be considered a separate document.

B. References to "you" or any named entity or individual include agents, employees, and attorneys of that person, whether or not acting within the scope of their authority; all other persons acting on behalf of the person referred to; and in the case of an entity, its merged or acquired predecessors.

C. "Person" includes any individual, corporation, partnership, joint venture, firm, association, proprietorship, governmental agency, board, authority, or commission, or other entity.

D. "Identify" or "identification," when used with respect to a person, means to state the name, last known address, telephone number, and if a corporation or other entity, the principal place of business of the person.

E. "Identify" or "identification," when used with respect to a document, means to state the general nature' of the document (i.e., letter, memorandum, etc.); the name of the author or originator; each addressee; all individuals designated on the document to receive a copy or otherwise known to have received a copy; the date, title, and general subject matter of the document; the present custodian of each copy thereof and the last known address of each such custodian; and the date of the making of the document.

F. "Communication" includes every manner or means of disclosure, transfer, or exchange of information, and every disclosure, transfer or exchange of information, whether orally or by document or whether face-to-face, by telephone, mail, personal delivery, or otherwise.

G. "Identify" or "identification," when used with respect to a communication, means to state the date of the communication; the type of communication (i.e., telephone conversation, meeting, etc.); the place where the communication took place; the identification of the person who made the communication; the identification of each person who received the communication and of each person present when it was made; and the subject matter discussed.

H. "Relates" includes constitutes, describes, discusses, ref1ects, refers to, and logically pertains to.

I. "TCPA" means the Telephone Consumer Protection Act, 47 U.S.C. §227 et seq, implementing regulations 47 C.F.R. 64.1200, and all valid FCC opinions interpreting such.

**Instructions**

1. All documents within your possession, custody, or control or that of your agents, employees, and attorneys shall be produced. Without limitation of the term "control" as used in the preceding sentence, a document is deemed to be in your control if you have the right to secure the document or a copy thereof from another person having actual possession thereof.

2. To the extent any paragraph is objected to, please set forth all reasons for your objection.

3. If you prefer, you may provide legible copies of document that reflect all markings, notations, and highlighting on the originals.

4. Documents to be produced shall be either (1) organized as they are kept in the usual course of business or (2) organized and labeled to correspond with the paragraphs of the request for production.

5. The singular includes the plural number, and vice versa. The masculine includes the feminine and neuter genders. The past tense includes the present tense where the clear meaning is not distorted by change of tense.

6. To the extent that any document cannot be furnished, such documents as are available shall be supplied, together with a description of the documents not furnished and the reason for not furnishing them.

7. "And" and "or" shall be interpreted to mean "and/or," so that said terms are given their broadest possible meaning.

8. If you are producing a document, you need not provide the information specified in paragraph E with respect to that document.

**CERTIFICATE OF SERVICE**

I, Alexander H. Burke, certify that on June 9, 2010, I served these discovery requests via United States Mail and email to:

Amy E. Crawford
Kirkland & Ellis LLP
300 North LaSalle
Chicago, IL 60654
ACrawford@Kirkland.com

Becca Wahlquist
Manatt, Phelps & Phillips, LLP
11355 West Olympic Blvd
Los Angeles, CA 90064-1614
BWahlquist@manatt.com

David M. Schultz
Peter E. Pederson
Hinshaw & Culbertson LLP
222 N. LaSalle St., Ste. 300
Chicago, IL 60601
PPederson@hinshawlaw.com
DSchultz@hinshawlaw.com

/s/Alexander H. Burke

Exhibit C

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

BRIANNA GREENE, on behalf of herself )
and others similarly situated, )
)
   Plaintiff, ) Case No. 1:10-cv-117
)
  vs. ) Hon. Charles P. Kocoras
)
DIRECTV, INC. and iQOR, Inc., ) Magistrate Judge Cox
)
   Defendants. )
)

## DIRECTV'S RESPONSES TO PLAINTIFF'S THIRD DISCOVERY REQUESTS

  DIRECTV, Inc. ("DIRECTV"), pursuant to Federal Rules of Civil Procedure, hereby

provide this response to Plaintiff Brianna Greene's ("Plaintiff's") Third Discovery Requests.

## GENERAL OBJECTIONS

  1. DIRECTV objects to Plaintiff's Third Discovery Requests to the extent that they

attempt to impose obligations beyond the requirements set forth in the Federal Rules of Civil

Procedure and the Local Rules of this Court.

  2. DIRECTV objects to these Requests and Interrogatories to the extent that they

seek information that is neither relevant to the subject matter of this case nor reasonably

calculated to lead to the discovery of admissible evidence.

  3. DIRECTV objects to these Requests and Interrogatories to the extent they seek

information solely related to class certification issues, as the Court has stayed class discovery

until after defendants are able to move for summary judgment on the consent issue and on the

FCRA claim. DIRECTV hereby incorporates its General Statement Pertaining to Plaintiff's

Overbroad and Unduly Burdensome Discovery Requests, made in response to Plaintiff's First

Set of Discovery Requests.

4.      DIRECTV objects to these Requests and Interrogatories in that Plaintiff seeks information from outside the applicable Statutes of Limitations period by asking for information going back to January 2005, or even earlier.

5.      DIRECTV objects to these Requests and Interrogatories to the extent that they are overbroad and unduly burdensome because they are not limited to investigating the allegations made in the Amended Complaint, but instead range far beyond the allegations.

6.      DIRECTV objects to these Interrogatories to the extent they call upon DIRECTV to provide any of its customers' personally identifiable information on the ground that DIRECTV is required by law to enforce specific privacy protections pursuant to the Satellite Home Viewer Extension and Reauthorization Act of 2004, codified at 47 U.S.C. § 338 (2004), as well as other applicable laws protecting privacy.

7.      DIRECTV objects to these Requests and Interrogatories to the extent they are vague and/or unclear such that DIRECTV cannot identify the information requested.

8.      DIRECTV objects to these Requests and Interrogatories to the extent they seek information that is equally available to Plaintiff and/or publicly available.

9.      DIRECTV objects to these Requests to the extent they require DIRECTV to produce or otherwise analyze documents, things, or other information that are not reasonably within the possession, custody, or control of DIRECTV, or require DIRECTV to prepare documents or other information that do not already exist.

10.     DIRECTV objects to the Requests to the extent they call for the production of documents in native format with metadata intact on the ground that such a production implicates confidential information, is costly, and would require the production of information that is not relevant nor likely to lead to the discovery of admissible evidence.  To the extent that any

2

electronic documents are to be produced, DIRECTV will confer with Plaintiff's counsel

regarding the production of native files or metadata for specific types of documents where the

documents may be difficult to view without the native file, or where the Plaintiff's counsel

otherwise provides a valid purpose for requiring particular documents in native format or with

certain metadata fields intact.

11.     DIRECTV objects to these Requests to the extent they call upon DIRECTV to

provide documents and information protected from disclosure by the attorney-client privilege,

the attorney work product doctrine, or any other applicable privilege.  Inadvertent production of

any document protected by the attorney-client privilege, the attorney work product doctrine, or

any other applicable privilege or exemption shall not constitute waiver of any privilege or any

other ground for objecting to discovery with respect to such document or any other document, or

with respect to the subject matter thereof, or the information contained therein, nor shall

inadvertent production waive the right of DIRECTV to object to the use of any such document or

information contained therein during this or any subsequent proceeding.

