IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| BRIANNA GREENE on behalf of herself and others similarly situated,<br>    Plaintiff,<br><br>    v.<br><br>DIRECTV, INC. and iQor, Inc.<br>    Defendant. | 1:10-cv-117<br><br>Judge Kocoras<br>Magistrate Judge Cox<br>JURY DEMANDED |

**MOTION FOR LEAVE TO FILE AMENDED COMPLAINT**

Plaintiff respectfully requests that this Court grant her leave to file a Second Amended Complaint in this action. The proposed Second Amended Complaint is attached as Appendix 1.

In support of this motion, plaintiff states:

1.    This case concerns the ramifications creditors may face when they decide that opening accounts quickly is more important than heeding fraud alerts and other warning signals from the credit reports they obtain in association with applications for credit. DirecTV's policy appears to be to open new accounts first, and ask questions later.

2.    The defendant satellite television company DirecTV received approximately four telephonic and internet applications or incomplete applications for satellite television services from a person other than plaintiff in December 2009. Each time it received an application or completed application, DirecTV communicated with consumer reporting agency Equifax, and received a notice from Equifax, called a "fraud alert," which is an indication that there may be fraud associated with

1

the application or partial application. The FCRA, 15 U.S.C. §1681c-1 requires that a creditor investigate fraud alerts before opening subject accounts. DirecTV did not do this.

3.   Instead, DirecTV apparently ignored the fraud alerts for the time-being, opened an account for Larquette on December 28, 2009, and installed satellite television in Larquette's Milwaukee home on January 2, 2010. It did not bother attempting to contact plaintiff until January 5, 2010. When it finally contacted plaintiff, DirecTV hired third party iQor Holding, Inc., a subsidiary of defendant iQor, Inc. to call plaintiff using an autodialer and prerecorded message.

4.   Plaintiff requests leave to amend the complaint to conform facts to ones learned in discovery, to substitute parties and to alter the class definitions.

5.   Plaintiff requests leave substitute defendant iQor, Inc. with its subsidiary First Contact, Inc., which became known as iQor Holdings US, Inc. Although DirecTV originally unequivocally represented to plaintiff that the company it hired to make the autodialed calls, discovery shows that that the company hired to make the calls was a subsidiary of iQor, Inc., called First Contact, Inc., which became iQor Holdings, US, Inc. in January 2010. If this motion is granted, defendant iQor, Inc. would be dismissed without prejudice.

6.   Although the Court has stayed class discovery, based upon informal discussions with defense counsel, plaintiff believes that an amendment to the proposed FCRA class definition is appropriate, too. The new definition, which closely resembles that in the amended complaint, is broader earlier definition. While the FCRA class definition in the amended complaint included only persons for whom DirecTV's fraud alert calls failed to connect with an operator, the proposed definition includes all persons for whom DirecTV opened an account before contacting the consumer. Plaintiff also narrowed the TCPA class definition to exclude calls by iQor that were

2

unrelated to DirecTV.

7. A district court should only deny a motion to amend a complaint if there is a substantial reason to do so. *Espey v. Wainwright*, 734 F.2d 748, 750 (11th Cir. 1984) ("Unless there is a substantial reason to deny leave to amend, the discretion of the district court is not broad enough to permit denial"); *accord*, *Dussouy v. Gulf Coast Investment Corp.*, 660 F.2d 748, 597 (5th Cir. 1981); *Cement Masons' Pension Fund, Local 502 v. Clements*, 91 C 8032, 1993 U.S. Dist. LEXIS 13938 (N.D.Ill., Oct. 5, 1993); *Nagy v. Riblet Products Corp.*, No. S90-202 (RLM), 1991 U.S. Dist. LEXIS 20128, *1, Fed. Sec. L. Rep. (CCH) P96,535 (N.D.Ind., Oct. 16, 1991); *Kopala v. Pepsi-Cola Bottling Co.*, No. S90-296 (RLM), 1991 U.S. Dist. LEXIS 10261, *3-4, 55 Fair Empl. Prac. Cas. (BNA) 1535 (N.D.Ind. May 7, 1991); *Select Creations v. Paliafito Am.*, 830 F. Supp. 1213, 1215-16 (E.D.Wisc. 1993).

