**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| BRIANNA GREENE, on behalf of herself and others similarly situated, | ) ) ) | |
| Plaintiff, | ) ) | Case No. 1:10-cv-117 |
| vs. | ) ) | Hon. Charles P. Kocoras |
| DIRECTV, INC., FIRST CONTACT, INC. and iQOR, Inc., | ) ) ) ) | |
| Defendants. | ) | |

**DIRECTV'S REPLY IN SUPPORT OF ITS
<u>MOTION FOR SUMMARY JUDGMENT</u>**

Becca Wahlquist (*admitted pro hac vice*)
bwahlquist@manatt.com
MANATT, PHELPS & PHILLIPS, LLP
11355 W. Olympic Blvd.
Los Angeles, CA 90064
Telephone: (310) 312-4384

Amy E. Crawford, ARDC No. 6282700
amy.crawford@kirkland.com
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, IL 60654
Telephone: (312) 862-2000

*Attorneys for DIRECTV, Inc.*

I.      **Introduction**

After months of trying to skirt the facts, Plaintiff has now admitted the facts that are fatal to her remaining causes of action. Nonetheless, in her effort to avoid summary judgment, Plaintiff's Opposition throws around irrelevant allegations, inapplicable case law, and unsupported assumptions—anything to distract from the facts she is forced to admit. Plaintiff also tries to alter her sworn deposition testimony by citing instead to a new declaration authored specifically for the Opposition. However, when all such distractions are sifted away, the undisputed facts shine through: (1) Plaintiff consented to be called by potential creditors such as DIRECTV on her cellular telephone (eviscerating any TCPA claim); (2) no DIRECTV account was ever opened in her name (eliminating her FCRA claim); and (3), in any case, Plaintiff never registered for the Extended Fraud Alert that underlies her FCRA claim.

For those reasons, as detailed below, this Court should grant summary judgment for DIRECTV on Plaintiff's TCPA and FCRA causes of action.

II.     **Plaintiff's TCPA Claim Fails As A Matter Of Law Because She Admits That She Expressly Consented To Fraud Alert Calls To Her Cell Phone.**

A.      **The Uncontested Facts Show Prior Express Consent.**

Plaintiff gave clear and unconditional prior express consent to be contacted on her cellular telephone number with fraud alert calls made by potential creditors, including DIRECTV. There is no dispute about it. Indeed, Plaintiff admitted that she provided her cellular telephone number in order for potential creditors to call her in circumstances just like those that arose in this case. *See* Pl's Dep. at 47:2-15:

> Q.      And isn't it true that you expected potential creditors to call you at that [cellular] telephone number?
>
> A.      Yes.
>
> Q.      And so if DirecTV received a fraud alert notification from one of the credit bureaus, you would expect that DirecTV would call you at that telephone number?
>
> A.      I would expect a DirecTV representative to call me, yes.
>
> Q.      Were there any conditions that you placed on the phone number when you provided it to be called?

A.     Not that I'm aware of.

These facts decimate Plaintiff's TCPA claim because the TCPA restricts the use of automated telephone equipment for cellular telephone calls only in the absence of prior express consent. 47 U.S.C. § 227(b)(1).

In responding to DIRECTV's Undisputed Material Facts ("UMFs"), Plaintiff admitted the crucial material facts asserted by DIRECTV on this consent point. *See* Pl's Resp. to DIRECTV's UMFs 5-9, 41 (quoted below, emphases added).

| **UMF 5**: | **Plaintiff's Response**: |
|---|---|
| During that call, Plaintiff opted to provide her cellular telephone number (608-213-****) as her fraud alert contact point. | **Admitted** that Plaintiff provided her cellular telephone number, but denied that she "opted" to provide that number. Plaintiff had no choice, because her cellular telephone number is the only reliable way to reach plaintiff.[1] |
| **UMF 6**: | **Plaintiff's Response**: |
| Plaintiff intended and expected that her cellular telephone number would be provided to potential creditors so that they could call her. | **Admitted.** |
| **UMF 7**: | **Plaintiff's Response**: |
| Plaintiff has other telephone numbers she could have provided, but chose to provide her cell phone number for fraud alert calls because it was the best way companies could reach her. | [Deemed **Admitted**].* <br><br> *Failure to respond to DIRECTV's UMF 7 amounts to admission of the relevant facts. *Malec v. Sanford*, 191 F.R.D. 581, 584 (N.D. Ill. 2000) (the "consequences of failing to properly respond to a movant's 56.1(a) statement is usually summary judgment for the movant . . . because the movant's factual allegations are deemed admitted"). |
| | |

