UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| BRIANNA GREENE, on behalf of herself and others similarly situated, | )<br>)<br>) |
| Plaintiff, | )<br>) |
| vs. | ) 10 C 117<br>) |
| DIRECTV, INC., FIRST CONTACT, INC., and iQOR Holding US INC., | )<br>)<br>) |
| Defendants. | ) |

## MEMORANDUM OPINION

CHARLES P. KOCORAS, District Judge:

There are to motions s before the court. Defendant DirecTV, Inc. ("DirecTV") has filed a motion for summary judgment pursuant to Fed. R. Civ. P. 56. Defendants First Contact, Inc. ("First Contact") and iQor Holding US, Inc. ("iQor") also move for summary judgment. For the reasons stated below, we grant both motions.

## BACKGROUND

In early 2008, Plaintiff Brianna Greene ("Greene"), an Illinois resident, began having problems with her credit file. The trouble stemmed from the use of Greene's Social Security Number in a number of credit applications submitted by a Wisconsin resident named Larquette Green ("Larquette"). Greene first became aware of the

discrepancies in her credit file in January 2008 when her credit report listed a number of delinquent credit accounts that did not belong to her.

On October 7, 2008, Greene contacted a consumer reporting agency, Equifax Information Services, Inc. ("Equifax"), and asked that a fraud alert be placed in her credit report. In the course of requesting the fraud alert, Greene provided her cellular telephone number as the preferred manner for potential creditors to contact her and verify her identity. Greene placed no conditions on the use of her number for fraud alert purposes.

The parties dispute what type of fraud alert Greene obtained from Equifax. Greene has presented evidence to suggest that she purchased an extended fraud alert. She cites a portion of her deposition testimony in which she stated that she understood herself to have signed up for an extended fraud alert. Greene also highlights a notice sent by Equifax to DirecTV which indicated that Greene had an extended fraud alert in her credit file. Both DirecTV and iQor have submitted evidence indicating that Greene only signed up for a temporary fraud alert. They cite a different part of Greene's deposition during which she stated that she believed she acquired a temporary alert from Equifax. They also reference a declaration made by an Equifax employee as evidence of the temporary nature of Greene's fraud alert. The declaration stated that Greene registered for a product called "ID Patrol" which essentially registered Greene for a

series of temporary fraud alerts. Additionally, Defendants submitted correspondence from Equifax to Greene that stated she had been registered for a 90-day initial fraud alert.

Despite having a fraud alert placed in her file, Greene's credit file issues persisted. In December 2009, Larquette contacted a DirecTV customer service representative to open an account for satellite television service at her Wisconsin home. During her conversation with the DirecTV representative, Larquette provided her real name, her address in Wisconsin, her telephone number, and Greene's social security number. The representative entered Larquette's personal data into DirecTV's computer system and the system automatically submitted the social security number Larquette had provided to Equifax to obtain credit score data. Equifax then sent a credit report to DirecTV that included credit score information and listed Larquette's name and address as well as Greene's home address. The report also contained a fraud alert notification with Greene's cell phone number listed as the contact number for Larquette Green. Unaware of the fraud alert notification, the DirecTV customer service representative scheduled the satellite television installation at Larquette's home to take place on January 2, 2010. Upon completion of the installation on January 2, DirecTV opened an account in Larquette's name.

DirecTV contracts with a third party vendor, First Contact,[1] to make fraud alert notification calls on its behalf. When DirecTV opened Larquette's account for service, the satellite company uploaded the fraud alert phone number listed under her name to a server where it could be accessed by First Contact. On January 5, 2010, First Contact made an automated notification call to Greene's cell phone. The automated message asked Greene to verify whether she had recently opened an account with DirecTV. Greene immediately contacted First Contact and stated that she did not authorize the opening of an account. DirecTV put Larquette Green's account in pending disconnect that same day. Though the First Contact representative added Greene's name and address as an alternative billing address for Larquette Green's account, DirecTV never opened an account in the name of Brianna Greene and never charged her for television services provided to Larquette Green.

On January 8, 2010, Greene filed suit against DirecTV, First Contact, and iQor. In her complaint, Greene asserts claims against DirecTV, First Contact, and iQor under the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227. Greene alleges that First Contact and iQor violated the TCPA when they called her cell phone and played a prerecorded message asking her to confirm whether she had ordered satellite television from DirecTV. Calls made to a cell phone using an automatic telephone

---

[1] As of January 2010, employees of First Contact became employees of iQor Holding US, Inc. ("iQor").

dialing system or prerecorded message violate the TCPA only if they are made without the called party's express consent. Greene's complaint also includes a cause of action against DirecTV only under the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681c-1.[2] Defendants now move for summary judgment on all of Greene's claims.