12.     DIRECTV objects to providing a privilege log contemporaneously with these

responses to Plaintiff's Requests and will confer with Plaintiff's counsel regarding an appropriate

time to serve such a privilege log.

13.     With respect to Plaintiff's instruction to "'IDENTIFY' a document", DIRECTV

objects that it calls upon DIRECTV to provide information that is irrelevant, overly broad and

unduly burdensome, and going far beyond the requirements of the Federal Rules of Civil

Procedures in asking for the identity and address of every person preparing, signing, receiving,

or maintaining a document; the present location of the document; a summary of the contents of

the document; and, if the original document was destroyed, the date and reason for or

3

circumstances under which it was destroyed.

14.    With respect to Plaintiff's instruction to "'IDENTIFY' a person or entity", DIRECTV objects that it calls for information that is irrelevant, overly-burdensome to compile, and confidential insomuch as it would violate employees' right to privacy by revealing addresses and telephone numbers.

15.    DIRECTV has not yet completed its discovery or investigation relating to this case. The responses contained herein are based upon a diligent review of information and documents as are presently available and in DIRECTV's possession, custody, or control. DIRECTV anticipates that further review, discovery, investigation, research, and analysis could supply additional responses and information pertinent to this case. Accordingly, DIRECTV reserves the right to rely on any facts, documents, or other evidence that may develop or subsequently come to its attention, to assert additional objections or supplemental responses should DIRECTV discover additional information or grounds for objection, and to supplement or amend these responses at any time.

## RESPONSES TO REQUESTS FOR ADMISSION

These responses are made solely for the purpose of this action. DIRECTV incorporates each of the foregoing General Objections into each specific response to the Requests set forth below as if set forth in full therein. An answer to a Request is not intended to be, and shall not be deemed to be, a waiver of any applicable specific or general objection to a Request nor shall it be deemed an admission of relevance or admissibility.

## REQUEST FOR ADMISSION NO. 1:

DirecTV customers' bills are due at the end of a billing period, for usage at least some of which has already occurred.

4

**RESPONSE TO REQUEST FOR ADMISSION NO. 1:**

Admit.

**REQUEST FOR ADMISSION NO. 2:**

Payment for DirecTV services is deferred, so that customers pay for service they have

already received.

**RESPONSE TO REQUEST FOR ADMISSION NO. 2:**

Deny, as it is not always the case that payment for DIRECTV services is deferred.

**REQUEST FOR ADMISSION NO. 3:**

DirecTV installed satellite television services in Milwaukee, Wisconsin, on January 5,

2010, with respect to the account that is in question in this case.

**RESPONSE TO REQUEST FOR ADMISSION NO. 3:**

Deny.  However, DIRECTV admits that satellite receiving equipment was installed at

Larquette Green's Milwaukee residence on January 2, 2010.

**REQUEST FOR ADMISSION NO. 4:**

DirecTV never sent a bill to Larquette Green.

**RESPONSE TO REQUEST FOR ADMISSION NO. 4:**

Deny.

**REQUEST FOR ADMISSION NO. 5:**

DirecTV opened a satellite television account for Larquette Green before it, or someone

on its behalf, called plaintiff to investigate any fraud alert.

**RESPONSE TO REQUEST FOR ADMISSION NO. 5:**

DIRECTV admits that satellite television service was activated at Larquette Green's

residence in Wisconsin on an account in her name on January 2, 2010, and that a fraud alert call

5

was made to Plaintiff Brianna Greene the morning of January 5, 2010.

## RESPONSES TO INTERROGATORIES

These responses are made solely for the purpose of this action. DIRECTV incorporates each of the foregoing General Objections into each specific response to the Interrogatories set forth below as if set forth in full therein. An answer to a Interrogatory is not intended to be, and shall not be deemed to be, a waiver of any applicable specific or general objection to a Interrogatory nor shall it be deemed an admission of relevance or admissibility.

## INTERROGATORY NO. 1:

(DirecTV only) Identify all policies, practices and procedures that you have ever considered or implemented with regard to compliance with the FCRA, 15 U.S.C. §1681c-1, as it pertains to account applications where there is a fraud alerts and extended fraud alert. Please respond without regard to time, except that the response should not include responsive materials from after this lawsuit was filed.

## RESPONSE TO INTERROGATORY NO. 1:

DIRECTV already produced in discovery documents bates labeled DTV-GREENE 0031-0036, which identify the fraud alert policies, practices, and procedures in place on the day Plaintiff was called, and which had furthermore been in place relative to fraud alerts since 2005. There were no other fraud alert policies, practices, and procedures in place before those discussed in DTV-GREENE 0031-0036. DIRECTV incorporates herein its response to Interrogatory No. 3 (First Set of Discovery), which details the policies, practices, and procedures involved in DIRECTV's fraud alerts.

DIRECTV objects that other policies, practices, or procedures related to fraud alert calls that may have been "considered" before the institution of those in place when Plaintiff received

6

her call are not relevant to this lawsuit, and furthermore involve a pre-2005 timeframe well outside the statute of limitations. And "considerations" about potential future changes not in place when Plaintiff received her call are irrelevant. Moreover, DIRECTV notes that the FTC (which is the governmental body that would enforce DIRECTV's compliance with 15 U.S.C. §1681c-1) has delayed enforcement of the Red Flag Rules through at least December 2010 so that companies under its governance (like DIRECTV) could continue developing Red Flag programs. DIRECTV further objects that DIRECTV's "considerations" in relation to changing any fraud alert practices before FTC enforcement have been in conjunction with and at the direction of attorneys, and would be privileged; but, in any case, such discussion of future changes are irrelevant to Plaintiff's claim.

**INTERROGATORY NO. 2:**

(DirecTV only) Identify all documents concerning compliance with the FCRA, 15 U.S.C. §1681c-1, as it pertains to account applications where there is a fraud alert and extended fraud alert. Please respond without regard to time, except that the response should not include responsive materials from after this lawsuit was filed.

**RESPONSE TO INTERROGATORY NO. 2:**

DIRECTV incorporates herein its response to Interrogatory 1 above.

DIRECTV further objects that this Interrogatory seeks class discovery, as it seeks all documents showing fraud alert calls that DIRECTV has made. DIRECTV has produced the non-class discovery documents related to Plaintiff and to the fraud alert call made to her.

**INTERROGATORY NO. 3:**

(DirecTV only) Identify and provide the number of persons whose credit report indicated that there was a fraud alert or extended fraud alert, who were called by DirecTV or someone on

7

DirecTV's behalf and, at the time of their application for your services along with the number of persons who responded to the telephone call that there had been fraud and the number of persons who . Although it may be relevant to class discovery, which is stayed, this request is aimed at showing that DirecTV knows it opens fraudulent accounts, and is thus relevant to proving punitive damages and/or the amount of statutory damages.

## **RESPONSE TO INTERROGATORY NO. 3:**

DIRECTV objects that this Interrogatory seeks class discovery, which has been stayed by the Court pending the resolution of dispositive motions related to consent (TCPA) and standing (FCRA).