8. The amendments will not cause any prejudice to either defendant. *See Johnson v. Oroweat Foods*, 785 F.2d 503, 510 (4th Cir. 1986) (court held that the addition of new factual allegations or a change in legal theory only prejudices the defendant if the amendment is sought shortly before or during trial); *Hely & Patterson Intern v. F.D. Rich Housing*, 663 F.2d 419, 426 (3d Cir. 1981) ("In the context of a 15(a) amendment, prejudice means that the nonmoving party must show that it was unfairly disadvantaged or deprived of the opportunity to present facts or evidence which it would have offered had the amendments . . . been timely"); *Head v. Timken Roller Bearing Co.*, 486 F.2d 870, 873 (6th Cir. 1973) ("amendments should be tendered no later than the time of pretrial . . ."). The entire lawsuit still arises out of the same set of general circumstances. These amendments do not change any pending discovery, and do not materially alter plaintiff's cause of action.

9. DirecTV originally provided plaintiff apparently false information regarding who it contracted with to make the telephone call to plaintiff, naming the current defendant, iQor, the parent company of the two new defendants. Plaintiff has been actively engaged in discovery, and has just filed a motion to compel.

WHEREFORE, plaintiffs respectfully request that this Court grant her leave to amend the complaint in this action. The proposed Second Amended Complaint is attached as <u>Appendix 1</u>.

Respectfully submitted,

/s/Alexander H. Burke

Alexander H. Burke
BURKE LAW OFFICES, LLC
155 N. Michigan Ave., Suite 9020
Chicago, IL 60601
(312) 729-5288
(312) 729-5289 (fax)
ABurke@BurkeLawLLC.com

# Appendix 1

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| BRIANNA GREENE on behalf of herself and others similarly situated,<br>    Plaintiff,<br><br>    v.<br><br>DIRECTV, INC.,<br>FIRST CONTACT, INC. and<br>iQOR HOLDING US INC.,<br>    Defendants. | 1:10-cv-117<br><br>Judge Kocoras<br><br>Magistrate Judge Cox<br><br>JURY DEMANDED |

## SECOND AMENDED COMPLAINT

## CLASS ACTION

1. Plaintiff Brianna Greene brings this action to secure redress for violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227 et seq, including implementing regulations and applicable FCC orders ("TCPA"), the Truth in Lending Act, 15 U.S.C. §1640 and the Fair Credit Reporting Act, 15 U.S.C. §1681 et seq.

2. A person named Larquette Green entered information on DirecTV's website and called DirecTV several times in December 2009. DirecTV accessed a consumer report four or more times during December 2009; each time it did so, DirecTV received a fraud alert from plaintiff, indicating that the application may be fraudulent. It was fraudulent. Larquette had given DirecTV plaintiff's social security number, rather than Larquette's.

3. The FCRA prohibits creditors like DirecTV from opening accounts when it has received a fraud alert in association with an application, until it has verified that there is no fraud.

1

4. Despite these warnings, on December 28, 2009, DirecTV opened a satellite television account. On January 2, 2010, DirecTV installed satellite television in Larquette Green's Wisconsin home.

5. On January 5, 2010, after it had already installed the service in Larquette Green's home, DirecTV had iQor Holding US, Inc. ("iQor") call plaintiff to check into whether there was any fraud. iQor used an autodialer and prerecorded message to do so.

6. Plaintiff alleges that DirecTV's use of an autodialer and prerecorded message to check into whether a fraud alert is correct or not *after* an account has been opened constitutes a willful violation of the FCRA, 15 U.S.C. §1681c-1, and that the use of an autodialer and prerecorded message to call plaintiff's cellular telephone was a violation of the TCPA.

## JURISDICTION AND VENUE

7. This Court has federal question subject matter jurisdiction over the TCPA, TILA and FCRA claims under 28 U.S.C. §§1331 & 1337.