[1] While Plaintiff's response to UMF 5 tries to quibble with the point that she "opted" to provide her cell phone number rather than another number, her deposition testimony counteracts any new position in the Opposition. *See* Pl's Dep. at 55:4-9 (Q. "And there are other numbers you could have elected to provide as well as your cell phone, aren't there?" A. "I could elect any number, I suppose, but my cell phone is my primary form of communication for a telephone."); *see also* UMF 7 (deemed admitted) (Plaintiff has other telephone numbers). Regardless, Plaintiff provided her cell phone number because she considered it the most reliable way to reach her, and it was where she expected to receive calls.

| | |
|---|---|
| **UMF 8**:<br>Plaintiff put no conditions on the use of her cell phone number for fraud alert purposes. | **Plaintiff's Response**:<br>[Deemed **Admitted**].*<br><br>*Failure to respond to DIRECTV's UMF 8 amounts to admission of the relevant facts. *See Malec*, 191 F.R.D. at 584. |
| **UMF 9**:<br>Equifax makes clear during the registration process that phone numbers collected will be passed to potential creditors so that those businesses can call the consumer at the number(s) he or she elects to provide. | **Plaintiff's Response**:<br>**Admitted that plaintiff knew that her phone number would be provided to creditors for fraud alert purposes,** but denied that anything about the fraud alert or extended fraud alert process was "clear". |
| **UMF 41**:<br>The only way that DIRECTV knew to call Plaintiff's cellular telephone number is because that number was provided by Equifax for the purpose of making a fraud alert call; DIRECTV did not skip-trace or in any other way search for Plaintiff's telephone number. | **Plaintiff's Response**:<br>**Admitted**. |

After admitting (or ignoring, and thus admitting) the UMFs cited above, Plaintiff tries to avoid another consent-related Undisputed Material Fact, UMF 10 ("Plaintiff was not required to provide a telephone number for purposes of fraud alerts"), by denying it with reference to her own earlier Interrogatory responses. *See* Pl's Resp. to UMF 10 (citing Rog. Resp. 7, which asserts that she "recalls" that she had to provide a telephone number). However, Plaintiff admitted during her deposition that she knew she was not required to provide a phone number, so this UMF should also be deemed admitted. *See* Pl's Dep. at 54:20-55:3 (offered as DIRECTV's source for UMF 10):

> Q. And are you aware that you do not need to provide a phone number along with registering for fraud alerts?
>
> A. Yes.
>
> Q. But you chose to provide a phone number to be contacted?
>
> A. Correct.

Thus, Plaintiff in Opposition has admitted each of DIRECTV's UMFs related to her prior express consent to receive fraud alert calls on the cellular telephone number she provided for that purpose, as well as DIRECTV's UMF that DIRECTV received her cellular telephone number

only because she placed that number on her fraud alert request.  *See* UMFs 5-10, 41.  And ***not one*** of Plaintiff's 35 Counter-Statements of Undisputed Material Fact ("Pl's Counter-UMFs") relates to the issue of her consent to receive fraud alert calls on her cellular telephone.

**B.      Plaintiff's Legal Arguments Seeking To Overcome Her Prior Express Consent Fail As A Matter Of Law.**

Instead of fighting the irrefutable facts, Plaintiff argues that her TCPA claim should survive because of her interpretation of a handful of overruled, non-binding and/or inapplicable decisions, as well as outdated definitions from old versions of Black's Law Dictionary.  But Plaintiff's legal arguments fail for the reasons detailed below.