## LEGAL STANDARD

Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to summary judgment as a matter of law." Fed. R. Civ. P. 56(c). A genuine issue of material fact exists when the evidence is such that a reasonable jury could find for the nonmovant. *Buscaglia v. United States*, 25 F.3d 530, 534 (7th Cir. 1994). The movant in a motion for summary judgment bears the burden of demonstrating the absence of a genuine issue of material fact by specific citation to the record; if the party succeeds in doing so, the burden shifts to the nonmovant to set forth specific facts showing that there is a genuine issue of fact for trial. Fed. R. Civ. P. 56(e); *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). In considering motions for summary judgment, a court construes all facts and draws all inferences from the record in favor of the nonmoving party. *Anderson v. Liberty Lobby,*

---

[2] Greene also asserted a claim against DirecTV under the Truth in Lending Act ("TILA"), 15 U.S.C. § 1642. We dismissed this claim in a Memorandum Opinion dated April 14, 2010. *Greene v. DirecTV, Inc.*, 2010 U.S. Dist. LEXIS 37045 (N.D. Ill. Apr. 14, 2010).

*Inc.*, 477 U.S. 242, 255 (1986). With these principles in mind, we turn to Defendants' motions.

## DISCUSSION

Though DirecTV and iQor have filed separate motions for summary judgment, their arguments overlap substantially with respect to the TCPA claims Greene asserted against all the Defendants. Accordingly, we will assess the merits of both motions with respect to Greene's TCPA claims before considering DirecTV's motion for summary judgment on Greene's claims under the FCRA.

### I. TCPA Claims - Counts I, II, and III

Defendants argue that they are entitled to summary judgment on Greene's TCPA claims because Greene consented to the automated call made to her cellular phone. The TCPA prohibits making "any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system . . . to any telephone number assigned to a . . . cellular telephone[.]" 47 U.S.C. § 227(b)(1)(A)(iii). The Federal Communications Commission ("FCC") has clarified what constitutes "express consent" under the statute pursuant to its authority to create rules and regulations implementing the TCPA. *See* 47 U.S.C. § 227(b)(2). Specifically, the FCC ruled that:

> persons who knowingly release their phone numbers have in effect given their
> invitation or permission to be called at the number which they have given,

> absent instructions to the contrary. Hence, telemarketers will not violate our rules by calling a number which was provided as one at which the called party wishes to be reached.

In re Rules and Regulations Implementing The Telephone Consumer Protection Act of 1991, 7 FCC Rcd. 8752, 8769 (1992).

Greene believes the FCC's construction of the term "express consent" too narrow and asks the court to adopt a different interpretation instead. A district court must accept the FCC's interpretation of the TCPA as expressed in their regulations and orders. *CE Design, Ltd. v. Prism Bus. Media, Inc.*, 606 F.3d 443, 449-50 (7th Cir. 2010). Because we have no jurisdiction to determine the validity of FCC orders, we decline to address Greene's challenge to the FCC's interpretation of the TCPA. *See* 28 U.S.C. § 2342(1) (assigning exclusive jurisdiction to determine validity of FCC orders to Court of Appeals).

We find no genuine issues of fact exist regarding whether Greene provided her express consent to Defendants to contact her at her cellular telephone number. The undisputed facts demonstrate that Greene provided Equifax with her cellular telephone number knowing that potential creditors would use it as the contact number for fraud alert notifications. Additionally, the parties agree that Greene placed no conditions on the use of her number for fraud alert purposes. Based on the undisputed facts, we conclude that Greene expressly consented to the fraud alert

phone call by releasing her cell phone number as the one at which she wished to be reached. *See* 47 U.S.C. § 227(b)(2); In re Rules and Regulations Implementing The Telephone Consumer Protection Act, 7 FCC Rcd. 8752, 8769 (1992). The TCPA does not prohibit automated calls that are made with the express consent of the individual telephoned. Accordingly, we award summary judgment to Defendants on Counts I, II, and III.[3]