## **INTERROGATORY NO. 4:**

(Both defendants) Explain specifically what happened and what actions you took with respect to Larquette Green and/or plaintiff, beginning in December 2009, and ending the date of these requests. An example of something that happened would be that Larquette Green called to order satellite television. An example of an action being taken would be that DirecTV opened an account, or installed satellite television at Larquette's home. Please include the date, identify all persons involved (e.g. the operators on the phone, the installation person, or the person that reviewed the fraud alert), and the policy, practice or procedure upon which that action or happening was based.

## **RESPONSE TO INTERROGATORY NO. 4:**

DIRECTV objects to the instruction to Identify employees and policies unrelated to the fraud alert call at issue in this case as unduly burdensome.

### **As to DIRECTV subscriber Larquette Green**:

Consumers often visit www.directv.com to shop offers and educate themselves about

8

DIRECTV's programming packages and equipment. DIRECTV has no way to know whether Larquette Green visited www.directv.com at any point over the years, but does know that Larquette Green visited www.directv.com on December 21, 2009 and entered personal information into an order screen at approximately 5:04 pm—information that included Larquette Green's First Name, Last Name, Address Line, City, State, Zip Code, and Phone Number, and that she also provided a social security number. After such consumer information is entered, and if the consumer consents to a credit check, DIRECTV's systems receive information from a credit bureau, instantaneously process that information in conjunction with the other information collected by DIRECTV, and determine whether the consumer qualifies for the requested programming and equipment. A consumer can opt not to provide a social security number.

A request for credit information was made to Equifax at approximately 5:04 pm on December 21, 2009, as shown on DTV-GREENE 248 (unredacted version of DTV-GREENE 141), and a fraud alert notification was received by DIRECTV's automated systems along with response data (*see id.*; *see also* DTV-GREENE 252), but no order for services was placed by Ms. Green. The other Selfcare (Internet) touches for Larquette Green occurred when the website recognized her as a consumer who had previously inquired about service on December 23, 2009 both in the morning (around 8:50 am) and in the evening (6:35 pm), when she accessed the www.directv.com site, and one response from Equifax covered both requests for information made by DIRECTV's systems during these two Selfcare visits. *See* DTV-GREENE 141 & 253. No order for services was placed during any of these contacts, and no record of what pages or internet modules Larquette visited during those Selfcare visits exists.

Then, in the evening of December 23, after visiting the website, Ms. Green called DIRECTV to speak with a Customer Service Representative ("CSR"), but again no order was

9

placed, and there is no recording of that telephone call. *Id.* A request for credit information was again made to Equifax by DIRECTV's systems, generating another response. *See* DTV-GREENE 248 & 254. Five days later, in the evening of December 28, 2009, Ms. Green contacted DIRECTV by phone to place an order for services; during that call, two requests for credit information were made by DIRECTV's systems. *See* DTV-GREENE 248 & 255.

That order call was recorded, and a transcript of that call was provided to Plaintiff in discovery. *See* DTV-GREENE 166-180 (unredacted version of DTV-GREENE 95-109). The order was completed at approximately 10:30 pm (Wisconsin time). *See* DTV-GREENE 184 (unredacted version of DTV-GREENE 114). A confirmation e-mail, which is sent by automated systems soon after an order is placed to the email address provided by a consumer, was then sent to Ms. Green the evening of December 28, 2009 to the yahoo email address she had provided. *See* DTV-GREENE 181-183 (unredacted version of DTV-GREENE 110-111).

Installation of Ms. Green's receiving equipment and satellite dish took place at her Wisconsin residence on January 2, 2010, *see* DTV-GREENE 207-210. An initial bill for Larquette Green's account was generated and dated January 3, 2010, the day after services were activated, and then that first bill and the Customer Agreement were sent to her Milwaukee, Wisconsin address on January 3, 2010. *See* DTV-GREENE 239-244. Ms. Green also received an email confirming the $10-per-month for 10 months Refer-a-Friend credit she received when she provided another Milwaukee customer's account during her order as a reference. *See* DTV-GREENE 145. Further, on January 4, DIRECTV's systems credited Ms. Green with $16 and $5 monthly rebates she had requested. *See* DTV-GREENE 125-26.

Ms. Green's services were turned off on January 5, 2010 through a pending disconnect initiated by Plaintiff's inbound call discussed below; a few hours later, Larquette Green called

DIRECTV at 13:05 pm to inquire as to why the programming was no longer on her televisions. *See* DTV-GREENE 136. CSR notations indicate that she was asked to call back with the code showing on her screen. *Id.* Larquette called back at 14:33 pm on January 5 to ask again why her service was interrupted; CSR notations indicate that she was educated that her account was under pending disconnect. *Id.* She called again at 10:50 am the next morning, on January 6, 2010, and CSR notations indicate that she was informed that the account was disconnected "as per notes in Special Instructions" and that she was provided with a special 1-800 number to call that would have connected her to a team member in DIRECTV's Identity Theft Group. *Id.* DIRECTV has no further records of any incoming calls from Ms. Green, and has no recordings of these incoming calls on January 5-6.

DIRECTV has not communicated further with Ms. Green beyond one other automated email that was sent to Ms. Green on January 5, 2010 reminding her, after her first incoming call as a DIRECTV subscriber, that she could also contact DIRECTV through www.directv.com. *See* DTV-GREENE 113. On January 6, 2010, Larquette Green's account went from pending disconnect to disconnect status, and a note to that effect was placed in her files. *See* DTV-GREENE 136.

Because of the Plaintiff's quickly filed lawsuit, and because DIRECTV does not know the relationship (if any) between Plaintiff and Larquette Green, DIRECTV has not sought return of its satellite receiving equipment from Larquette Green or communicated further with that customer. Her account balance is $0.

**As to Plaintiff Brianna Greene**:

As relates to the fraud alert call received by Plaintiff, her telephone number was provided to DIRECTV along with credit information returned to DIRECTV's systems by Equifax that

11

included Larquette Green's name (and no other names), as well as Larquette's Milwaukee address and a Chicago address that appears to be Plaintiff's address. *See* DTV-GREENE 247, 251-258. Because a fraud alert was associated with Larquette Green's account, once Ms. Green activated services on January 2, 2010, the phone number provided as belonging to Larquette Green, as well as her account number, were forwarded by DIRECTV's automated computer system to an internal server. The information was then automatically encrypted and moved to an external ftp server, where it stayed until iQor and/or its subsidiary First Contact downloaded (and deleted) the file from the ftp server. iQor/First Contact then used its systems to make an automated notification call in the morning of January 5, 2010 to the number provided in the fraud alert notice.

As a result of this call, notations in DIRECTV's records indicate that Plaintiff told an iQor/First Contact representative that she did not authorize the account and that it should be disconnected. *See* DTV-GREENE 136-37. During that call on January 5, the representative entered into call records (at 9:31 am, 9:34 am, and 9:38 am) a comment indicating Plaintiff's allegations of fraud, in entries showing that account information was updated and that service was placed in pending disconnect (which cuts off the satellite signal). *See id.* DIRECTV's understanding from iQor/First Contact is that there is no recording of this call with Plaintiff.

The iQor/First Contact agent then "Changed Account Info" in Larquette Green's account at 9:42 am on January 5, 2010, apparently during or just after the call with Plaintiff. *See* DTV-GREENE 136. Screen shots printed from the DIRECTV account systems between January 13-14, 2010, show that the change made by that iQor/First Contact representative to the account at 9:42 am on January 5, 2010, was that Larquette Green's address was altered to become that of Plaintiff's Chicago residence. *See* DTV-GREENE 211-216. This alteration by the iQor/First

12

Contact representative of Larquette Green's address information violated the fraud alert call policies, which require that a fraud alert caller's contact information be placed in the Alternate Mailing Address field, and not be overwritten into the questioned account's service or billing address field. *See* DTV-GREENE 34.