8. Venue is proper because a substantial portion of the events complained of occurred in this District.

## PARTIES

9. Plaintiff is an individual who resides in this District.

10. DirecTV Inc. is a California company that does business in this District.

11. First Contact, Inc. ("First Contact"), is a telecom outsourcing company that made the fraud alert call to plaintiff. Effective January 2010, employees of First Contact became employees of iQor Holding US Inc. The two defendants, which are subsidiaries of original

defendant iQor, Inc., are referred to herein as "iQor."  DirecTV contracted with First Contact to make the autodialed and prerecorded message call to plaintiff.

**FACTS**

12.	Plaintiff Brianna Greene is the victim of identity theft and/or a mixed credit file. Another consumer named Larquette Green has been using plaintiff's social security number and other iterations thereof to open credit accounts since around the end of 2007.  Larquette Green's identifying information and credit accounts have thus appeared on plaintiff's credit reports, and plaintiff has been subjected to various other evils generally associated with ID theft.

13.	The Fair and Accurate Credit Transactions Act ("FACTA") amendment to the FCRA was implemented in 2003 "to prevent identity theft, improve resolution of consumer disputes, improve the accuracy of consumer records, make improvements in the use of, and consumer access to, credit information,"  2004 U.S.C.C.A.N. 1753, H.R. CONF. REP. 108-396, H.R. Conf. Rep. No. 396, 108th Cong., 1ST Sess. 2003, available at 2003 WL 22761472 (Nov. 21, 2003).

14.	Section 1681c-1, which was part of FACTA, gives consumers the right to place a "fraud alert" or "extended fraud alert" on their credit report.  Once a fraud alert or extended fraud alert has been placed, the credit bureaus are required to "include a fraud alert in the file of that consumer, and also provide that alert along with any credit score generated in using that file." 15 U.S.C. §1681c-1(a)(1)(A) and 1681(b)(2)(A).

15.	Because she had previously been subjected to identify theft and a mixed credit file, plaintiff initiated an "extended fraud alert" on her credit report through the credit reporting agency Equifax.

16.     When a creditor or potential creditor accesses a consumer report that has a fraud alert or extended fraud alert in the credit file, the creditor or potential creditor receives a copy of the alert, which notifies "all prospective users of a consumer report on the consumer to which the alert relates that the consumer does not authorize the establishment of any new credit plan or extension of credit..."   15 U.S.C. §1681c-1(h)(1)(A) and 1681(h)(2)(A).

17.     Section 1681c-1 then places restrictions upon "users" of credit reports that have fraud alerts or extended fraud alerts, such as DirecTV, as such:

> (B) Limitation on users [for extended fraud alerts]
>
> No prospective user of a consumer report or of a credit score generated using the information in the file of a consumer that includes an extended fraud alert in accordance with this section may establish a new credit plan or extension of credit, other than under an open-end credit plan (as defined in section 1602 (i) of this title), in the name of the consumer, or issue an additional card on an existing credit account requested by a consumer, or any increase in credit limit on an existing credit account requested by a consumer, unless the user contacts the consumer in person or using the contact method described in subparagraph (A)(ii) to confirm that the application for a new credit plan or increase in credit limit, or request for an additional card is not the result of identity theft.

18.     DirecTV received several communications from Larquette Green in December 2009. DirecTV communicated with credit reporting agency Equifax In association with those communications, and received at least four fraud alerts from Equifax.

19.     Despite having received four fraud alerts in December 2009 in association with Larquette Green's potential satellite television account, DirecTV opened the requested account on December 28, 2009.

20.     DirecTV did not contact plaintiff pursuant to the fraud alert before it opened the account.  DirecTV installed satellite television service in Larquette Green's Milwaukee home on January 2, 2010.

21. DirecTV had defendant iQor call plaintiff on January 5, 2010, to check to see whether the account it had opened on December 28, 2009, was fraudulent. iQor made this call using an automatic telephone dialing system and a prerecorded voice message. In other words, that no human being dialed plaintiff's telephone number – an automatic system did. It also means that there was no human being on DirecTV/iQor's side of the call – a message that had been recorded earlier was played on the line when plaintiff answered. This is the same message that DirecTV/iQor plays for all similar calls.

22. The prerecorded message stated that plaintiff had recently opened a DirecTV account. The prerecorded message then stated an account number.