**1.      The FCC's analysis of consent for business calls is persuasive here, and the vacated *Leckler I*'s reasoning should not be followed.**

Plaintiff asserts that it would be wrong to ever find prior express consent to receive autodialed calls in the absence of a statement by a consumer that a call may be autodialed.  *See* Pl's Opp. at 13-19.  In order to support her view, Plaintiff urges this Court to adopt the overruled reasoning of *Leckler v. CashCall, Inc.*, 554 F. Supp. 2d 1025 (N.D. Cal. May 20, 2008) ("*Leckler I*"), vacated by *Leckler v. CashCall, Inc.*, 2008 U.S. Dist. LEXIS 97439, 2008 WL 5000528 (N.D. Cal. Nov. 21, 2008) ("*Leckler II*").  Plaintiff argues that despite giving her prior express consent to be called by potential creditors on her cellular telephone, "[t]here simply is no evidence that plaintiff directly, firmly, particularly, explicitly, specifically or particularly consented to receive autodialed or prerecorded calls."  Pl's Opp. at 18.  However, this argument fails as a matter of law, and the Court should not accept Plaintiff's invitation to adopt the vacated rationale of the *Leckler I* court.

In *Leckler I*, plaintiff sued CashCall (a money-lending company that provided plaintiff with a $2,500 loan at an 89.9% annual interest rate) for allegedly violating the TCPA when it placed collections calls to her cell phone number using an automatic dialing system.  *Leckler I*, 554 F. Supp. 2d at 1026.  On summary judgment, the court considered the January 4, 2008 declaratory ruling by the FCC holding that autodialed and prerecorded message calls to wireless numbers ***do not violate the TCPA*** when the called party has provided the number to a creditor in

connection with an existing debt. *Id.* at 1029 (citing FCC Declaratory Ruling, FCC 07-232 (Dec. 28, 2007) (adopted on January 4, 2008)). The *Leckler I* court, facing a plaintiff (unlike the one here) who had not specifically asked to be contacted with certain types of calls on her cellular telephone number, decided that the FCC was wrong in its interpretation of the TCPA that found prior express consent existed. The *Leckler I* court then did what Plaintiff here asks this Court to do. *Leckler I* looked at outdated dictionary definitions of "express consent" (*id.* at 1030) and, although acknowledging the FCC's ruling that prior express consent "is deemed to be granted" if the wireless number was provided by the consumer to the creditor (*id.* at 1030-31), it then decided that the FCC was manifestly wrong in its interpretation, and that any prior express consent would need to specifically mention the autodialer calling method to be effective. *Id.* at 1033.

But six months later, the *Leckler I* judge reconsidered her earlier order ***and vacated it***. *See Leckler II*, 2008 U.S. Dist. LEXIS 97439, at \*2-\*3. The *Leckler II* decision acknowledged that the trial court had erred in reviewing—and departing from—the FCC's final order that when a party provides her cellular telephone number in connection with an existing debt (for example, on a loan application), the party consents to receive autodialed calls at that cellular telephone number. *Leckler II*, 2008 U.S. Dist. LEXIS 97439 at \*6-\*8. The *Leckler II* court was correct to vacate its earlier decision, as a trial court has no authority to question the FCC's interpretation of the TCPA. *See* 47 U.S.C. §402(a) (courts of appeals have the exclusive authority to determine the validity of FCC final orders relating to the TCPA). Indeed, even case law cited by Plaintiff holds that the reasoning in FCC regulations and orders is not reviewable by this Court, and notes that the *Leckler I* decision cannot be relied upon. *See CE Design, Ltd. v. Prism Business Media, Inc.*, 606 F.3d 443, 450 (7th Cir. 2010) (cited in Pl's Opp. at 14).

Plaintiff nonetheless hopes that this Court will adopt *Leckler I*'s vacated decision because the FCC order DIRECTV cites in its Motion (the FCC ruling that was disregarded, at first, by the *Leckler* judge) supplies the analysis fatal to Plaintiff's claim. *See* MSJ at Part IV.A; *see also* CC 07-232 Declaratory Ruling, 23 F.C.C.R. at 564-65 (ruling adopted on January 4, 2008). As

DIRECTV explained in its Motion, the FCC reasoned that consumers who provided a cellular number for business communications could reasonably expect to be contacted at that number with non-telemarketing calls from that business and its third-party vendors, absent instructions to the contrary:

> We conclude that the provision of a cell phone number to a creditor, *e.g.*, as part of a credit application, reasonably evidences prior express consent by the cell phone subscriber to be contacted at that number regarding the debt. In the 1992 TCPA Order, the Commission determined that "**persons who knowingly release their phone numbers have in effect given their invitation or permission to be called at the number** which they have given, absent instructions to the contrary."