## II.     FCRA Claim - Count V

DirecTV contends they should be awarded judgment as a matter of law on Greene's cause of action under the FCRA. The FCRA requires prospective creditors to take certain steps before establishing a credit account "in the name of [a] consumer" with a fraud alert in their credit report. *See* 15 U.S.C. § 1681c-1(h). The extent of the potential creditor's obligations before extending credit depends upon the type of fraud alert found in the consumer report. Before establishing an account in the name of a consumer with an extended fraud alert on file, a creditor must contact the individual to confirm that the application for credit is not the result of identity theft. 15 U.S.C. § 1681c-1(h)(2)(B). For consumers whose credit reports

---

[3] Greene also argues that material issues of fact exist regarding whether she consented to the fraud alert call to her cellular phone because she only consented to calls made in compliance with the FCRA. We see no evidence in the record suggesting that Greene expressly conditioned her consent to receive automated phone calls upon the calls' being made in conformity with the FCRA. In the absence of such evidence, we decline to revisit our conclusion that no triable issues of fact exist with regard to Greene's consent.

contain an initial fraud alert with a contact number, a creditor must either contact the consumer directly or "take reasonable steps to verify the consumer's identity" before opening a credit account in the consumer's name. 15 U.S.C. § 1681c-1(h)(1)(B)(ii).

DirecTV asks that we grant them summary judgment on Greene's FCRA claim because the undisputed facts demonstrate that the company never opened an account in Greene's name. The FCRA requires potential creditors confronted with a report on a consumer with a fraud alert to take certain steps before "establish[ing] a new credit plan or extension of credit . . . in the name of the consumer[.]" 15 U.S.C. §§ 1681c-1(h)(1)(B)(i)-(ii), 1681c-1(h)(2)(B). Though the statute imposes different measures depending on the category of fraud alert, the provisions regarding extended and initial fraud alerts make clear that creditors become liable only if they fail to take the required steps and open an account in the name of the consumer. The parties do not dispute that DirecTV never opened an account in Greene's name; Larquette opened an account in her own name and received bills from DirecTV for satellite service. Without evidence that DirecTV engaged in the conduct proscribed by the statute, Greene's FCRA claim cannot survive as a matter of law.

Greene contends that DirecTV may still be held liable under the FCRA because it opened an account using her social security number. Essentially, Greene's argument amounts to an assertion that a social security number may be considered a

"name" as that word is used in 15 U.S.C. § 1681c-1(h). "Statutory interpretation begins with the plain language of the statute." *United States v. Berkos*, 543 F.3d 392, 396 (7th Cir. 2008). "We assume that the purpose of the statute is communicated by the ordinary meaning of the words Congress used; therefore, absent any clear indication of a contrary purpose, the plain language is conclusive." *United States v. Olofson*, 563 F.3d 652, 658 (7th Cir. 2009). Greene argues that a social security number may be considered as a name because the number identifies and distinguishes an individual in the same way as a name. Greene may be correct in that personal names and social security numbers both serve to identify individuals and distinguish them from others; but a social security number is not a name as that term is ordinarily employed. *See* Merriam-Webster's Collegiate Dictionary 823 (11th ed. 2003) (defining "name" as "a word or phrase that constitutes the distinctive designation of a person or thing"). We see no basis to hold DirecTV liable under the plain language of the FCRA.

Greene contends that to interpret the statute at issue to exclude situations in which a company opened an account using a plaintiff's social security number would be at odds with other more expansive language Congress used to define identity theft. *See* 15 U.S.C. § 1681a(q)(3) (defining identity theft as "a fraud committed using the identifying information of another person"). Congress could easily have

used broader language in setting out the rules for extending credit to those with fraud alerts but chose not to do so; we presume that Congress deliberately chose not to employ the more sweeping language and interpret accordingly. *See Russello v. United States*, 464 U.S. 16, 23 (1983). Because Congress elected not to employ the term "identifying information" instead of "name" when designing rules for creditors confronted with fraud alerts, we decline to import the former term into our construction of section 1681(h)(1)-(2).

We find no triable issues of fact exist as to whether DirecTV opened an account in Greene's name. Accordingly, DirecTV's motion for judgment as a matter of law on this claim is granted.

## CONCLUSION

DirecTV's motion for summary judgment is granted. The motion for summary judgment filed by First Contact, Inc. and iQor Holding US, Inc. is also granted.

_____
Charles P. Kocoras
United States District Judge

Dated:   November 8, 2010