There has never been a time when the account (DIRECTV Account No. 40317076) was associated in DIRECTV's systems under any name other than Larquette Green. However, the contact information mistakenly altered by the iQor/First Contact representative resulted in a short period of time during which Larquette Green's account included Plaintiff's Chicago address that Brianna Greene provided during the inbound fraud alert call, as shown by screen shots printed from the DIRECTV account systems between January 13-14, 2010. *See* DTV-GREENE 211-232. The incorrect and mistaken alteration to Larquette's record to add Plaintiff's information also resulted in the final bill for Larquette Green's account, showing a credit of $50.46, being sent to Plaintiff's Chicago address on January 13, 2010. *See* DTV-GREENE 245-246 (system information sent out to generate bill); *see also* Plaintiff's production, Bates No. Greene 590-591 (actual final bill as generated and received). The incorrectly entered address information was fixed so that Larquette Green's account would have all future mailings sent to DIRECTV Customer Service (*see* DTV-GREENE 120), which is the standard practice is instances of alleged identity theft.

After Plaintiff's inbound call to First Contact resulted in her allegations of fraud, the account information was also sent to DIRECTV's Identity Theft Team. A member of that team further researched the account and determined that Plaintiff was not linked to or responsible for the account, and that a Clearance Letter should be sent. *See, e.g.,* Bates No. DTV-GREENE 00083. However, because Plaintiff was represented by counsel as of January 8, 2010, and had

brought this lawsuit, no communication was made to Plaintiff.

## RESPONSES TO REQUESTS FOR PRODUCTION

These responses are made solely for the purpose of this action. DIRECTV incorporates each of the foregoing General Objections into each specific response to the Requests set forth below as if set forth in full therein. An answer to a Request is not intended to be, and shall not be deemed to be, a waiver of any applicable specific or general objection to a Request nor shall it be deemed an admission of relevance or admissibility.

## REQUEST FOR PRODUCTION NO. 1:

Documents that reference or reflect any policies, practices and procedures that you have ever considered or implemented with regard to compliance with the FCRA, 15 U.S.C. §1681c-1, as it pertains to account applications where there is a fraud alert or extended fraud alert, including but not limited to pertaining to the initiatives described in DTV-GREENE 00031-36. Please respond without regard to time, except that the response should not include responsive materials from after this lawsuit was filed.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 1:

DIRECTV has already produced the documents reflecting policies, practices, and procedures implemented with regard to the fraud alerts from 2005 through the January 5, 2010 call to Plaintiff. *See* DTV-GREENE 00031-36.

DIRECTV objects that other policies, practices, or procedures related to fraud alert calls that may have been "considered" before the institution of those in place since 2005 are not relevant to this lawsuit, and furthermore involve a timeframe well outside the statute of limitations. And "considerations" about changes not in place when Plaintiff received her call are irrelevant. Moreover, DIRECTV notes that the FTC (which is the governmental body that would

14

enforce DIRECTV's compliance with 15 U.S.C. §1681c-1) has delayed enforcement of the Red Flag Rules through at least December 2010 so that creditors under its governance (like DIRECTV) could continue developing Red Flag programs. DIRECTV further objects that DIRECTV's "considerations" in relation to changing any fraud alert practices before FTC enforcement have been in conjunction with and at the direction of attorneys, and would be privileged; but because such discussion of future changes are irrelevant to Plaintiff's claim, DIRECTV objects to providing a privilege log at this time.

### REQUEST FOR PRODUCTION NO. 2:

Documents that reference or reflect efforts to comply with the FCRA, 15 U.S.C. §1681c-1, as it pertains to account applications where there is a fraud alerts or extended fraud alert, including but not limited to pertaining to the initiatives described in DTV-GREENE 00031-36. Please respond without regard to time, except that the response should not include responsive materials from after this lawsuit was filed.

### RESPONSE TO REQUEST FOR PRODUCTION NO. 2:

DIRECTV incorporates herein its response to Request for Production 1 (Third Set) above.

### REQUEST FOR PRODUCTION NO. 3:

All contracts or agreements of any kind with any person, including third parties, that concern compliance with the FCRA, 15 U.S.C. §1681c-1, including but not limited to Selfcare, Credit Reporting Agencies, Equifax, Transunion and/or Experian.

### RESPONSE TO REQUEST FOR PRODUCTION NO. 3:

DIRECTV objects that this overly broad request seeks information unrelated to this lawsuit relating to fraud alert calls. DIRECTV further notes that there is no third party entity

15

with which it deals named "Selfcare" or "Credit Reporting Agencies".

## REQUEST FOR PRODUCTION NO. 4:

All documents concerning "Selfcare" as the term appears on DTV-Greene 143.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 4:

"Selfcare", which appears on DTV-GREENE 143, is a term that encompasses all prospective customer or customer activities on DIRECTV's website, www.directv.com, including activities such as shopping, paying bills, upgrading equipment, purchasing pay-per-view movies, scheduling recordings on a home DVR, etc. DIRECTV thus objects that this request is overly broad and unduly burdensome, particularly when "selfcare" is unrelated to the fraud alert call at issue in Plaintiff's complaint.

## REQUEST FOR PRODUCTION NO. 5:

All communications between you or your attorneys and any third party, including any expert or purported expert witness and subpoena respondents.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 5:

DIRECTV agrees to produce documents that it receives from subpoena respondents in this matter, but does not at present have any such documents. DIRECTV has not at present retained any expert witnesses, but if it does so will revise its response to this request.

## REQUEST FOR PRODUCTION NO. 6:

All materials you or your attorneys receive from any subpoena respondent or other third party regarding this case.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 6:

DIRECTV agrees to produce documents received from subpoena respondents, but has none at present to produce.

**REQUEST FOR PRODUCTION NO. 7:**

All notes, drafts, documents reviewed, documents used and other materials from any

expert witness or lay witness in this case.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 7:**

DIRECTV has not at present retained any expert witnesses and has not at present selected

any lay witnesses to testify on its behalf. If and when such witnesses are selected by DIRECTV,

it will revise its response to this request.

**REQUEST FOR PRODUCTION NO. 8:**

All documents reviewed by any person assisting in responding to any interrogatory,

request for admission or request for production in this case.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 8:**

DIRECTV has produced all such documents to date. If any when any further written

discovery is served upon DIRECTV, it will revise its response to this request.


Dated:   July 14, 2010              ·   MANATT, PHELPS & PHILLIPS, LLP
                                        Becca Wahlquist (*admitted pro hac vice*)


                                    By: _____

                                        Becca Wahlquist
                                        bwahlquist@manatt.com
                                        MANATT, PHELPS & PHILLIPS, LLP
                                        11355 W. Olympic Blvd.
                                        Los Angeles, CA 90064
                                        Telephone: (310) 312-4384

                                        *Attorneys for DIRECTV, Inc.*

# Exhibit D

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| BRIANNA GREENE, on behalf of herself and others similarly situated, ) ) ) | Case No. 1:10-cv-117 |
| Plaintiff, ) ) | Hon. Charles P. Kocoras |
| vs. ) ) | Magistrate Judge Cox |
| DIRECTV, INC. and iQOR, Inc., ) ) | |
| Defendants. ) ) | |

## DIRECTV'S RESPONSES TO PLAINTIFF'S FOURTH DISCOVERY REQUESTS

DIRECTV, Inc. ("DIRECTV"), pursuant to Federal Rules of Civil Procedure, hereby provide this response to Plaintiff Brianna Greene's ("Plaintiff's") Fourth Discovery Requests.