23. The prerecorded message then stated that if the opening of the account was not authorized, plaintiff should push the button "0" on her telephone to be connected to an operator.

24. Plaintiff listened to the message, and then pressed the digit "0" on her cell phone several times, but was not connected to a human being.

25. Plaintiff hung up and called the number that appeared on her cell phone's caller ID, 800-880-8284. Plaintiff was eventually connected to a DirecTV representative, who was an employee of iQor.

26. The representative told plaintiff that DirecTV had opened an account that was associated with plaintiff on January 2, 2010. In reality, the account had been opened on December 28, 2009, and the satellite television had been installed on January 2, 2010.

27. An operator also told plaintiff that DirecTV had received a fraud alert from one or more credit bureau. The operator told plaintiff that DirecTV would send her a form that she is required to fill out in order for her to complete her "cancellation" of the fraudulent account.

## Count I - TCPA - Strict Liability

28. Plaintiff incorporates all previous paragraphs. This claim is against DirecTV and iQor.

29. Defendants violated the TCPA by calling plaintiff and others on their cell phones using an automatic telephone dialing system and/or prerecorded or automatic voice messages.

## Class Allegations

30. Plaintiff brings Counts I, II and III on behalf of the same class, which consists of:

    All natural persons (a) with Illinois, Wisconsin or Indiana cell phone area codes, (b) which cell phone number DirecTV or a person on behalf of DirecTV called (c) using an automatic telephone dialing system and/or an artificial or prerecorded voice, (d) where the cell phone number had not been provided to DirecTV by the person called, (e) where the call was made at any time up to January 8, 2010, and back to and including January 8, 2006.

31. The class is so numerous that individual joinder would be impracticable.

32. Upon information and belief, defendant or some person on its behalf made more than 100 telephone calls that fall within the definition described in paragraph 30.

33. Common questions of law and fact exist as to all members of the class and predominate over any questions solely affecting any individual member of the class, including plaintiff. Such questions common to the Class include, but are not limited to:

    a. Whether defendants or someone on its behalf used an automatic telephone dialing system and/or an artificial or pre-recorded voice within

              the meaning of the TCPA with respect to telephone calls to class members' cellular phones;

    b.    Whether such practices violate the TCPA; and

    c.    Damages.

34.    Plaintiff will fairly and adequately protect the interests of the class. Plaintiff has no interests that might conflict with the interests of the class. Plaintiff is interested in pursuing her claims vigorously, and has retained counsel competent and experienced in class and complex litigation.

35.    Class action treatment is superior to the alternatives for the fair and efficient adjudication of the controversy alleged herein. Such treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the duplication of effort and expense that numerous individual actions would entail.

36.    No difficulties are likely to be encountered in the management of this class action that would preclude its maintenance as a class action, and no superior alternative exists for the fair and efficient adjudication of this controversy.

37.    Defendant have acted on grounds generally applicable to the class, thereby making relief appropriate with respect to the class as a whole. Prosecution of separate actions by individual members of the class, should they realize their rights have been violated, would likely create the risk of inconsistent or varying adjudications with respect to individual members of the class that would establish incompatible standards of conduct.

38.    The identity of the class is likely readily identifiable from defendant's records.

39. A class action is superior to other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.

WHEREFORE, plaintiff requests that this Court enter judgment in favor of plaintiff and the class and against defendant for:

    (a)    Statutory damages of $500 per violation;

    (b)    Costs of suit; and

    (c)    Any other relief the court deems proper.

## COUNT II – TCPA – Willful

40. Plaintiff incorporates all previous paragraphs of this complaint. This claim is against DirecTV and iQor.

41. The violations of the Telephone Consumer Protection Act, 47 U.S.C. 227, identified above when used in connection with collection of a consumer debt were willful.

42. Plaintiff brings this Count on behalf of the same class and subclass as is identified in Count I. The difference is that this Count alleges that the violations were "willful" within the meaning of the TCPA, and thus justify enhanced damages of up to three times the statutory amount of $500, for $1,500 per violation.

    (a)    Enhanced damages of up to $1,500 per violation,

    (b)    Cost of suit; and

    (c)    Any other relief the court deems proper.