*Id.* (emphasis added). In making this determination, the FCC looked to the legislative history of the TCPA, in which the House Report on what ultimately became Section 227 states: "[t]he restriction on calls to emergency lines, pagers, and the like **does not apply when the called party has provided the telephone number of such a line to the caller for use in normal business communications**." *Id.* (emphasis added), citing to House Report, 102-317, 1st Sess., 102nd Cong. (1991) at 17. Here, not only did Plaintiff provide her cellular telephone number for business communications—she provided it for the specific reason of receiving fraud alert calls from potential creditors, and knew that messages were being sent to potential creditors asking that they contact her at the number she elected to provide. *See* UMF 6 (and sources thereto), (admitted by Plaintiff).

Thus, rather than following the debunked reasoning of *Leckler I*, as Plaintiff urges, this Court should defer to the FCC's determination that consumers who provide a cellular number for business communications may reasonably expect to be contacted at that number with non-telemarketing calls from that business and its third-party vendors, absent instructions to the contrary.

Other than *Leckler*, Plaintiff cites only a few inapplicable cases on the TCPA point. *Joffe v. Acacia Mortg. Corp.*, 211 Ariz. 325, 328 (Ariz. Ct. App. 2005) (Opp. at 17) dealt with advertisements sent via text message to a cellular telephone of someone who had no relationship

with the advertiser and who had never provided his cell phone number (which was generated by a computer). The case does not stand for the proposition that follows Plaintiff's *Joffe* citation— any automated or prerecorded calls is per se "so annoying" that it should be prohibited. *Compare Joffe* with Pl's Opp. at 17. And Plaintiff's other advertising context case is equally unavailing. In *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 954 (9th Cir. 2009) (Opp. at17-18), the TCPA plaintiff argued that that prior express consent did not extend to a third party who purchased access to her number from her cellular telephone provider, Nextone, in order to promote and market retail sales of a new Stephen King novel via text messaging. *Satterfield*, 569 F.3d at 955. *Satterfield* has no bearing on the proper utilization of a consumer's cellular telephone number for business communications that the consumer has requested be made.

And the very recent decision in *Edeh v. Midland Credit Management, Inc.*, 2010 U.S. Dist. LEXIS 103888 (D. Minn. Sept. 29, 2010), is also inapposite. There, the court adopted a magistrate judge's determination that the purchase of a debt from HSBC by a third party collections agency was insufficient to transfer any prior express consent HSBC would have had to make collections calls. *Id*. at *16-17. Here, DIRECTV did not pass Plaintiff's cellular phone number to a third party, but rather used a DIRECTV vendor to make the fraud alert call to her on DIRECTV's behalf. DIRECTV further notes that *Edeh* is not the "only other court to have considered 'prior express consent' outside the context of the FCC Orders", as Plaintiff claims (Pl's Opp. at 19); indeed, DIRECTV's Motion provided two recent decisions addressing prior express consent that followed the FCC's ruling that a person who has provided a cell phone number could be contacted with autodialed calls for business communications. *See* MSJ at 11.[2]

Finally, Plaintiff's copious citations to outdated editions of Black's Law Dictionary and

---

[2] *See, e.g., Starkey v. Firstsource Advantage, LLC*, No. 07-CV-662A, 2010 U.S. Dist. LEXIS 60955, at *17 (W.D.N.Y. Mar. 11, 2010) (summary judgment for collections agency on TCPA claims, holding that cable subscriber who provided her cell phone number when opening account could be called for collections with automated calls); *Pugliese v. Professional Recovery Service, Inc,* No. 09-12262, 2010 U.S. Dist. LEXIS 64111, at *2-*3 (E.D. Mich. Jun. 29, 2010) (summary judgment for collections agency on TCPA claim, holding calls could be made with automatic dialers to cell phone numbers debtors provided).

other dictionaries add no value to this analysis.  *See. e.g.,* Pl's Opp. at 16-17; *compare with* MSJ at 10 (citing the full, concise definition of "express consent" in the current 2009 version of Black's: "Express consent is "[c]onsent that is clearly and unmistakably stated.").  DIRECTV does not move for summary judgment on the basis that, even if Plaintiff did not provide express consent to be called on her cellular phone by potential creditors, other types of consent would be sufficient under the TCPA.  *See* Pl's Opp. at 16.  DIRECTV moves for—and is entitled to— summary judgment on Plaintiff's TCPA claim because she gave her prior express consent for fraud alert calls to be made to her cellular telephone number.