### GENERAL OBJECTIONS

1.      DIRECTV objects to Plaintiff's Fourth Discovery Requests to the extent that they attempt to impose obligations beyond the requirements set forth in the Federal Rules of Civil Procedure and the Local Rules of this Court.

2.      DIRECTV objects to these Requests and Interrogatories to the extent that they seek information that is neither relevant to the subject matter of this case nor reasonably calculated to lead to the discovery of admissible evidence.

3.      DIRECTV objects to these Requests to the extent they seek information solely related to class certification issues, as the Court has stayed class discovery until after defendants are able to move for summary judgment on the consent issue and on the FCRA claim.

4.      DIRECTV objects to these Requests in that Plaintiff seeks information from outside the applicable Statutes of Limitations period by asking for information without restricting Plaintiff's Requests in temporal scope.

5.     DIRECTV objects to these Requests to the extent that they are overbroad and unduly burdensome because they are not limited to investigating the allegations made in the Amended Complaint, but instead range far beyond the allegations.

6.     DIRECTV objects to these Requests to the extent that they call for disclosure of trade secrets or other information that is proprietary, confidential, or otherwise business sensitive, or would violate its or its customers' rights of privacy.

7.     DIRECTV objects to these Requests to the extent they are vague and/or unclear such that DIRECTV cannot identify the information requested.

8.     DIRECTV objects to these Requests to the extent they require DIRECTV to produce or otherwise analyze documents, things, or other information that are not reasonably within the possession, custody, or control of DIRECTV, or require DIRECTV to prepare documents or other information that do not already exist.

9.     DIRECTV objects to these Requests to the extent they request information from parent, related, affiliate, and subsidiary companies of DIRECTV; DIRECTV responds for itself alone.

10.    DIRECTV objects to these Requests to the extent they call upon DIRECTV to provide documents and information protected from disclosure by the attorney-client privilege, the attorney work product doctrine, or any other applicable privilege.  Inadvertent production of any document protected by the attorney-client privilege, the attorney work product doctrine, or any other applicable privilege or exemption shall not constitute waiver of any privilege or any other ground for objecting to discovery with respect to such document or any other document, or with respect to the subject matter thereof, or the information contained therein, nor shall inadvertent production waive the right of DIRECTV to object to the use of any such document or

information contained therein during this or any subsequent proceeding.

11.     DIRECTV objects to providing a privilege log contemporaneously with these responses to Plaintiff's Requests and will confer with Plaintiff's counsel regarding an appropriate time to serve such a privilege log.

12.     DIRECTV has not yet completed its discovery or investigation relating to this case. The responses contained herein are based upon a diligent review of information and documents as are presently available and in DIRECTV's possession, custody, or control. DIRECTV anticipates that further review, discovery, investigation, research, and analysis could supply additional responses and information pertinent to this case. Accordingly, DIRECTV reserves the right to rely on any facts, documents, or other evidence that may develop or subsequently come to its attention, to assert additional objections or supplemental responses should DIRECTV discover additional information or grounds for objection, and to supplement or amend these responses at any time.

## RESPONSES TO REQUESTS FOR PRODUCTION

These responses are made solely for the purpose of this action. DIRECTV incorporates each of the foregoing General Objections into each specific response to the Requests set forth below as if set forth in full therein. An answer to a Request is not intended to be, and shall not be deemed to be, a waiver of any applicable specific or general objection to a Request nor shall it be deemed an admission of relevance or admissibility.

## REQUEST FOR PRODUCTION NO. 1:

Your entire written Identity Theft Prevention Program implemented pursuant to any FCRA Red Flag rule, including but not limited to 16 C.F.R. § 681.(d), all drafts and iterations thereof and all correspondence or other documents concerning such.

3

**RESPONSE TO REQUEST FOR PRODUCTION NO. 1:**

DIRECTV objects to Request No. 1 as overly broad and unduly burdensome in scope, as the "entire written Identity Theft Prevention Program" goes far beyond Plaintiff's claims, which relate solely to fraud alert calls. DIRECTV has produced its documents showing the fraud alert procedures and processes that were put in place in 2005 and that were still in place when Plaintiff received her fraud alert call in January 2010. Any documents that address potential changes to such procedures are thus irrelevant to Plaintiff's claims, and will not be produced. Moreover, and in any case, those irrelevant documents would likely be protected by attorney-client privilege because documents discussing compliance with FCRA Red Flag guidelines related to fraud alerts (including all drafts and iterations of documents showing future changes) would have been created under the supervision of legal counsel. Finally, DIRECTV objects to Request No. 1 as irrelevant because the FCRA Red Flags guidelines, though promulgated, are not being enforced by DIRECTV's governing federal regulatory agency, the Federal Trade Commission.

**REQUEST FOR PRODUCTION NO. 2:**

All documents that concern compliance with any FCRA Red Flag rule including but not limited to 16 C.F.R. § 681.1, that also concern notifications from outside sources, such as consumer reporting agencies, of possible or likely identity theft.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 2:**

DIRECTV objects to Request No. 2 as overly broad and unduly burdensome in scope, as the "All documents that concern compliance with any FCRA Red Flag rule" and that involve "notification fron outside sources" goes far beyond Plaintiff's claims, which relate solely to fraud alert calls. Moreover, DIRECTV has already produced its documents showing any fraud alert

4

notification that it received with Plaintiff's provided telephone number.  Any documents that

address notifications for persons other than Plaintiff would be class-related discovery, which the

Court has stayed, and will not be produced.  Furthermore, DIRECTV objects to Request No. 2 as

irrelevant because the FCRA Red Flags guidelines, though promulgated, are not being enforced

by DIRECTV's governing federal regulatory agency, the Federal Trade Commission.

Dated:    July 19, 2010                         MANATT, PHELPS & PHILLIPS, LLP
                                                Becca Wahlquist (*admitted pro hac vice*)


                                                By: _____
                                                       Becca Wahlquist
                                                       bwahlquist@manatt.com
                                                       Lindsay Pennington
                                                       lpennington@manatt.com
                                                       MANATT, PHELPS & PHILLIPS, LLP
                                                       11355 W. Olympic Blvd.
                                                       Los Angeles, CA  90064
                                                       Telephone:  (310) 312-4384

                                                *Attorneys for DIRECTV, Inc.*

300112204.1

1

**PROOF OF SERVICE**

2

I, Lindsay R. Pennington, declare as follows:

3

I am employed in Los Angeles County, Los Angeles, California. I am over the age of eighteen years and not a party to this action. My business address is MANATT, PHELPS &

4

PHILLIPS, LLP, 11355 West Olympic Boulevard, Los Angeles, California 90064-1614. On July 19, 2010, I served the within:

5

6

**DIRECTV'S RESPONSES TO PLAINTIFF'S FOURTH DISCOVERY REQUESTS**

7

on the interested parties in this action addressed as follows:

8

**VIA FEDERAL EXPRESS**
**Alex Burke**

9

**Burke Law Offices, LLC**
**155 N. Michigan Ave., Suite 9020**

10

**Chicago, IL 60601**

**VIA U.S. MAIL**
**Peter Pederson**
**Hilshaw & Cubertson, LLP**
**222 N. La Salle St., Ste. 300**
**Chicago, IL 60601**

11

12

☒   **(BY MAIL)** By placing such document(s) in a sealed envelope, with postage thereon fully prepaid for first class mail, for collection and mailing at Manatt,

13

Phelps & Phillips, LLP, Los Angeles, California following ordinary business practice. I am readily familiar with the practice at Manatt, Phelps & Phillips, LLP

14

for collection and processing of correspondence for mailing with the United States Postal Service, said practice being that in the ordinary course of business,

15

correspondence is deposited in the United States Postal Service the same day as it

16

is placed for collection.