## Count III – TCPA – Injunctive Relief

43. Plaintiff incorporates all previous paragraphs of this complaint. This claim is against DirecTV and iQor.

44. The TCPA prohibits the use of an automatic dialing system and/or prerecorded or artificial voice messages to make phone calls to cell phones.

45. The TCPA 47 U.S.C. §227(b)(3), provides a private right of action for injunctive relief.

46. Defendants have had a pattern and practice of making telephone calls in violation of 47 U.S.C. §227(b), including at least one call to plaintiff.

47. Upon information and belief, defendant continues to call cell phones in violation of section 227(b), without regard to the TCPA.

48. The defendants are likely to continue to violate the TCPA without an order enjoining it from doing so.

49. Plaintiff brings Count III on behalf of a class pursuant to Fed.R.Civ.P. 23(b)(2), for injunctive relief. Plaintiff requests that the Court permanently enjoin defendant from making calls to cell phones using its dialer, and enjoin defendant from making calls to cell phones using an artificial or prerecorded voice messages, unless it can demonstrate the prior express consent of the called party to receive such calls.

50. Plaintiff is entitled to have her rights, status and legal relations under the TCPA relating to defendants' calling of cell phones using an automatic dialing system and/or artificial or prerecorded voice message.

51. The class definition is identical and overlapping with the TCPA class in Count I.

WHEREFORE, plaintiff requests that this Court enter judgment for plaintiff and the class and against defendants for:

(a) a permanent injunction prohibiting defendant from violating the TCPA in the future through calling cellular phones using an automatic telephone dialing system and/or a prerecorded voice message;

(b) A declaration that defendants violated the TCPA;

(c) Cost of suit; and

(b) Any other relief the Court deems fit.

# COUNT IV – TILA

52. Plaintiff incorporates all previous. This claim is against DirecTV, only. This Count was dismissed by Judge Kocoras by memorandum opinion and order dated April 14, 2010. Plaintiff includes this Count to preserve the issue for appeal.

53. Plaintiff did not request that the DirecTV account be opened.

54. Upon information and belief, the account that was opened included at least a satellite "dish", a television-top "box" and a remote control.

55. Upon information and belief, the account that was opened also included access to both free and pay-per view "on demand" content.

56. The TILA, 15 U.S.C. § 1642 prohibits the issuance of "credit cards" that have not been requested by the consumer. The statute reads:

> **No credit card shall be issued except in response to a request or application therefor. This prohibition does not apply to the issuance of a credit card in renewal of, or in substitution for, an accepted credit card**

57. The TILA defines "credit card" in 15 U.S.C §1602(f):

10

**(k) The term "credit card" means any card, plate, coupon book or other credit device existing for the purpose of obtaining money, property, labor, or services on credit.**

58. The account associated with plaintiff that DirecTV opened was a "credit" account because customers enjoy DirecTV content, products and services, including pay-per-view and on-demand items, and defer payment until the end of a billing cycle. See 15 U.S.C. § 1601(e).

59. Based upon inconsistent application data and/or the fraud alert it received from one or more credit bureaus, DirecTV should have known that the account was being opened either fraudulently, or was being associated with the wrong person. At the very least, DirecTV should have waited to open the account until it had verified that plaintiff had requested that the account be opened.

60. Plaintiff has been damaged as a result of defendant's TILA violation.

WHEREFORE, plaintiff requests that this Court enter judgment for plaintiff against defendant for:

    (a) Statutory and actual damages;

    (b) Attorney's fees and costs of suit; and

    (c) Any other relief the Court deems fit.

## COUNT V - Fair Credit Reporting Act

61. Plaintiff all paragraphs of this complaint herein. This claim is against DirecTV, only, although iQor likely has relevant information and discovery concerning these claims.

62. One or more consumer reporting agencies notified defendant of a fraud alert in association with Larquette Green's application for satellite television services.

63. DirecTV opened an account pursuant to Larquette Green's request in spite of the fraud alerts it had received.

64. Defendant DirecTV recklessly violated 15 U.S.C. §1681c-1(h) by not utilizing reasonable policies and procedures, and/or not following the policies and procedures it had in place, in order to form a reasonable belief that the it knew the identity of the person making the request for credit before it established the requested account.