### 2. Plaintiff cannot bootstrap an alleged FCRA violation into a TCPA violation.

Plaintiff's second TCPA argument, made without any citation to authority, asserts that "any consent to receive autodialed or prerecorded messages had expired by the time defendants made the call in question, because the call was noncompliant with the FCRA."  *See* Pl's Opp. at 13, 20-21.  In essence, Plaintiff thus argues that if a fraud alert call violates the FCRA, it also violates the TCPA.  But if there is a violation of the FCRA (which there is not), the cause of action would be under the FCRA, ***not*** the TCPA.  "Each constitutional or statutory right must stand on its own."  *Jackson v. Lind*, 2010 U.S. Dist. LEXIS 71684, at *8 (W.D. Wis. Jul. 16, 2010) (prohibiting plaintiff from bootstrapping an alleged violation of a federal statute into a First Amendment claim).

And in any case, consent does not simply expire at some set point; rather, a consumer must take steps to withdraw permission to call by providing some instructions on that point.  *See, e.g.,* CC 07-232 Declaratory Ruling, 23 F.C.C.R. at 564-65 ("In the 1992 TCPA Order, the Commission determined that 'persons who knowingly release their phone numbers have in effect given their invitation or permission to be called at the number which they have given, **absent instructions to the contrary**.'") (emphasis added).  Here, Plaintiff admitted that she did not place any conditions on the fraud alert call she requested be made to her.  *See* UMF 8 ("Plaintiff put no conditions on the use of her cell phone number for fraud alert purposes.") (admitted by

Plaintiff); *see also* Pl's Dep. at 47:12-15 (Q: "Were there any conditions that you placed on the phone number when you provided it to be called?" A: "Not that I'm aware of."). Thus, it would not violate the TCPA to make a purported "late" call to Plaintiff, when she had consented to the receipt of the very kind of business communication made to the cell phone number she provided.[3]

**3.    Plaintiff can consent to receiving a call that DIRECTV is not obligated under law to make.**

Plaintiff's final, unsupported TCPA argument states that if DIRECTV had no duty under the FCRA to call Plaintiff (because she had not registered for an Extended Fraud Alert), then the call violated the FCRA. This last-gasp argument directly contradicts the elemental fact that Plaintiff, in providing her cellular telephone number to Equifax to be called by potential creditors, expressly consented to be called by parties receiving that information, including DIRECTV. So if DIRECTV elected to make a fraud alert call to her, she consented to receive that call, regardless of whether DIRECTV was ***required*** under statute to call her. Indeed, as discussed above, Plaintiff admitted all the facts showing her consent, and cannot salvage her TCPA claim with this unsupported argument.

**III.    <u>Plaintiff's FCRA Claim Fails As A Matter Of Law Because No DIRECTV Account Was Opened In Plaintiff's Name.</u>**

Plaintiff's FCRA claim is as inherently flawed as her claim under the TCPA. The FCRA is clear: it restricts the ability of a potential creditor, when confronted with a fraud alert, to establish an account "in the name of the consumer" who registered for that fraud alert. 15 U.S.C. § 1681c-1(h). DIRECTV's argument is not, as Plaintiff asserts, that "a creditor may open fraudulent accounts with impunity" (Pl's Opp. at 9); rather, DIRECTV's argument on summary judgment is that under the plain language of the statute, a consumer such as Plaintiff does not

---

[3] Moreover, the call to Plaintiff was unquestionably made **before an account was opened in her name**, as Plaintiff has conceded that there was no DIRECTV account opened in the name of Brianna Greene before she received the fraud alert call. *See* UMFs 46, 47 (account was in the name of Larquette Green; admitted by Plaintiff).