17

☒   **(BY OVERNIGHT MAIL)** By placing such document(s) in a sealed envelope, for collection and overnight mailing at Manatt, Phelps & Phillips, LLP, Los

18

Angeles, California following ordinary business practice. I am readily familiar with the practice at Manatt, Phelps & Phillips, LLP for collection and processing

19

of overnight service mailing, said practice being that in the ordinary course of

20

business, correspondence is deposited with the overnight messenger service, *Federal Express*, for delivery as addressed.

21

22

I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made and that the foregoing is true and correct.

23

Executed on July 19, 2010, at Los Angeles, California.

24

25

26

Lindsay R. Pennington

27

300126226.1

28

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

# Exhibit E

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| BRIANNA GREENE, on behalf of herself and others similarly situated, | ) ) ) | |
| Plaintiff, | ) ) | Case No. 1:10-cv-117 |
| vs. | ) ) ) | Hon. Charles P. Kocoras |
| *DIRECTV, INC.*, | ) ) | |
| Defendant. | ) ) ) | |

## DIRECTV'S RESPONSES TO PLAINTIFF'S SECOND DISCOVERY REQUESTS

DIRECTV, Inc. ("DIRECTV"), pursuant to the Federal Rules of Civil Procedure, hereby provides this response to Plaintiff Brianna Greene's ("Plaintiff's") Second Discovery Requests. DIRECTV generally objects to Plaintiff's Second Discovery Requests to the extent that they attempt to impose obligations beyond the requirements set forth in the Federal Rules of Civil Procedure and the Local Rules of this Court. DIRECTV also incorporates herein by reference, in their entirety, its General Objections to Plaintiff's First Discovery Requests and DIRECTV's General Statement Pertaining to Plaintiff's Overbroad and Unduly Burdensome Discovery Requests contained therein.

DIRECTV has not yet completed its discovery or investigation relating to this case. The responses contained herein are based upon a diligent review of information and documents as are presently available and in DIRECTV's possession, custody, or control. DIRECTV anticipates that further review, discovery, investigation, research, and analysis could supply additional responses and information pertinent to this case. Accordingly, DIRECTV reserves the right to rely on any facts, documents, or other evidence that may develop or subsequently come to its attention, to assert additional objections or supplemental responses should DIRECTV discover

additional information or grounds for objection, and to supplement or amend these responses at any time.

## RESPONSE TO INTERROGATORY

### INTERROGATORY NO. 1:

Identify all materials, documents and/or information you believe may exist, and are responsive to any discovery request in this case, but are not being produced in their entirety for any reason, included but not limited to, for example, the materials, documents or information (1) are in the possession, custody or control of some other person than you, (2) may have been misplaced or destroyed, or (3) are being withheld such pursuant to any objection.

Include a description of the materials, document or information, who is believed to be in possession, custody, or control of such, how it may be obtained, and the specific reason for not producing such. The authority such an interrogatory is derived from Fed. R. Civ. P. 26(b) and 33(a).

### RESPONSE TO INTERROGATORY NO. 1 (SET 2):

Subject to the objections below and to the General Objections from DIRECTV's Responses to the First Set of Discovery, incorporated above, DIRECTV responds as follows:

DIRECTV has redacted the following personally identifiable and non-disclosable information (under SHVERA) from Confidential documents related to Larquette Green:  social security number, exact street address, telephone number, satellite programming package costs and components, satellite receiving equipment costs and components, and additional programming choices.  DIRECTV has not redacted information from the non-subscriber related documents it has produced in response to the First Set of Discovery.

DIRECTV did object to various Requests for Production, for reasons articulated in its

2

responses, and is willing to discuss those objections with Plaintiff. But it would be unduly

burdensome to require DIRECTV at this point to detail any documents that may have been

withheld pursuant to any objection (such as the objection that class certification discovery has

been stayed) or to disclose the custodian of any such documents. And it goes beyond

DIRECTV's obligations under the Federal Rules to require DIRECTV to speculate as to what

information is in the possession, custody, or control of some other person other than DIRECTV.

Moreover, DIRECTV objects to this Interrogatory to the extent that it seeks information

that is neither relevant to the subject matter of this case nor reasonably calculated to lead to the

discovery of admissible evidence. DIRECTV objects that this Interrogatory is grammatically

confusing and thus unclear and ambiguous. DIRECTV further objects to this Interrogatory to the

extent it seeks information solely related to class certification issues, as the Court has stayed

class discovery until after defendants are able to move for summary judgment on the consent

issue and on the FCRA claim. DIRECTV objects to this Interrogatory to the extent it calls upon

DIRECTV to provide any of its customers' personally identifiable information on the ground

that DIRECTV is required by law to enforce specific privacy protections pursuant to the Satellite

Home Viewer Extension and Reauthorization Act of 2004, codified at 47 U.S.C. § 338 (2004), as

well as other applicable laws protecting privacy. DIRECTV objects to this Interrogatory to the

extent it requires DIRECTV to produce or otherwise analyze documents, things, or other

information that are not reasonably within the possession, custody, or control of DIRECTV, or

require DIRECTV to prepare documents or other information that do not already exist.

DIRECTV objects to this Interrogatory to the extent it requests information from parent, related,

affiliate, and subsidiary companies of DIRECTV; DIRECTV responds for itself alone.

DIRECTV is willing to meet with Plaintiff to discuss whether this Interrogatory can be

3

narrowed and focused in accordance with the Court's directives and in accordance with the

Rules.


Dated:   May 21, 2010                MANATT, PHELPS & PHILLIPS, LLP
                                     Becca Wahlquist (*admitted pro hac vice*)


                                     By:  _____
                                          Becca Wahlquist
                                          bwahlquist@manatt.com
                                          MANATT, PHELPS & PHILLIPS, LLP
                                          11355 W. Olympic Blvd.
                                          Los Angeles, CA  90064
                                          Telephone:  (310) 312-4384

                                          *Attorneys for DIRECTV, Inc.*

## PROOF OF SERVICE

I, Victoria M. Tejeda, declare:

I am a citizen of the United States and employed in Los Angeles County, California. I am over the age of eighteen years and not a party to the within-entitled action. My business address is 11355 West Olympic Boulevard, Los Angeles, California 90064-1614. On May 21, 2010, I served a copy of the within document(s): **DIRECTV RESPONSES TO PLAINTIFF'S SECOND DISCOVERY REQUESTS**

☒  **(BY ELECTRONIC MAIL)** By transmitting such document(s) electronically from e-mail address, vtejeda@manatt.com at Manatt, Phelps & Phillips, LLP, Los Angeles, California, to the person(s) at the electronic mail addresses listed below. The transmission was reported as complete and without error.