65. The policy thus seems to be to open accounts first, and to ask questions about fraud alerts later.

66. Plaintiff was damaged, and such damage was proximately caused by these violations.

## Class Allegations

67. Plaintiff brings Count V on behalf of a class, which consists of:

All natural persons:

(a) with Illinois, Wisconsin or Indiana cell phone area codes;

(b) which cell phone number defendant or a person on behalf of defendant called;

(c) using an automatic telephone dialing system and/or artificial or prerecorded voice;

(d) where the cell phone number had not been provided directly to DirecTV by the person called;

(e) where the telephone call was part of DirecTV's efforts to comply with its duty to confirm the identity of a consumer whose credit report contained an initial or extended fraud alert pursuant to 15 U.S.C. §1681c-1;

(f) where any such call was made after an account had been opened; and

(g) the call was made at any time between and including February 23, 2008 and February 23, 2010.

68. The class is so numerous that individual joinder would be impracticable.

69. Upon information and belief, defendant or some person on its behalf made more than 100 telephone calls that fall within the definition.

70. Common questions of law and fact exist as to all members of the class and predominate over any questions solely affecting any individual member of the class, including plaintiff. Such questions common to the Class include, but are not limited to:

    a. Whether using an automatic telephone dialing system or prerecorded voice message to contact fraud alert consumers *after* an account has been opened violates 15 U.S.C. §1681c-1(h);

    b. Whether defendant was willful or reckless, and whether such practices violate the FCRA; and

    c. Damages.

71. Plaintiff will fairly and adequately protect the interests of the class. Plaintiff has no interests that might conflict with the interests of the class. Plaintiff is interested in pursuing her claims vigorously, and has retained counsel competent and experienced in class and complex litigation.

72. Class action treatment is superior to the alternatives for the fair and efficient adjudication of the controversy alleged herein. Such treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the duplication of effort and expense that numerous individual actions would entail.

73.	No difficulties are likely to be encountered in the management of this class action that would preclude its maintenance as a class action, and no superior alternative exists for the fair and efficient adjudication of this controversy.

74.	Defendant has acted on grounds generally applicable to the class, thereby making relief appropriate with respect to the class as a whole.  Prosecution of separate actions by individual members of the class, should they realize their rights have been violated, would likely create the risk of inconsistent or varying adjudications with respect to individual members of the class that would establish incompatible standards of conduct.

75.	The identity of the class is likely readily identifiable from defendant's records.

76.	A class action is superior to other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.

WHEREFORE, plaintiff requests that this Court enter judgment in favor of plaintiff and the class and against defendant for:

(a)	Statutory and punitive damages pursuant to 15 U.S.C. §1681n;

(b)	Attorney's fees and costs of suit; and

(c)	Any other relief the court deems proper.

Respectfully submitted,

/s/Alexander H. Burke

Alexander H. Burke
BURKE LAW OFFICES, LLC
155 N. Michigan Ave., Suite 9020
Chicago, IL 60601
(312) 729-5288

(312) 729-5289 (fax)
ABurke@BurkeLawLLC.com

**JURY DEMAND**

Plaintiff demands trial by jury.

/s/Alexander H. Burke

Alexander H. Burke
BURKE LAW OFFICES, LLC
155 N. Michigan Ave., Suite 9020
Chicago, IL 60601
(312) 729-5288
(312) 729-5289 (fax)
ABurke@BurkeLawLLC.com

**DOCUMENT PRESERVATION DEMAND**

Plaintiff hereby demands that the defendant take affirmative steps to preserve all recordings, data, documents and all other tangible things that relate to plaintiff or the putative class members, the events described herein, any third party called in association with any telephone call, campaign, account, sale or file associated with plaintiff or the putative class members, and any account or number or symbol relating to any of them. These materials are very likely relevant to the litigation of this claim. If defendant is aware of any third party that has possession, custody or control of any such materials, plaintiff demands that DirecTV request that such third party also take steps to preserve the materials. This demand shall not narrow the scope of any independent document preservation duties of the defendant.

/s/Alexander H. Burke

15