9

have a FCRA claim for fraud alert calls relating to an account that was ***not*** opened ***in the name of the consumer***. *See* MSJ, Part IV.B.2.[4]  If Larquette Green was indeed the "fraudster" and "imposter" that Plaintiff claims, she would be someone posing as Plaintiff—not someone opening an account in her own name, at her own address, with her own credit card for auto-payments. *See* MSJ, Part III.C.  DIRECTV never opened an account "in the name" of Brianna Greene, and Plaintiff has admitted this fact.  *See* UMFs 46-47:

| **UMF 46**:<br>But Larquette Green's name, which Larquette used to create her DIRECTV account, remained the Customer Name on the account at all times even after Plaintiff's address and name were added to the billing information on January 5, 2010. | **Plaintiff's Response**:<br>**Admitted.** |
|---|---|
| **UMF 47**:<br>There has never been a customer account in Plaintiff's name in the DIRECTV systems. | **Plaintiff's Response**:<br>**Admitted**. |

Plaintiff attempts an elaborate tap dance around the express and unmistakable text of the FCRA by invoking "Congressional intent" to include a social security number as one definition of a "name". Pl's Opp. at 10.  Without actually citing to any such Congressional intent that could create any doubt as to the plain meaning of the FCRA's use of "in the name of the consumer," Plaintiff instead quotes two dictionary definitions of the word "name" and argues that a "social security number fits the bill as a 'name'" because it is a word or phrase distinguishing a person."  *Id*.  And Plaintiff then asks this Court to "apply this broad interpretation of 'name' in order to effectuate the identity theft purposes of section 1681c-1."  *Id*.

However, it would be improper for this Court to adopt Plaintiff's arguments that a social

---

[4] For an Extended Fraud Alert, FCRA Section 1681c-1(h)(2)(B) requires a user of consumer report information (such as DIRECTV) to contact consumers in person or at the provided telephone number (or other contact point selected by the consumer) before opening a new credit account opened "***in the name of the consumer***." 15 U.S.C. §1681c-1(h)(2)(B) (emphasis added).  If (as the evidence proves here) Plaintiff registered for Initial Fraud Alerts, then 15 U.S.C. §1681c-1(h)(1)(b) would apply to new accounts authorized "***in the name of such consumer***" if that consumer had provided a telephone number (which is optional for Initial Fraud Alerts). *Id*. (emphasis added).

security number is a "name" as that word is used in the FCRA, or that Congress' intent was to include "social security number" in the word "name". Putting aside the fact that Plaintiff has introduced no "extrinsic evidence of legislative intent," lower courts may not consider such evidence unless "the statutory language itself is unclear." *Tremble v. Town & Country Credit Corp.*, 2006 U.S. Dist. LEXIS 1835, at *7 (N.D. Ill. Jan. 18, 2006) (citing *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546 (2005)). Here, "consumer's name" is clear, and should Congress have intended to use the phrase "social security number" instead of or as part of the word "name," such that section 1681c-1 "contains a drafting error, it is up to Congress rather than the courts to fix it." *Id.* at *7-*8 (internal quotation marks omitted).[5]

This Court should thus decline to follow Plaintiff's request that it redefine the plain meaning of words carefully selected by Congress when it fashioned the FCRA. As written, the statute prevents Plaintiff—who had no account in her name opened with DIRECTV, and who was called before any account was opened in her name—from asserting fraud-alert related claims against DIRECTV under the FCRA. And the various cases that Plaintiff offers to show that courts have been "liberal in finding standing to sue where a consumer has been adversely affected by the breach of a duty under the FCRA" (Pl's Opp. at 11) are inapplicable here. Principally, there was no "adverse affect" on Plaintiff, who was not charged for the DIRECTV account and who would have received a Clearance Letter in response to her fraud alert inbound call, had she not filed her suit so quickly. *See* UMFs 52, 54 (Admitted by Plaintiff).

---

[5] *See Hernandez v. CitiFinancial Servs.*, 2005 U.S. Dist. LEXIS 32532, at *17 (N.D. Ill. Dec. 9, 2005) (acknowledging that in applying the FCRA, "the Court must presume that the legislature means what it says"); *McCane v. America's Credit Jewelers, Inc.*, 2005 U.S. Dist. LEXIS 30961, at *18 (N.D. Ill. Dec. 1, 2005) ("We should prefer the plain meaning since that approach respects the words of Congress. In this manner we avoid the pitfalls that plague too quick a turn to the more controversial realm of legislative history."); *Lamie v. United States Trustee*, 540 U.S. 526, 538 (2004) (stating that "the court cannot soften the import of Congress' chosen words even if . . . the words lead to a harsh outcome").

| **UMF 54:** At no time has Plaintiff ever been charged for the satellite television services provided to Larquette Green. | **Plaintiff's Response**: **Admitted.** |
|---|---|
| **UMF 52**: When First Contact alerted DIRECTV that Plaintiff stated she did not authorize an account, DIRECTV investigated and determined that DIRECTV would provide Plaintiff with a Clearance Letter stating that the DIRECTV Account was not connected with Plaintiff. | **Plaintiff's Response**: **Admitted**. |