☐  **(U.S. MAIL)** by placing the document(s) listed above in a sealed envelope with First Class postage thereon fully prepaid, in the United States mail at Los Angeles, California, addressed as set forth below.

☐  by placing the document(s) listed above in a sealed Federal Express envelope and affixing a pre-paid air bill, and causing the envelope to be delivered to a Federal Express agent for delivery.

☐  by personally delivering the document(s) listed above to the person(s) at the address(es) set forth below.

Alex Burke
Burke Law Offices, LLC
155 N. Michigan Ave, Suite 9020
Chicago, IL 60601
ABurke@BurkeLawLLC.com

I am readily familiar with the firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with the U.S. Postal Service on that same day with First Class postage thereon fully prepaid in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

Executed on May 21, 2010, at Los Angeles, California.

_____
Victoria M. Tejeda

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

300038622.1

# Exhibit F

**Print** | **Close Window**

**Subject:** **DirecTV's responses to Plaintiff's Third and Fourth Discovery Requests**
**From:** **"Alex Burke" <ABurke@BurkeLawLLC.com>**
**Date:** **Wed, Jul 21, 2010 9:27 am**
**To:** **"'Wahlquist, Becca'" <BWahlquist@manatt.com>, "'Pennington, Lindsay'"**
**<LPennington@manatt.com>**

Becca,

I was surprised to see that DirecTV has taken the position that it does not have to provide any documents at all in response to our fourth discovery requests, relating to the Red Flag rules.

As I explained on the telephone when we discussed this issue last week, these requests are aimed at proving willfulness. We expect DirecTV to argue that its actions and omissions were not "willful." We don't know what arguments you will use to argue this, so we have issued discovery to learn how DirecTV handles identity theft, internally.

This is why we issued interrogatories 1 and 2, and document requests 1, 2 and 3 of the third set of discovery requests, which ask for all FCRA section 1681c-1 policies, practices and procedures, and related documents. DirecTV responded that plaintiff has some documents already, that this should be sufficient for purposes of this case, and that we are not entitled to see any other documents because DirecTV has deemed them "irrelevant."

Because they specifically require companies to implement written policies to avoid what happened here, and because they mention fraud alerts from credit bureaus, the Red Flag rules are another discoverable source of information regarding willfulness. We have therefore asked for DirecTV's written policies pursuant to this law. Certainly this request is not unreasonable: the policies were required to be implemented by January 2008.

We have asked for these materials, including drafts and iterations of the policies along with communications and other documents concerning them, because they will shed light upon what factors DirecTV considered in implementing the policies, practices, procedures and written Red Flag rules it finally approved. For example, if DirecTV considered making fraud alert telephone calls *before* it opened an account (rather than after), the reasons behind this decision would be relevant to willfulness. Similarly, if DirecTV considered making live-person, rather than autodialed, fraud alert calls, its reasoning for this decision would also be relevant to willfulness. These are of course examples. We do not know what the materials will show, but certainly they are relevant and discoverable.

DirecTV also objected to certain requests based upon attorney-client privilege. We recognize that certain materials responsive to our request may fall within this privilege. Becca, you and I discussed this during our telephone conference a couple of weeks ago. Plaintiff's position is that if DirecTV plans to raise advice of counsel as part of its defense to willfulness, we are entitled to all related, but otherwise privileged, materials. *Panter v. Marshall Field & Co.*, 80 F.R.D. 718, 721 (N.D. Ill. 1978). Please advise in writing as to what your client has decided to do here. Even if defendant wishes not to raise advice of counsel, we are entitled to a privilege log.

We are almost out of time in discovery, so I ask that you please supplement the production and interrogatory responses by the end of this week, July 23, 2010. If you are unable to do this, or if you have any questions or comments, please call me and we can figure these issues out.

Alex Burke

BURKE LAW OFFICES, LLC

155 N. Michigan Ave., Suite 9020
Chicago, IL 60601
(312) 729-5288
(312) 729-5289 (fax)
ABurke@BurkeLawLLC.com
www.BurkeLawLLC.com

The information transmitted through this communication is intended only for the addressee and may contain confidential and/or privileged material. Any unauthorized interception, review, retransmission, dissemination, or other use of, or taking of any action upon this information by persons or entities other than the intended recipient is prohibited and may subject the unauthorized person or entity to criminal or civil liability. If you received this communication in error, please contact us immediately at (312) 729-5288, and delete the communication from any computer or network system.  This message is not intended to create an attorney-client relationship.  Unless you have entered into a written, signed document entitled "Authorization" with Burke Law Offices, LLC, the firm does not represent you.

Copyright © 2003-2010. All rights reserved.

# Exhibit G


manatt | phelps | phillips

**Becca Wahlquist**
Manatt, Phelps & Phillips, LLP
Direct Dial: (310) 312-4384
E-mail: BWahlquist@manatt.com

July 22, 2010

**Via Facsimile and E-Mail**

Alex Burke
Burke Law Offices, LLC
155 N. Michigan Ave, Suite 9020
Chicago, IL  60601
Fax:    312-729-5289

      **Re:    Greene v. DIRECTV, Inc.**

Dear Alex:

Before responding to your e-mail from yesterday morning, I want to raise again the issue that Plaintiff has withheld admittedly responsive documents from her production by stating that those documents in her possession were marked Confidential in her litigation against the credit bureaus, and are subject to a Protective Order in that litigation.

As I noted, these documents are in Plaintiff's possession and contain **her** confidential information, and thus should be fine to produce in our litigation under our Protective Order which would continue to protect their confidentiality.  We are deposing the Plaintiff on Monday and need these documents in advance of that deposition.  In order to get the documents, we are now taking the additional step of contacting counsel for the Third Parties (who have yet to produce documents in our case) and asking for their written permission for Plaintiff to produce to DIRECTV and iQor, under our Protective Order, the Confidential documents Plaintiff has withheld.  I hope that we will receive any such written permissions by tomorrow, and wanted to alert you so that you can have the withheld documents ready to send tomorrow via pdf for our review before Monday's deposition.

Now, turning to your e-mail of yesterday, DIRECTV responds as follows:

DIRECTV did not, as you claim, state that "it does not have to provide any documents at all in response to our fourth discovery requests."  Instead, as DIRECTV explained, it had already produced its relevant and responsive documents pertaining both to the practices and procedures for fraud alert calls made by iQor/First Contact and for handling allegations of possible identity theft that resulted from any such fraud alert calls.  Those documents were produced in response to the First Set and Third Set of document requests.  DIRECTV has thus provided full



manatt | phelps | phillips

Alex Burke
July 22, 2010
Page 2

information about the fraud alert call and handling procedures that were put in place in 2005 and that were still in place in January 2010 when Plaintiff received a fraud alert call.