Moreover, the cases Plaintiff cites is support of her request that this Court be "liberal" in assessing her ability to pursue her claim under the FCRA are inapplicable because they each involved whether a wife could join her husband in a FCRA suit when the wife's credit was affected by an error in the husband's credit report.  *See* Pl's Opp. at 11, citing *Williams v. Equifax Credit Info. Servs.*, 892 F. Supp. 951, 955 (E.D. Mich. 1995) (standing afforded where wife "allegedly suffered impairment to her own ability to obtain credit when she was temporarily unable to secure re-financing on property of which she was a co-owner"); *Koropoulos v. Credit Bur., Inc.*, 734 F.2d 37, 46-47 (D.C. Cir. 1984) (summary judgment on standing inappropriate where wife was denied a Lord & Taylor department store credit card on basis of inaccuracies in husband's report); *Conley v. TRW Credit Data*, 381 F. Supp. 473 (N.D. Ill. 1974) (dismissal denied where husband's inaccurate credit report affected ability of both husband and wife to rent a new apartment).  These cases thus provide no rationale to support a "liberal" reading of the FCRA that would infer "social security number" to be the same as a "name".

The Court should thus grant summary judgment for DIRECTV on Plaintiff's FCRA claim, as it is undisputed that the DIRECTV account was never in Plaintiff's name, and she has not claimed, nor could she claim, that her credit was adversely impacted by Larquette Green's DIRECTV account.

**IV.    Plaintiff's FCRA Claim Also Fails As A Matter Of Law Because Plaintiff Never Actually Registered For An Extended Fraud Alert.**

Almost all of Plaintiff's relevant Counter UMFs focus on disputing DIRECTV's facts that Plaintif never actually registered for an Extended Fraud Alert.[6]  While the Court need not reach this argument, given that Plaintiff's FCRA claim fails because the account that triggered the fraud alert call was not opened in Plaintiff's name (*see* Part III above), the fact that Plaintiff did not comply with the requirements to establish a 7-year Extended Fraud Alert provides additional grounds for summary judgment on her FCRA claim.

Plaintiff asserts that she initiated an Extended Fraud Alert on her credit file with Equifax on October 7, 2008, and references Equifax internal documents she received in discovery that show indications of an Extended Fraud Alert dated October 7, 2008.  *See* Pl's Counter UMF 8 (citing to internal Equifax documents, which are hearsay as so used (*see* DIRECTV's Resp. to Pl's Counter-UMF 8)).  However, Plaintiff admits that she had the understanding on October 8, 2008 that only an Initial Fraud Alert was in effect.  *See* UMF 4 (admitted by Plaintiff); *see also* Pl's Dep. at 27:7-11 (Q:  "So, in October 8 of 2008, you did have the understanding that you had signed up for a 90-day temporary fraud alert, correct?"  A:  "Correct.").  Plaintiff also admits that all documents she received from Equifax and other credit bureaus from October 8, 2008 onward only indicated that she had registered for an Initial Fraud Alert of 90 days' duration (or, for example in November 2009, had no Initial Fraud Alert on her file); she also admits that she was provided with instructions on October 8, 2008 on how she could register for an Extended Fraud Alert.  *See* UMFs 12, 14:

| **UMF 12**: | **Plaintiff's Response**: |
| --- | --- |
| Plaintiff received notifications dated October 8, 2008 addressed to Larquette Green at Plaintiff's address, stating that she had been registered for a 90-day Initial Fraud Alert. | **Admitted**, although plaintiff objects to citation to the FCRA as proof that any party did one thing or another. |

[6] Many of Plaintiff's Counter UMFs are irrelevant to  DIRECTV's arguments on summary judgment; these Counter UMFs are discussed by DIRECTV in its concurrently filed Responses. Because many of the irrelevant UMFs are inaccurate, DIRECTV has denied them, but these are not disagreements about facts material to the Court's analysis here.

| UMF 14: Moreover, the October 8, 2008, Initial Fraud Alert notifications informed Plaintiff of the steps to take if she wished to register for an Extended Fraud Alert, which would stay on her file for seven years instead of 90 days. | Plaintiff's Response: Admitted. |
| --- | --- |