What DIRECTV objected to was producing documents not related to the fraud alert call Plaintiff received, and to producing pre-2005 documents about the construction of the practices and procedures that were in place throughout the statute of limitations for your claims. DIRECTV further objected to producing documents pertaining to DIRECTV's efforts to construct any written Red Flag Rules policies that will be implemented in the future. And while such documents about any future planned compliance procedures would indeed be privileged, DIRECTV explained that it need not construct a privilege log for such documents because documents related to potential practices not in place in January 2010 are irrelevant to Plaintiff's case. Irrelevant documents need not be detailed in a privilege log.

Plaintiff has no actual damages to support her FCRA claim, and I understand that you are anxious to try to prove willfulness and that you are in a tough spot trying to argue willfulness when the FTC itself has delayed enforcement of the Red Flag Rules specifically in order to give companies such as DIRECTV time to put together and finalize its procedures, practices, and written policy. But it seems to me that the most appropriate response to such a dilemma should be a recognition that your putative FCRA class claim is inappropriate at this time.

In any case, I note once more that the Court specifically limited discovery in this first period to the threshhold issues that would be addressed in Defendants' summary judgment briefs, which I have explained to you will be, for the TCPA claim, Plaintiff's consent to be called with a fraud alert, and for the FCRA claim, Plaintiff's lack of standing to sue in that no account was opened in her name. We would suggest that this debate about documents you claim would be relevant to willfulness should thus be postponed until we see whether Plaintiff can survive the significant challenge to her standing to sue under a statute that would not support an action brought by someone when an account has not been opened in his or her name.

Nonetheless, should you insist on moving to compel further responses at this point, DIRECTV will stand ready to respond.

Sincerely,

Becca Wahlquist

Cc:   Peter E. Pederson, Jr (Via Facsimile and E-mail)
      Hinshaw & Culbertson
      222 North LaSalle Street, Suite 300
      Chicago, IL 60601-1081

# Exhibit H

# FTC Business Update

**Federal Trade Commission ■ Bureau of Consumer Protection**

## The "Red Flags" Rule:
## What Telecom Companies Need to Know
## About Complying with New Requirements for Fighting Identity Theft

*by Tiffany George and Pavneet Singh*
*Federal Trade Commission*

As many as nine million Americans have their identities stolen each year.  The crime takes many forms.  Thieves may buy a car, obtain a credit card, or establish telephone or Internet service using someone else's identity. Consumers may not find out they're victims of identity theft until they review their credit reports or read their monthly statements and notice charges they didn't make – or until they get a call from a debt collector.

For millions of consumers, identity theft inflicts economic, psychological, and emotional harm. Victims may have to spend money and time repairing the damage to their good name and credit record. The cost to business can be staggering as well, with charges racked up by identity thieves unpaid and uncollectable.

Telecommunications companies may be the first to spot the red flags that signal the risk of identity theft, including suspicious activity suggesting that crooks may be using stolen information to establish service.  That's why you need to know about a new law that requires many businesses – including most companies that provide telecommunications services to consumers – to spot the red flags that can be the telltale signs of identity theft and do something about them.

The new regulation – called the Red Flags Rule – requires companies to develop a written "red flags program" to detect, prevent, and minimize the damage that could result from identity theft.  The Federal Trade Commission, the nation's consumer protection agency, enforces the Red Flags Rule.

The FTC will begin enforcing the Rule on May 1, 2009.  Is your company required to comply with the Red Flags Rule?  If so, what's your next step?

## WHO MUST COMPLY

Companies that provide telecommunications services may be covered by provisions of the Rule that apply to "creditors."  The Rule includes some specific definitions and exceptions, but it boils down to this:  If your company regularly bills customers after services are provided, you are a creditor under the new law and will have to develop a written program to identify and address the red flags that could indicate identity theft in your covered accounts.  The rule defines a "covered account" as a consumer account that allows multiple payments or transactions or any other account with a reasonably foreseeable risk of identity theft.

## SPOTTING RED FLAGS

The Red Flags Rule gives telecom companies the flexibility to implement an identity theft prevention program that best suits their business, as long as it conforms to the Rule's requirements. The Rule requires that your program identify relevant red flags, detail your process for detecting them, describe how you will respond to them to prevent and mitigate identity theft, and spell out how you will keep your program current.  Many companies already have fraud detection or prevention procedures they can incorporate into their program.  Your program should be appropriate to the size of your organization, as well as to the nature of your business.

What red flags signal identity theft?  There's no standard checklist, but here are a few signs that may arouse your suspicions:

- ■  ***Alerts, notifications or warnings from a consumer reporting agency.***  For example, if a fraud alert is included with a credit report, federal law requires you to take reasonable steps to verify the identity of the customer who wants to open an account with you.  If you find out that there's a credit freeze in place, you may want to follow up and ask for more information.

- ■  ***Suspicious documents.***  Has an applicant given you identification documents that look altered or forged?  Is the physical description on the identification inconsistent with what the applicant looks like?  Is other information on the identification inconsistent with what the customer's told you?  More investigation may be required.

- ■  ***Suspicious personally identifying information.***  Personal information that doesn't match what you've learned from other sources may also be a red flag of identity theft.  For example, if the current address doesn't match the address in the consumer report – or if the Social Security Number doesn't match the date of birth – fraud could be afoot.  If the address on the application is fictitious or a mail drop – or if the only contact information is a pager – there may be a problem.

- ■  ***Suspicious activity relating to a covered account.***  Did a customer ask for a new cell phone or add a new authorized user soon after a change of address?  Did a customer's use patterns abruptly change?  Did a new customer fail to make the first payment or make an initial payment but no others?  Is mail returned repeatedly as undeliverable even though transactions still are being conducted on the account?  Don't ignore the voice of experience when it tells you that something seems questionable.

- ■  ***Notices from victims of identity theft, law enforcement authorities, or others suggesting that an account may have been opened fraudulently.***  Cooperation is key.  Heed warnings from others that identity theft may be ongoing.

Of course, a red flag by itself may not indicate ID theft, but may be relevant in a larger context.

**SETTING UP AND WRITING DOWN YOUR RED FLAGS PROGRAM**

Once you've identified the red flags that are relevant to your business, your program should include the procedures you have put in place to detect them in your day-to-day operations. Your program also should describe how you plan to prevent and mitigate identity theft. How will you respond when you spot the red flags of identity theft? Will you close questionable accounts or monitor them more closely? Will you contact the consumer directly? When automated systems detect red flags, will you manually review the file? Finally, because identity theft threats change, consider how you will keep your program current to ensure you address new risks and trends.

No matter how good your program looks on paper, the true test is how it works. According to the Rule, the program must be approved by your Board of Directors or – if your company doesn't have a Board – by a senior employee. The Board may oversee the administration of the program, including approving any important changes, or designate a senior employee to take on these duties. Your program should include information about training your staff, and provide a way for you to monitor the work of your service providers. The key is to make sure that all members of your staff are familiar with the Rule and the new compliance procedures.

**WHAT'S AT STAKE**

Although there are no criminal penalties for failing to comply with the Rule, violators may be subject to financial penalties. But even more important, compliance with the Red Flags Rule assures your customers that you are doing your part to fight identity theft.

For more information about designing a compliance program and your compliance responsibilities, email ***RedFlags@ftc.gov*** or visit ftc.gov.

*Tiffany George and Pavneet Singh are attorneys in the Federal Trade Commission's Bureau of Consumer Protection.*

| FEDERAL TRADE COMMISSION | ftc.gov |
|---|---|
| 1-877-FTC-HELP | FOR THE CONSUMER |

January 2009