Moreover, while Plaintiff mentions an identity theft report she filed with the police on October 10, 2008 (*see* Pl's Response to UMF 15; Pl's Counter UMF 9), that report—which *post-dates* her purported October 7, 2008 registration for an Extended Fraud Alert—only serves to highlight the fact that during the October 7 call with Equifax, Plaintiff did not have the police report required to register at that time for an Extended Alert. *See* DIRECTV's Resp. to Pl's Counter UMF 9.[7]  Indeed, Equifax has testified that Plaintiff had registered on October 7 only for an Initial Fraud Alert, and that it did not during that call "sell" her an Extended Fraud Alert, as she claims (without any supporting proof). *See* Equifax Decl., ¶¶ 6-7.

Plaintiff focuses on the undisputed fact that DIRECTV received (for some reason) an Extended Fraud Alert notification from Equifax; however, this fact does not alter the base equation—Plaintiff **never registered** for an Extended Alert.  If Plaintiff did not actually register for an Extended Fraud Alert, she does not have a legal basis for her claim that DIRECTV was required to call her before any account was opened; Plaintiff nowhere demonstrates that Congressional intent was to provide her with a cause of action depending on what kind of notice a company **received**, and not on whether she actually completed the statutorily required steps to register for that 7-year Extended Fraud Alert notification.  Furthermore, Plaintiff offers no case

---

[7] Plaintiff's declaration claims she registered for an Extended Fraud Alert, but she may not attempt to create an issue of fact by now submitting a declaration whose conclusions contradict her prior sworn testimony. *Kalis v. Colgate-Palmolive Co.*, 231 F.3d 1049, 1055 (7th Cir. 2000); *Russell v. Acme-Evans Co.*, 51 F.3d 64, 67 (7th Cir. 1995) (stating that courts are "highly critical of efforts to patch up a party's deposition with his own subsequent affidavit").  Where deposition and a later declaration are in conflict, unless it is demonstrable that the deposition testimony arose by mistake, the subsequent declaration is to be disregarded. *Russell*, 51 F.3d at 67; *see also Tracy v. Jewel Food Stores, Inc.*, 2000 U.S. Dist. LEXIS 22423, at *9-*10 (N.D. Ill. Nov. 17, 2000) (on summary judgment, disregarding plaintiff's subsequently filed declaration because it contradicted earlier deposition testimony and entering judgment for defendant on claim in question).

law to support her argument that she is entitled to pursue an action under the FCRA based on a potential creditor's potential obligation to call her if she had actually registered for an Extended Fraud Alert.

## V.    Conclusion

Plaintiff expressly consented to receive fraud alert calls at her cellular telephone number (and in fact requested that such calls be made to her), and thus there is no TCPA liability for the fraud alert call that DIRECTV made.  Moreover, there is no FCRA liability because no account was opened in Plaintiff's name, as well as because Plaintiff never registered for an Extended Fraud Alert.  Thus, summary judgment should be granted for DIRECTV on Plaintiff's remaining causes of action.

Dated:  October 12, 2010

Respectfully submitted,

/s/ Becca Wahlquist

Becca Wahlquist (*admitted pro hac vice*)
bwahlquist@manatt.com
MANATT, PHELPS & PHILLIPS, LLP
11355 W. Olympic Blvd.
Los Angeles, CA  90064
Telephone:  (310) 312-4384

Amy E. Crawford, ARDC No. 6282700
amy.crawford@kirkland.com
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, IL  60654
Telephone: (312) 862-2000

*Attorneys for DIRECTV, Inc.*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing DIRECTV'S REPLY

IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT was served electronically in

this matter on October 12, 2010, and thus was served upon the following parties:

> Alexander H. Burke
> Burke Law Offices, LLC
> 155 N. Michigan Ave., Suite 9020
> Chicago, IL 60601
> Tel: (312) 729-5288
> ABurke@BurkeLawLLC.com
>
> *Counsel for Plaintiff*
>
> Peter Pederson
> Hinshaw & Culbertson
> 222 N. LaSalle St., Ste. 300
> Chicago, IL 60601
> Tel: (312) 704-3604
> ppederson@hinshawlaw.com
>
> *Counsel for Defendant First Contact*

> /s/ Becca Wahlquist
> Becca Wahlquist, pro hac vice